# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEATRIZ ALDAPA, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>FOWLER PACKING COMPANY INC., et al.,<br><br>　　　　Defendants. | Case No.  1:15-cv-00420-DAD-SAB<br><br>ORDER GRANTING DEFENDANTS' MOTION TO COMPEL FURTHER RESPONSES AT PLAINTIFFS' DEPOSITIONS<br><br>ECF No. 54 |

Currently before the Court is Defendants' motion to compel further responses at Plaintiffs' depositions. (ECF No. 54).

The hearing on the matter took place on March 16, 2016.  Mario Martinez and Erica Deutsch appeared on behalf of Plaintiffs.  Howard Sagaser and Ian Wieland appeared on behalf of Defendants.  For the reasons set forth below, Defendants' motion to compel further responses at Plaintiffs' depositions is granted.

**I.**

**BACKGROUND**

The complaint in this action was filed on March 17, 2015.  (ECF No. 2.)  Plaintiffs Beatriz Aldapa and Elmer Avalos ("Plaintiffs") raise claims on behalf of a proposed class of non-exempt agricultural employees of Defendants Fowler Packing Company Inc., AG Force

1

1  LLC, and Fowler Marketing International LLC ("Defendants") who performed uncompensated
2  work in Defendants' fields in or near Fresno County within the past four years, excluding
3  irrigators, tractor drivers, and swampers. Plaintiffs raise nine causes of action: 1) for violation of
4  the Migrant and Seasonal Agricultural Worker Protection Act (29 U.S.C. § 1801, et seq.); 2) for
5  failure to provide rest periods; 3) for failure to pay all wages owed under established
6  employment contracts; 4) for failing to pay overtime; 5) for failing to pay minimum wages; 6)
7  for failing to pay waiting time penalties; 7) for failing to provide tools necessary to the
8  performance of a job and failing to provide reimbursement for tool expenses; 8) for violation of
9  California Business and Professions Code § 17200; and 9) for failing to keep accurate statements
10 on hours worked and wages earned.

11       Plaintiffs are seasonal agricultural workers involved in the cultivation and harvest of fruit
12 grown by Defendants. Plaintiffs allege that they have not been fully compensated by Defendants
13 for all of their time worked. Plaintiffs allege that their pay is calculated under one of three
14 methods: 1) hourly wages; 2) piece rate for certain work; and 3) a crew piece rate determined by
15 total production by a crew, to be divided evenly among individual members of the crew.
16 Plaintiffs contend that they were not paid for off-the-clock work while organizing materials and
17 equipment for work and were not paid while attending training sessions. Plaintiffs further
18 contend that they did not receive required rest breaks.

19       Plaintiffs also allege that Defendants added "ghost workers" to crew lists, which resulted
20 in a reduction in pay for jobs paid by the crew piece rate. Plaintiffs contend that supervisors
21 added fictitious names to crew lists, resulting in actual crew members receiving less pay when
22 the piece rate was divided among members of the crew, including fictitious members.

23       Plaintiffs also allege that they were required to provide their own tools necessary for
24 working, and Defendants did not reimburse Plaintiffs for those tools.

25       On July 28, 2015, the Court issued a pretrial scheduling order. (ECF No. 22.) The Court
26 ordered Plaintiffs to file a motion for class certification no later than April 25, 2016.

27       On March 2, 2016, the parties filed a Joint Statement re Discovery Disagreement for
28 Defendants' motion to compel further responses at Plaintiffs' depositions. (ECF No 54.) On

March 4, 2016, the Court set Defendants' motion to compel for hearing on March 16, 2016. (ECF No. 55.)

## II.

## LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

Depositions are governed by Federal Rule of Civil Procedure 30, which states, in pertinent part:

> **(c) Examination and Cross-Examination; Record of the Examination; Objections; Written Questions.**
> *(2) Objections.* An objection at the time of the examination—whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition—must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

Motions to compel are governed by Federal Rule of Civil Procedure 37, which states, in pertinent part:

> **(a) Motion for an Order Compelling Disclosure or Discovery.**
> **(3)** *Specific Motions*.
> **(B)** *To Compel a Discovery Response*. A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if:
> **(i)** a deponent fails to answer a question asked under Rule 30 or 31.

If the motion to compel is granted, the court must, after giving an opportunity to be heard, require the deponent whose conduct necessitated the motion to pay the movant's reasonable expenses including attorney's fees. Fed. R. Civ. P. 37(a)(5)(A).

Rule 37(a)(5)(A) provides:

> But the court must not order this payment if:
> **(i)** the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

March 4, 2016, the Court set Defendants' motion to compel for hearing on March 16, 2016. (ECF No. 55.)

## II.

## LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

Depositions are governed by Federal Rule of Civil Procedure 30, which states, in pertinent part:

> **(c) Examination and Cross-Examination; Record of the Examination; Objections; Written Questions.**
> *(2) Objections.* An objection at the time of the examination—whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition—must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

Motions to compel are governed by Federal Rule of Civil Procedure 37, which states, in pertinent part:

> **(a) Motion for an Order Compelling Disclosure or Discovery.**
> **(3)** *Specific Motions*.
> **(B)** *To Compel a Discovery Response*. A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if:
> **(i)** a deponent fails to answer a question asked under Rule 30 or 31.

If the motion to compel is granted, the court must, after giving an opportunity to be heard, require the deponent whose conduct necessitated the motion to pay the movant's reasonable expenses including attorney's fees. Fed. R. Civ. P. 37(a)(5)(A).

Rule 37(a)(5)(A) provides:

> But the court must not order this payment if:
> **(i)** the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

**(ii)** the opposing party's nondisclosure, response, or objection was substantially justified; or
**(iii)** other circumstances make an award of expenses unjust.

## III.

## DISCUSSION

The instant discovery dispute concerns two main discovery issues: 1) the refusal by Plaintiffs' counsel to allow Plaintiffs Elmer Avalos and Beatriz Aldapa to answer questions during their depositions regarding the identities of putative class members who attended meetings with Plaintiffs' counsel; and 2) Defendants' request to reopen Mr. Avalos's deposition because Mr. Avalos made changes to his deposition transcript after review.

In the instant case, Rule 501 of the Federal Rules of Evidence determines applicable privileges in this federal action. Fed. R. Evid. 501; Star Editorial, Inc. v. U.S. District Court, 7 F.3d 856, 859 (9th Cir. 1993).

**A. Questions During Mr. Avalos's and Ms. Aldapa's Depositions Regarding the Identities of Putative Class Members Who Attended Meetings with Plaintiffs' Counsel**

Defendants argue that Mr. Avalos and Ms. Aldapa should have answered questions during depositions regarding the identities of putative class members who attended meetings with Plaintiffs' counsel. Defendants contend that no privilege applies to the identity of those individuals who attended the meetings. Plaintiffs argue that disclosure of the names of the putative class members who attended the meetings will result in a risk that potential class members may be harassed, intimidated and coerced in connection with the opt-out discovery notice or for other reasons.

In the joint statement, Defendants state:

> When Defense counsel attempted to lay the foundation during Ms. Aldapa's deposition as to whether the information discussed at these meetings was protected by a privilege, Mr. Martinez directed his client not to answer and asserted the following:
>
> "Based on the privilege under both NLRB and ALRB law that the identity of works that participate in meetings involving a wage an hour cases is considered protected concerted activity and the identity of those participants is protected from discovery."

4

(Aldapa, p. 35:21-36:1.)

(ECF No. 54 at 4.)[1]

At the hearing, the Court requested that the parties submit a copy of the relevant portions of the deposition transcripts where Plaintiffs' counsel asserted the privilege. On March 16, 2016, Defendants lodged the relevant portion of the deposition transcript of Ms. Aldapa. (ECF No. 59.) The relevant portion of the deposition transcript of Ms. Aldapa states:

> MR: SAGASER: Well, you're precluding me from asking it here, if I ask her to give me the names.
> Just so the record is clear, if I ask her who are the names of the people who were present at the May meeting, the March meeting, the August meeting, your instruction to her would be the same for her not to answer and what would be the privilege?
>
> MR. MARTINEZ: Well, what we can do is we would be willing to do something expedited where you can tell me what you want to see and we could say instead of 30 days, two weeks to respond, because I do have authority on this issue to discuss with you. I don't want to take up your deposition time.
>
> MR. SAGASER: I just want to make sure the record is clear that if I ask her all those questions that you would instruct her not to answer based on what privilege?
>
> MR: MARTINEZ: Based on the privilege under both NLRB and ALRB law that the identity of workers that participate in meetings involving wage an[d] hour cases is considered protected concerted activity and the identity of those participants is protected from discovery. That would be the basis.
> And also the basis for any information concerning discussion would be attorney/client privilege because at this point putative class members or absent class members do have an attorney/client relationship with the attorneys in the case.

(Aldapa Depo. at 35: 5-36:7).[2]

On March 17, 2016, Plaintiffs lodged the relevant portions of the deposition transcript of

---

[1] The Court's references to page numbers are the ECF page numbers stamped at the top right hand corner of the page.

[2] On March 17, 2016, Plaintiffs filed a notice of objection to the lodging of documents by Defendants. (ECF No. 61.) Plaintiffs object to Defendants' lodging of pages 149-152 of the deposition transcript of Ms. Aldapa. Plaintiffs argue that these pages do not address the Court's request to lodge deposition transcript excerpts relating to objections made to questions inquiring as to the identity of individuals who attended meetings with counsel about this lawsuit. The Court notes that on page 151 of the deposition transcript of Ms. Aldapa is a reference to Plaintiffs' counsels' objection to the questions regarding the people at the meetings. (Aldapa Depo. 151:16-22.) However, the Court notes that it did not consider pages 149-152 of the deposition transcript of Ms. Aldapa in reaching its decision on the instant motion. The parties are reminded that depositions should be conducted according to the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Local Rules, and the Rules of Professional Conduct.

5

Mr. Avalos. (ECF No. 60.) The relevant portion of the deposition transcript of Mr. Avalos states:

> Q. Whose idea was it to go to the UFW Foundation?
>
> A. Both of ours.
>
> Q. Anyone else?
>
> MR. GOTTLIEB: I'm going to object to that, to him answering any questions about any union-related activity. That's protected activity and, frankly, asking this employee about those activities and specifically naming names, is itself an unfair labor practice under the Agricultural Labor Relations Act.
>
> MR. WIELAND: Specifically, as we sit here today, this is about a wage-an-hour class action. And Mr. Martinez made the same objections on the record. And I'm asking about percipient witnesses regarding the wage-an-hour class action. I'm limiting my questions to what's at issue here today, which is this lawsuit. And the line of cases that Mr. Martinez cited yesterday involve actions that were initiated by employers.
>
> In this case when the employer is being sued and is looking at percipient witnesses, we don't believe those cases apply. Also, yesterday Mr. Martinez represented that plaintiff's counsel was representing the putative class and that's just simply not true. Counsel, doesn't represent the putative class members until the class was certified. So we're allowed to ascertain who the percipient witnesses are and discover what they know.
>
> And if you want to put on the record here objections and instruct your client not to answer the names of the employees that attended meetings regarding the lawsuit, initiating the lawsuit and whose idea it was to start the lawsuit, feel free to do that. We can meet and confer over those issues.
>
> MR. GOTTLIEB: Well, that is exactly what I will do, is to instruct this witness not to further answer any questions about the names of people who attended any meetings concerning the lawsuit other than, obviously, you know about the two named plaintiffs and certainly whose idea it was further than you already have explored that and we disagree. There's an associational right and there's an unfair labor practice that are perpetrated if you continue to ask these questions.
>
> There's also, the associational right, I don't think we brought up yesterday, there's a case called Britt versus Superior Court, there's another case called UFW versus

>Superior Court and there's another case called Coors v. Wallace, all involving associational rights and limits. And there are other cases. I won't burden the record with those at this point.
>
>And we should meet and confer over those if defense feels it needs to get into that in a way that we think is threatening and beyond the scope of what's really needed in this lawsuit.
>
>MR. WIELAND: Okay. So just to be clear, you're instructing the witness not to answer questions regarding whose idea it was to start the lawsuit, names of employees that met regarding the lawsuit?
>
>MR. GOTTLIEB: I think it may be best to look at these questions on a case by case basis. But that general line that was brought up yesterday I'm familiar with is, we stand by that, so.
>
>MR. WIELAND: Those are the questions I'm about to ask. So just to make it clear, are you instructing him not to answer and we can meet and confer over those issues instead of wasting time.
>
>MR. GOTTLIEB: Yeah. Yeah.

(Avalos Depo. 16:1-18:22.)

At the hearing, Plaintiffs' counsel represented to the Court that they "instructed [their] clients not to answer based on [their] view that the question was illegal under California law and that defense counsel had no right to ask the question." Plaintiffs' counsel stated that it was an illegal question, as opposed to a privilege. Later during the hearing, Plaintiffs' counsel stated that there was an assertion of First Amendment privilege during the course of Mr. Avalos's deposition. Upon review of the deposition transcripts of Ms. Aldapa and Mr. Avalos, the Court will review Plaintiffs' assertions of attorney-client privilege, privilege pursuant to the ALRB and NLRB, and privilege pursuant to the First Amendment.

1. <u>Attorney-Client Privilege</u>

Plaintiffs contend that the identities of the potential class members who met with class counsel and Plaintiffs are protected by attorney-client privilege. Pursuant to California law, the client "has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer. . . . Cal. Evid. Code § 954. A confidential

7

communication is "information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship." Cal. Evid. Code § 952.

The attorney-client privilege is absolute and disclosure cannot be ordered regardless of necessity, relevance, or any other circumstance particular in the case. Costco Wholesale Corp. v. Superior Court, 47 Cal.4th 725, 732 (2009). The party claiming the privilege has the burden of establishing the facts necessary to support a prima facie claim of privilege. Costco Wholesale Corp., 47 Cal.4th at 733. Once the party asserting the privilege has met its burden, the communication is presumed to be confidential and the party seeking disclosure has the burden to establish that the communication was not confidential or that there are other reasons that the privilege does not apply. Id.

Defendants argue that putative class members are not represented by Plaintiffs' counsel before class certification, so there is no attorney-client relationship between Plaintiffs' counsel and the putative class members prior to class certification. In this case, the class has not been certified yet. Plaintiffs concede that the weight of authority holds that there is no attorney-client relationship in the context of communications to the entire putative class prior to class certification. See Atari, Inc. v. Superior Court, 166 Cal. App. 3d 867, 873 (1985).

Plaintiffs argue that because the discrete group of putative class members approached counsel regarding potentially pursuing their claims, this created a privilege because it was a confidential communication with counsel. See Ross, Johnson, Rosso & Ebersold v. Superior Court, 191 Cal. App. 3d 1514, 1518-1519 (1987) (the identity of a client may be treated as privileged information where disclosing a client's name will betray a confidential communication). However, "[a]s a general proposition, client identity and fee arrangements are not protected in California by the attorney-client privilege." Liew v. Breen, 640 F.2d 1046, 1049

1 (9th Cir. 1981) (citing Hays v. Wood, 25 Cal.3d 772 (1979); Brunner v. Superior Court, 51
2 Cal.2d 616 (1959)). "Both the California courts and the federal courts recognize, however, that
3 such information may come within the ambit of the privilege when the client's name itself has an
4 independent significance, such that disclosure would uncover client confidences." Liew, 640 at
5 1049 (internal citations omitted). The attorney-client privilege applied to the client's identity
6 where the witness-attorney made an anonymous tax payment on behalf of a client and the IRS
7 sought the disclosure of the identity of the client. See Baird v. Koerner, 279 F.2d 623, 634-35
8 (9th Cir. 1960). The disclosure of the client's identity was deemed to fall within the purview of
9 the attorney-client privilege because disclosing the client's identity would have disclosed the
10 client's communication to the attorney that he thought he owed money to the government. Id.

11     Here, Plaintiffs have failed to demonstrate how disclosure of the identities of the putative
12 class members who met with Plaintiffs' counsel could lead to the disclosure of any client
13 confidences. The putative class members are all farmworkers and employees or former
14 employees of Defendants. The meetings were regarding this lawsuit and the putative class
15 members' rights in this lawsuit. The disclosure of the identities of those who met with class
16 counsel will not disclose any client confidences.

17     Plaintiffs argue that ordering the disclosure of putative class member names who attended
18 meetings would force counsel to violate Rule 1.18 of the American Bar Association Model Rules
19 of Professional Conduct to the extent that putative class members relied on Plaintiffs' counsels'
20 assurances that their participation in the meeting with them would be maintained as confidential.
21 The fact that Plaintiffs' counsel may have made assurances to the putative class members who
22 attended the meeting is not sufficient to justify a privilege and deny Defendants' motion. As
23 stated above, the disclosure of the identities of those who met with class counsel will not disclose
24 any client confidences.

25     Plaintiffs also argue that they should not be required to disclose the identities of putative
26 class members that were obtained through Plaintiffs' counsel's own industry and effort, citing
27 Coito v. Superior Court, 54 Cal. 4th 480 (2012). Defendants argue that Coito is distinguishable
28 from the instant case.

In <u>Coito</u>, the California Supreme Court found that "a recorded witness interview may, in some instances, reveal the 'impressions, conclusions, opinions, or legal research and or theories' of the attorney and thus be entitled to absolute protection," such as "when the questions that the attorney has chosen to ask (or not ask) provide a window into the attorney's theory of the case or the attorney's evaluation of what issues are most important." <u>Coito</u>, 54 Cal. 4th at 495.  Also, the California Supreme Court held that "the very fact that the attorney has chosen to interview a particular witness may disclose important tactical or evaluative information, perhaps especially so in cases involving a multitude of witnesses." <u>Coito</u>, 54 Cal. 4th at 495.  "Absent a showing that a witness is no longer available or accessible, or some other showing of unfair prejudice or injustice (§ 2018.030, subd. (b)), the Legislature's declared policy is to prevent an attorney from free-riding on the industry and efforts of opposing counsel (§ 2018.020, subd. (b))." <u>Coito</u>, 54 Cal. 4th at 496.  <u>Coito</u> is a wrongful death case where plaintiff's counsel sought information regarding witnesses who provided defense counsel statements regarding a drowning incident.  <u>Id</u>.

The present case is distinguishable from <u>Coito</u>.  In <u>Coito</u>, one party's counsel attempted to use the efforts of the other party's counsel to find witnesses and information about the case that was readily available to both parties.  The Court finds that disclosure will not reveal class counsel's tactics, impressions, or evaluation of the case.  In this matter, Defendants have the putative class member list, and after the opt-out notice, Plaintiffs will also have the contact information for those putative class members who do not opt-out.  The Court finds that disclosure of the identities of the potential class members who attended meetings with Plaintiffs and class counsel will not result in Defendants' counsel taking advantage of the efforts and industry of Plaintiffs' counsel.

Therefore, the Court finds that the attorney-client privilege does not apply to the identities of the putative class members who met with class counsel and Plaintiffs.

    2.    <u>California Agricultural Labor Relations Act</u>

Plaintiffs argue that the putative class members are farmworkers who are protected by the California Agricultural Labor Relations Act ("ALRA") and have the right to engage in concerted activity intended to improve their working conditions.  Plaintiffs argue that this Court should

1 defer to the ALRB regarding whether Plaintiffs have to disclose the identities of the putative
2 class members who met with Plaintiffs and class counsel. Defendants did not address the
3 preemption issue. In footnote three of the joint statement regarding this discovery dispute,
4 Plaintiffs state:

> The Agricultural Labor Relations Act ("ALRA") requires the ALRA to follow applicable NLRA precedent. Lab. Code § 1148 ("The board shall follow applicable precedents of the National Labor Relations Act"). In reliance on that precedent, Plaintiffs have filed an unfair labor practice charge with the ALRB against Defendants for their insistence on seeking the identities of workers who attended meetings with Plaintiffs' counsel. Preemption principles dictate that this Court permit the ALRB to resolve this issue in the first instance. Courts are required to defer to labor board "determinations [as to unfair labor practices]," which are to be left "in the first instance to the National Labor Relations Board." When an activity is arguably subject to NLRA or ALRA regulation, "the States as well as the federal courts must defer to the exclusive competence of the [NLRB] if the danger of state interference with national policy is to be averted." Building Trades Council v. Garmon (1957) 359 U.S. 236, 244-245 (emphasis added). The preemption doctrine is equally applicable under the ALRA. See, e.g., Kaplan's Fruit & Produce v. Sup. Court, 26 Cal.3d 60, 70 (1979). Because the conduct at issue is arguably regulated by the ALRA, the Court should defer to the ALRB's investigative process.

16 (ECF No. 54 at 20 n.3.)

17 The Court finds that Plaintiffs' preemption argument is inapposite because the instant
18 dispute involves discovery in a federal class action lawsuit for wage and hour violations.
19 Further, the issue is not one of preemption, but whether the information sought is privileged
20 within the meaning of Fed. R. Evid. 501, et seq. The Court clearly has the ability to oversee and
21 issue orders regarding discovery in a federal class action. See Fed. R. Civ. P. 23(d). Therefore,
22 the Court finds that it is not preempted from deciding the instant motion.

23 Plaintiffs argue that employees have the right to engage in concerted activity intended to
24 improve their working conditions. Plaintiffs also argue that employer questions during or in
25 anticipation of litigation about protected concerted activity can violate the NLRA by tending to
26 interfere with the exercise of employee rights. See Tower Indus., 349 N.L.R.B. 1077 (2007);
27 Guess? Inc., 339 N.L.R.B. 432 (2003). Defendants argue that the ALRB and ALRA are
28 inapplicable to the instant discovery matter.

11

1    Plaintiffs have not presented any case law that supports their argument that the ALRA
2 protections are privileges that are applicable to federal class action discovery matters. Courts
3 have supervisory authority pursuant to Federal Rule of Civil Procedure 23(d) to regulate
4 communications in order to protect the interests of class members. See Fed. R. Civ. P. 23(d).
5 This matter is a matter before the district court, and not the NLRB or ALRB. Therefore, the
6 Court has the ability to regulate the discovery before it and it is not required, nor was authority
7 provided, which requires a federal court to adhere to decisions by the NLRB or ALRB in
8 ascertaining privileges for use in federal court actions

9    Furthermore, even if the Court considers the applicable standard under the ALRA that the
10 ALRB uses for determining whether an employer's deposition questions were lawful, the Court
11 finds that Defendants' questions were appropriate and Plaintiffs' privilege claim is inapplicable.

12    In Guess? Inc., 339 N.L.R.B. at 434, the National Labor Relations Board held that the
13 analysis for determining the lawfulness of when employees are interrogated during depositions
14 about their union activity is: 1) whether the questioning is relevant; 2) whether it had an illegal
15 objective; and 3) whether the need for information outweighs the employees' rights under the
16 National Labor Relations Act.

17    The Court finds that the information sought is relevant to the instant class action lawsuit,
18 and there is no evidence in the record that Defendants have an illegal objective under the ALRA.
19 Also, the Court notes that the parties will not initiate communications with putative class
20 members during the twenty-one day opt-out period and the five day period of time for the mail to
21 be received. Therefore, Plaintiffs' concerns for the disclosure of the identities because of
22 potential coercion for signing the opt-out postcards are now moot by the Court's order on the
23 opt-out disclosure notice, which restricts the parties from initiating communications with the
24 putative class members during the twenty-one day opt-out disclosure period and the five day
25 period of time for the mail to be received. The Court finds that the employees' confidentiality
26 interests are outweighed by Defendants' need for this information. As stated above, Defendants
27 seek the identities of the putative class members who met with Plaintiffs' counsel regarding this
28 lawsuit. Plaintiffs' counsel has stated that the meetings were only regarding this lawsuit, and did

not involve any union activity. Therefore, even if the Court considers the ALRB's three-part test in determining whether an employer's deposition questions were lawful, the Court finds that Defendants' deposition questions regarding the identities of the putative class members who attended meetings with Plaintiffs' counsel did not violate the ALRA. The Court finds that Plaintiffs' assertion of privilege under the ALRA and NLRA does not apply.

Defendants ask the Court to stay Plaintiffs' pending charge before the ALRB regarding Defendants' deposition questioning. However, Defendants have not provided any authority that the Court has the power to stay a matter before the ALRB. Therefore, Defendants' request for the Court to stay Plaintiffs' pending charge before the ALRB regarding Defendants' deposition questioning is denied.

3.  First Amendment Protection

Plaintiffs argue that the First Amendment of the United States Constitution bars disclosure of the identities of employees who meet to discuss protected concerted activity. Plaintiffs argue that workers have the right to assembly, free speech and petition. Defendants reply that Plaintiffs' First Amendment argument is displaced because this is not a situation where the group espouses dissident beliefs.

Courts advert to balancing three factors when conducting the compelling interest/substantial relation inquiry to determine whether First Amendment privilege applies: the relevance of the information sought, the need for that information, and the extent of injury that disclosure may cause to associational rights. See Black Panther Party, 661 F.2d 1243, 1268 (D.C. Cir. 1981); Adolph Coors Co. v. Wallace, 570 F. Supp. 202, 208 (N.D. Cal. 1983). The party seeking disclosure bears the burden of proving that the balance of these factors weighs in his favor. Id.

Here, Defendants seek the identities of the putative class members who met with class counsel and Plaintiffs. Defendants are not seeking an anonymous member list or information from a group that espouses dissident beliefs. There is not a dissident organization in the background, such as the Ku Klux Klan, Black Panthers, etc. The putative class members are farmworkers who are or were employed by Defendants and who are seeking

class certification in federal court for their proposed class. Plaintiffs have not shown that Defendants are likely to harass or retaliate against the individuals who have met with Plaintiffs and class counsel. There has been no indication that Defendants have engaged in any inappropriate conduct in this case. Disclosing the identities of the potential class members who met with Plaintiffs and class counsel will not have a chilling effect on the putative class members' First Amendment rights. Furthermore, the information that Defendants seek to obtain is relevant to their case. Defendants indicate that they may depose putative class members that Plaintiffs may elicit testimony from to support Plaintiffs' motion for class certification. Accordingly, the Court does not find that Plaintiffs' claim of First Amendment privilege should be applied to preclude discovery in the instant case.

4. <u>Plaintiffs Should Have Answered Defendants' Questions Regarding the Identities of the Putative Class Members Who Attended the Meetings</u>

Based on the foregoing, the Court finds that Plaintiffs were not entitled to assert a privilege for not answering Defendants' questions regarding the identities of the putative class members who attended meetings with Plaintiffs and Plaintiffs' counsel. Plaintiffs should have answered Defendants' questions regarding the identities of the putative class members who attended the meetings with Plaintiffs' counsel regarding this lawsuit.

**B.    Reopening of Plaintiff Elmer Avalos's Deposition Because of Changes Made to Deposition Transcript**

Defendants argue that Plaintiff Elmer Avalos's deposition should be reopened because Mr. Avalos made multiple significant changes to his deposition transcript that rendered the deposition useless or incomplete absent further deposition. Defendants argue that Mr. Avalos completely changed his answers from unequivocally stating he was being paid hourly and not piece rate, to that he was paid piece rate. Further, Defendants argue that these changes materially affect the testimony because they would have elicited further questions if Mr. Avalos had answered that he was paid piece rate. Defendants state that based on Mr. Avalos's unequivocal "yes" or "no" responses to questions at the deposition, further questions were not required.

1    Plaintiffs respond that Mr. Avalos permissibly made changes to his deposition transcript
2 pursuant to Rule 30 of the Federal Rules of Civil Procedure. Plaintiffs argue that Mr. Avalos
3 provided complete and thorough explanations for the changes to his deposition testimony, and
4 did so in a timely manner.

5    Federal Rule of Civil Procedure 30(e) reads, in pertinent part, that:

> [i]f requested by the deponent or a party before completion of the deposition, the deponent shall have 30 days after being notified by the officer that the transcript or recording is available in which to review the transcript or recording and, if there are changes in form or substance, to sign a statement reciting such changes and the reasons given by the deponent for making them.

10 Fed.R.Civ.P. 30(e).

11    The Court notes that the parties do not dispute that Mr. Avalos made permissible changes
12 to his deposition transcript pursuant to Rule 30 of the Federal Rules of Civil Procedure, and that
13 he did so in a timely manner. The only issue is whether the changes by Mr. Avalos to the
14 deposition transcript rendered his testimony useless or incomplete absent further deposition.

15    Plaintiffs argue that the changes do not render his testimony incomplete. Plaintiffs point
16 out that Defendants have not explained what follow-up questions they would have asked.
17 Plaintiffs argue that Defendants seek to harass Mr. Avalos for exercising his right to make the
18 changes to his deposition transcript. Plaintiffs argue that the changed answers are not material,
19 unverifiable, or unexplained so as to warrant reopening the deposition. Plaintiffs also argue that
20 the cases where depositions are reopened are ones where the deponent did not provide an
21 explanation for the change to the deposition transcript.

22    However, it is clear that a deposition may be reopened where the changed answers result
23 in the deposition being incomplete without additional testimony. See Herring v. Teradyne, Inc.,
24 2002 WL 32068318 (S.D. Cal. 2002); Lugtig v. Thomas, 89 F.R.D. 639, 642 (N.D. Ill. 1981);
25 Colin v. Thompson, 16 F.R.D. 194, 194-95 (W.D. Mo. 1954). Plaintiff is correct that the district
26 court in Lugtig addressed whether the deponent complied with Rule 30(e). Lugtig, 89 F.R.D. at
27 641-42. In Lugtig, the District Court for the Northern District of Illinois addressed both whether
28 the changes by the deponent to the deposition transcript were properly done pursuant to Rule

30(e) and whether the deposition should be reopened based on the changes.  Id.  However, the district court in Lugtig also addressed whether the changes by the deponent justified allowing the deposing party to reopen the deposition.  Lugtig, 89 F.R.D. at 642.  In Lugtig, the district court did not reopen the deposition because of non-compliance with Rule 30(e), but "because of the number and type of changes made by the defendant-deponent."  Id.

In Colin v. Thompson, 16 F.R.D. 194, 195 (W.D. Mo. 1954), the District Court for the Western District of Missouri addressed the issue of reopening a deposition when material changes are made even if changes comply with Rule 30(e):

> Whether his reasons are good or not will not impair his right to make the changes, if made in the way stated in Rule 30(e), but if those changes, when made, destroy the usefulness of the deposition (as those heretofore improperly made do), then the deposition will not have been finalized, and the plaintiff will be subject to further examination.

Colin v. Thompson, 16 F.R.D. at 195.

Furthermore, in Lugtig, the Court found that "[s]ince it is defendant's actions which necessitate reopening the examination of defendant, the costs and attorneys fees connected with the continued deposition will be borne by defendant."  Id.  (citing Colin v. Thompson, 16 F.R.D. at 195).

Here, Mr. Avalos made seventeen changes to his deposition transcript.  (ECF No. 54-1.) He changed his answers from stating that he was being paid hourly and not piecework, to that he was paid piecework.  One change to the deposition transcript was changing "[t]he checks would end up as an hourly rate" to "[t]he checks would end up paying us below the piece rate promised or understood."  (ECF No. 54-1 at 3.)  Another change to the deposition transcript was changing "[t]hey paid us hourly all the time. They never paid us piecework" to "[t]hey never properly paid us for piecework."  (ECF No. 54-1 at 3.)  He made these changes reflecting that he was actually paid piecework in multiple places to his deposition testimony.

The Court finds that these are changes that render his deposition incomplete without additional testimony.  Defendants did not ask further questions of Mr. Avalos because of his answers that he was paid hourly and not paid piecework.  These questions are clearly relevant to

16

1  the case, as there is an issue about how the employees were paid.  Also, Mr. Avalos is a named
2  plaintiff and whether he is typical of the class and subclasses that he seeks to represent is a
3  relevant issue for class certification.  Deposing counsel can ask questions which were made
4  necessary by the changed answers, questions about the reasons for the changes, and questions
5  about whether the changes originated with Mr. Avalos or with his attorney.  See Lugtig, 89
6  F.R.D. at 642.
7        Therefore, the Court finds that Defendants are entitled to conduct another deposition of
8  Mr. Avalos, and Mr. Avalos must pay for the cost of such further deposition.

9        **C.**     **Defendants' Request for Sanctions**

10        Rule 37(a) provides that if the motion to compel discovery is granted: "the court must,
11  after giving an opportunity to be heard, require the party or deponent whose conduct necessitated
12  the motion. . .to pay the movant's reasonable expenses incurred in making the motion, including
13  attorney's fees" unless "the opposing party's nondisclosure, response, or objection was
14  substantially justified; or other circumstances make an award of expenses unjust."  Paige v.
15  Consumer Programs, Inc., 248 F.R.D. 272, 277 (C.D. Cal. 2008) (quoting Fed. R. Civ. P.
16  37(a)(5)(A)).
17        At the hearing, Defendants only requested sanctions for the cost and attorney's fees
18  associated with Defendants' request to reopen Mr. Avalos's deposition because of changes he
19  made to the deposition transcript.  Plaintiffs argue that sanctions should not be imposed because
20  Mr. Avalos did what is permitted under the Federal Rules of Civil Procedure and they allege that
21  this is a novel issue of law.  The Court notes that the case law cited by Plaintiffs even provides
22  for the reopening of a deposition when the changes to the deposition result in the deposition
23  being incomplete absent further examination.  Although Plaintiffs may disagree about whether
24  the changes made to the deposition transcript were material and resulted in the deposition being
25  incomplete absent further examination, the Court does not find that Plaintiffs' objection to
26  reopening Mr. Avalos's deposition based on the changes he made to the deposition transcript is
27  substantially justified.    The changes made were clearly material, especially based upon the
28  assertion being made for certifying this class and this person's potential status as a named

representative.  The sanctions are not imposed by the Court because the deponent made corrections to his deposition under Fed. R. Civ. P. 30(e), but for Plaintiff's refusal and requirement that Defendants bring a motion to compel to re-open the deposition.

As the Court grants Defendants' motion to compel, the Court orders Plaintiffs to pay Defendants' reasonable expenses incurred in making the motion regarding reopening Mr. Avalos's deposition because of the changes to the deposition transcript, including attorney's fees.

The Court will order Defendants to file a motion for reasonable attorney's fees within fourteen (14) days of the date of service of this order.  Any opposition to the motion for attorney fees shall be filed within seven (7) days of the date of service of Defendants' filing.

## IV.

## ORDER

Based upon the foregoing, it is HEREBY ORDERED that:

1. Defendant's motion to compel answers to deposition questions is GRANTED as follows:
   a. Mr. Avalos's deposition is to be reopened because of the changes made to the deposition transcript.  Mr. Avalos shall pay for the cost of this further deposition.
   b. Ms. Aldapa and Mr. Avalos must answer questions at their depositions regarding the identities of people who met with Plaintiffs' counsel at meetings regarding this lawsuit.

\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\

2. Plaintiffs must pay Defendants' reasonable attorney's fees associated with the motion to compel regarding reopening Mr. Avalos's deposition because of changes he made to his deposition transcript. Defendants shall file a motion for attorney's fees within fourteen (14) days of the date of service of this order. Any opposition to Defendants' motion for attorney's fees shall be filed within seven (7) days of the date of service of Defendants' filing.

IT IS SO ORDERED.

Dated: **March 18, 2016**

UNITED STATES MAGISTRATE JUDGE