1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BEATRIZ ALDAPA, et al.,                    No.  1:15-cv-00420-DAD-SAB

12                  Plaintiffs,

13          v.                                  ORDER GRANTING MOTION FOR
                                                RECONSIDERATION IN PART
14   FOWLER PACKING COMPANY INC., et
     al.,                                       (Doc. No. 64)
15
                    Defendants.
16

17          Plaintiffs seek reconsideration of the assigned magistrate judge's order of March 18, 2016,

18   granting defendants' motion to compel further responses at plaintiffs' depositions.  (Doc. No. 63.)

19   That order required the named plaintiffs to answer certain questions at their deposition seeking

20   the identification of other putative class members who attended meetings concerning the

21   anticipated filing of this class action, permitted defendants to reopen the deposition of Elmer

22   Avalos due to post-deposition changes he made to that testimony, and required plaintiffs to pay

23   the costs and attorney's fees associated with the reopening of that deposition.  (*Id*.)  Specifically,

24   plaintiffs seek reconsideration of the order compelling them to identify those who attended the

25   meetings in question, arguing that such information is protected by both substantive labor law and

26   the First Amendment.  (Doc. No. 64 at 10–26.)  Plaintiffs also seek reconsideration of the order

27   awarding costs and attorney's fees for the motion to reopen Avalos's deposition, though they do

28   not seek reconsideration of the order requiring the reopening of that deposition.  (*Id*. at 26–30.)

                                                   1

1 | Defendants oppose the motion for reconsideration in its entirety.  (Doc. No. 71.)

2 | **I.     Applicable Legal Standard**

3 | Federal Rule of Civil Procedure 72(a) provides that non-dispositive pretrial matters may

4 | be referred to and decided by a magistrate judge, subject to review by the assigned district judge.

5 | *See also* Local Rule 303(c).  The district judge shall modify or set aside any part of the magistrate

6 | judge's order which is "found to be clearly erroneous or contrary to law."  Local Rule 303(f).  *See*

7 | *also* 28 U.S.C. § 636(b)(1)(A).  Discovery motions are non-dispositive pretrial motions which

8 | come within the scope of Rule 72(a) and 28 U.S.C. § 636(b)(1)(A), and thus the orders of a

9 | magistrate judge addressing such motions are subject to the "clearly erroneous or contrary to law"

10 | standard of review.  *Rockwell Intern., Inc. v. Pos-A-Traction Indus., Inc.*, 712 F.2d 1324, 1325

11 | (9th Cir. 1983).  The magistrate judge's factual determinations are reviewed for clear error, and

12 | the magistrate judge's legal conclusions are reviewed to determine whether they are contrary to

13 | law.  *United States v. McConney*, 728 F.2d 1195, 1200–01 (9th Cir. 1984), *overruled on other*

14 | *grounds by Estate of Merchant v. CIR*, 947 F.2d 1390 (9th Cir. 1991).  "A magistrate judge's

15 | decision is 'contrary to law' if it applies an incorrect legal standard, fails to consider an element

16 | of applicable standard, or fails to apply or misapplies relevant statutes, case law, or rules of

17 | procedure."  *Martin v. Loadholt*, No. 1:10-cv-00156-LJO-MJS, 2014 WL 3563312, at *1 (E.D.

18 | Cal. July 18, 2014) (internal quotations and citations omitted).

19 | **II.    Analysis**

20 | 1.     *Plaintiffs' Request to Reconsider the Magistrate Judge's Order Requiring Them to*

21 | *Identify Other Putative Class Members Present at Meetings with Class Counsel*

22 | Plaintiffs seek reconsideration of the magistrate judge's order compelling them to identify

23 | the others who attended meetings where class counsel were present to discuss the filing of this

24 | lawsuit.  In one, but not the other, of the depositions of plaintiffs Aldapa and Avalos, plaintiffs'

25 | counsel objected to questions seeking such identifying information by asserting an associational

26 | privilege under the First Amendment.  (Doc. No. 64 at 10.)  Plaintiffs' counsel also asserted at

27 | both depositions that substantive labor law protected his clients from being required to answer

28 | such questions.  As to this latter argument, the magistrate judge found no applicable privilege

based on substantive labor law, holding in pertinent part that the California Agricultural Labor Relations Act (ALRA) does not pre-empt federal discovery rules and that even under the test routinely applied by the National Labor Relations Board (NLRB) such information was subject to disclosure.  (Doc. No. 63 at 10–13.)  The magistrate judge's discovery order in this regard was neither clearly erroneous nor contrary to law, and therefore the undersigned will not disturb it.

Concerning plaintiff's assertion of privilege under the First Amendment, the magistrate judge's order stated:

> Courts advert to balancing three factors when conducting the compelling interest/substantial relation inquiry to determine whether First Amendment privilege applies:  the relevance of the information sought, the need for that information, and the extent of injury that disclosure may cause to associational rights.  *See Black Panther Party*, 661 F.2d 1243, 1268 (D.C. Cir. 1981); *Adolph Coors Co. v. Wallace*, 570 F. Supp. 202, 208 (N.D. Cal. 1983).  The party seeking disclosure bears the burden of proving that the balance of these factors weighs in his favor.  *Id*.

> Here, Defendants seek the identities of the putative class members who met with class counsel and Plaintiffs.  Defendants are not seeking an anonymous members list or information from a group that espouses dissident beliefs.  There is not a dissident organization in the background, such as the Ku Klux Klan, Black Panthers, etc.  The putative class members are farmworkers who are or were employed by Defendants and who are seeking class certification in federal court for their proposed class.  Plaintiffs have not shown that Defendants are likely to harass or retaliate against the individuals who have met with Plaintiffs and class counsel.  There has been no indication that Defendants have engaged in any inappropriate conduct in this case.  Disclosing the identities of the potential class members who met with Plaintiffs and class counsel will not have a chilling effect on the putative class members' First Amendment rights.  Furthermore, the information that Defendants seek to obtain is relevant to their case.  Defendants indicate that they may depose putative class members that Plaintiffs may elicit testimony from to support Plaintiffs' motion for class certification.  Accordingly, the Court does not find that Plaintiffs' claim of First Amendment privilege should be applied to preclude discovery in the instant case.

(Doc No. 63 at 13–14.)

Unfortunately, in the proceedings before the assigned magistrate judge neither party cited to the Ninth Circuit decision in *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2009) ("*Perry I*") in which the court set out the legal standard applicable to resolution of this issue.  As a result, the magistrate judge did not apply the specific burden-shifting requirements on the parties

1   required by *Perry I.*  Accordingly, the undersigned is compelled to revisit the issue.[1]

2   　　　　In moving for reconsideration, plaintiffs suggest various formulations of the legal standard

3   applicable where discovery is propounded such as the deposition questions at issue here,

4   including that the information sought must be "so relevant that it goes to the 'heart of the

5   matter,'" that the evidence sought must be "directly relevant" to a claim or defense, and/or that

6   "the inquiring party must exhaust all reasonable alternative sources of information by which he

7   could obtain the information in a less chilling manner."  (Doc. No. 64 at 22–23.)  Plaintiffs

8   express a concern that the magistrate judge believed that any privilege shielding disclosure was

9   available only to dissident groups and thereby improperly shifted the burden upon plaintiffs to

10  show the need to withhold the information which defendants sought.  (Doc. No. 64 at 24.)

11  　　　　Defendants counter that:  (1) "none of the cases cited by Plaintiffs include members of a

12  putative class in a federal wage and hour class action litigation dispute;" (2) that the putative class

13  members do not belong to any sort of a formal association; and (3) that the information sought "is

14  directly relevant to Defendants' defense in this case and goes to the heart of the matter."  (*See*

15  Doc. No. 71.)

16  　　　　A hearing was held on plaintiff's motion for reconsideration on April 21, 2016, at which

17  time the court directed the parties to either agree upon a stipulated protective order with respect to

18  the deposition questions at issue or to present further evidence and argument to the court.  (Doc.

19  No. 84.)  Thereafter, a declaration and supplemental brief was filed by plaintiffs on April 27,

20  2016 (Doc. No. 85) and by defendants on May 4, 2016 (Doc. No. 86).  Having considered the

---

21  [1]  Defendants argue that the court should not consider any issue or legal argument not presented
22  to the magistrate judge.  However, the decision whether to review an issue or legal authority not
    brought to the attention of the magistrate judge is a discretionary one for the district judge to
23  make.  *See United States v. Quackenbush*, No. 2:14-CR-000079-KJD-PAL, 2016 WL 356027, at
    *2-3 (D. Nev. Jan. 28, 2016) (citing *Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633,
24  638–39 (9th Cir. 1988)); *see also* 28 U.S.C. § 636(b)(1)(A) (a district judge "may reconsider any
25  pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous
    or contrary to law.").  Here, it was the court that brought the *Perry I* decision to the attention of
26  the parties because, in the court's view, it is largely dispositive of the issue presented by the
    motion for reconsideration.  It is appropriate under these circumstances for the court to exercise
27  its discretion to consider the binding authority setting out the test with respect to associational
    privileges under the First Amendment even though that authority was not cited by the parties
28  initially.

1   parties' arguments and evidence, the court will grant plaintiffs' motion for reconsideration only

2   with respect to the motion to compel regarding questions designed to elicit identification of the

3   other individuals who attended pre-litigation meetings with plaintiffs and class counsel.

4        The Ninth Circuit has established the test for courts in this circuit to apply in considering

5   assertions of the First Amendment associational privilege in response to civil discovery requests.

6   In this regard, the court has stated:

7        In this circuit, a claim of First Amendment privilege is subject to a
    two-part framework.  The party asserting the privilege must
8   demonstrate a prima facie showing of arguable first amendment
    infringement.  This prima facie showing requires appellants to
9   demonstrate that enforcement of the [discovery requests] will result
    in (1) harassment, membership withdrawal, or discouragement of
10  new members, or (2) other consequences which objectively suggest
    an impact on, or chilling of, the members' associational rights.
11

12  If appellants can make the necessary prima facie showing, the
    evidentiary burden will then shift to the [opposing party to]
13  demonstrate that the information sought through [discovery] is
    rationally related to a compelling . . . interest [and] the least
14  restrictive means of obtaining the desired information. . . .  The
    question is . . . whether the party seeking the discovery has
15  demonstrated an interest in obtaining the disclosures it seeks which
    is sufficient to justify the deterrent effect on the free exercise of
16  [the] constitutionally protected right of association.

17  *Perry I*, 591 F.3d at 1160–61 (citations and quotations omitted).  "The existence of a prima facie

18  case turns not on the type of information sought, but on whether disclosure of the information will

19  have a deterrent effect on the exercise of protected activities."  *Id.* at 1162.

20       In *Perry I*, a sufficient prima facie showing was made through declarations from

21  individuals who noted they would change the way they communicate in the future if the

22  communications in question were to become public.  591 F.3d at 1163.  The declarations—though

23  "lacking in particularity"—created "a reasonable inference that disclosure would have the

24  practical effects of discouraging political association and inhibiting internal campaign

25  communications that are essential to effective association and expression."  *Id.*

26       Turning to the instant case, plaintiffs must establish a *prima facie* case of First

27  Amendment associational privilege, which turns on "whether disclosure of the information will

28  have a deterrent effect on the exercise of protected activities."  *Id.* at 1162.  Plaintiffs indicate that

1    the protected activities of the putative class members were "to gather together to exercise their

2    rights to petition to redress employment wrongs," i.e., their meeting to discuss the filing of a class

3    action lawsuit.  (Doc. No. 64 at 25.)  Initially, therefore, the question is whether the anticipated

4    filing of a class action lawsuit is protected activity under the First Amendment.

5           In other contexts, the filing of a lawsuit has routinely been held to be First Amendment

6    protected activity.  *See Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004*); see also Blaisdell*

7    *v. Frappiea*, 729 F.3d 1237, 1243 (9th Cir. 2013).  Moreover, the Supreme Court has observed

8    "the principle that 'collective activity undertaken to obtain meaningful access to the courts is a

9    fundamental right within the protection of the First Amendment.'"  *In re Primus*, 436 U.S. 412,

10   426 (1978) (quoting *United Transp. Union v. Michigan Bar*, 401 U.S. 576, 585 (1971)).  *See also*

11   *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 231–32 (1977) ("[O]ur cases have never suggested

12   that expression about philosophical, social, artistic, economic, literary, or ethical matters . . . is

13   not entitled to full First Amendment protection. . . . Nothing in the First Amendment or our cases

14   discussing its meaning makes the question whether the adjective 'political' can properly be

15   attached to those beliefs the critical constitutional inquiry."); *N.A.A.C.P. v. Button*, 371 U.S. 415,

16   431 (1963) ("[A]ssociation for litigation may be the most effective form of political

17   association."); *Charles v. Daley*, 846 F.2d 1057, 1074 (7th Cir. 1988) ("Subsequent Supreme

18   Court decisions have interpreted *Button* as establishing the principle that 'collective activity

19   undertaken to obtain meaningful access to the courts is a fundamental right within the protection

20   of the First Amendment.'"); *Laker Airways Ltd. v. Pan American World Airways, Inc.*, 604 F.

21   Supp. 280, 288, n. 32 (D.D.C. 1984)("The right to litigate is clearly protected under the First

22   Amendment's guarantee of free speech and the right to petition.").  Likewise, associations

23   targeting economic activity have been held protected by the right to associate under the First

24   Amendment.  *See N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 907–09 (1982) (noting

25   that, concerning the organization of a boycott of local businesses, "[e]ach of these elements of the

26   boycott is a form of speech or conduct that is ordinarily entitled to protection under the First and

27   Fourteenth Amendments").  In addition, the Ninth Circuit has observed that, under the "breathing

28   space" principle, even activity which is not directly protected by the First Amendment falls within

6

its ambit if the activity "must nevertheless be protected in order fully to vindicate the free speech rights guaranteed by the First Amendment." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 932–34 (9th Cir. 2006). While "only litigation activities which constitute 'communication[s] to the court' may be fairly described as 'petitions,'" thus falling within the ambit of the First Amendment's petition clause, the breathing space principle indicates pre-litigation activities such as the filing of demand letters must be protected as well because they are sufficiently connected to the ability to engage in litigation. *Id.* at 932–36 ("We conclude that restrictions on presuit demand letters may therefore raise substantial Petition Clause issues if, on examination, such restrictions could impair the right of access to the courts protected by the First Amendment.").

Here, plaintiffs and others met with putative class counsel to discuss the possibility of filing legal action against their employers to redress damages allegedly caused to them by their employers' failure to comply with certain labor laws. (Doc. No. 85-1 at 2.) Whether the activity for which protection is sought here is construed as predominantly economic, legal, or otherwise, under the authorities set forth above it falls sufficiently within the ambit of the First Amendment to warrant consideration of the chilling effect on speech. The court concludes that these meetings related to protected First Amendment activity thereby bringing into play the First Amendment associational privilege addressed by the court in *Perry I*.

Once invoked, plaintiffs must still show they are entitled to the protection of the privilege. A *prima facie* case requires plaintiffs to demonstrate that disclosure of the information in question will have a deterrent effect on the filing of such lawsuits. *Perry I*, 591 F.3d at 1160–61. Plaintiffs allege that disclosure of the identity of those individuals attending the meeting would "call undue employer attention" upon these individuals, that the individuals requested anonymity when they agreed to meet with class counsel, and that disclosure "would naturally inhibit other employees from engaging in such activity, either in this case or other cases." (Doc. No. 64 at 12–13, 18.) In the joint statement of the discovery dispute, plaintiffs noted that the compelled disclosure of the identities of the individuals present at these meetings with counsel—some of whom are not named or otherwise involved in this action—would "result in a risk that potential class members may be harassed, intimidated and coerced, in connection with signing the opt-out

discovery notice, or for independent reasons." (Doc. No. 54 at 13.)  Plaintiffs' counsel also aver

that they promised the class members "that their participation in the meeting with them would be

maintained as confidential." (Doc. No. 54 at 17.)  In his declaration, intended class counsel Edgar

Aguilasocho states he conducted seven separate meetings at which putative class members

appeared.  According to attorney Aguilasocho:

> Putative class members expressed concern with their employer
> knowing they were involved and concern with suffering retaliation
> through harassment at work, being laid off or fired, or not being
> rehired in subsequent seasons—as their employment is seasonal.
> Putative class members also expressed concerns that owner Grant
> Parnagian (whom the workers refer to as "Grant") would learn they
> were participating in the lawsuit and that he would retaliate against
> them by laying them off, firing them, or not rehiring them in
> subsequent seasons.  The employees expressed reluctance to
> continue their participation if that participation became known to
> their employers.

 (Doc. No. 85-1 at 3.)

Plaintiffs have made a sufficient showing that compelling the identification of those in

attendance at these pre-filing meetings will have "consequences which objectively suggest an

impact on, or chilling of, the members' associational rights." *Perry I*, 591 F.3d at 1160–61.

Plaintiffs' showing is a sufficient basis from which the court may draw "a reasonable inference

that disclosure would have the practical effects of discouraging . . . association and inhibiting . . .

communications that are essential to effective association and expression." *Id.* at 1163.

Specifically, potential class members expressed concern about retaliation and a reluctance to

continue their participation if their attendance at these initial litigation meetings was revealed.

(Doc. No. 85-1.)  That evidence supports the reasonable inference that compelling the deposition

testimony sought by defendants would chill the associational rights of these individuals by

inhibiting their ability to meet with putative class counsel and confer about the filing of a lawsuit.

Defendants protest that plaintiffs here are not affiliated with the United Farm Workers

(UFW) and do not belong to a formal organization.  However, the Ninth Circuit has suggested the

formal organizational status of the protected individuals is immaterial.  Thus, in denying a

subsequent writ of mandamus brought in the *Perry* litigation, the Ninth Circuit noted:

/////

> In [its] March 22, 2010 order, the district court said as a matter of law that "the First Amendment privilege does not cover communications between [or among] separate organizations." If the district court meant that the privilege cannot apply to persons who are part of a political association spanning more than one organization or entity, then this interpretation was questionable. Under *Perry I*, the privilege applies to the core group of persons engaged in the formulation of strategy and messages, *whether or not they are members of a single organization or entity*. The operative inquiry is whether they are part of an association subject to First Amendment protection. We did not hold that the privilege cannot apply to a core group of associated persons spanning more than one entity.

*Perry v. Schwarzenegger*, 602 F.3d 976, 981 (9th Cir. 2011) ("*Perry II*") (emphasis added). Associational rights derive from the First Amendment protections afforded to individuals rather than the corporate status, if any, in which those individuals have organized. Therefore, it is irrelevant for purposes of invoking this privilege whether the individuals belong to a formal, corporate organization.

Defendants also argue that, "[t]aken to its logical extreme," affording plaintiffs protection from the discovery sought here would mean that "in any class action case, prior to certification, any joint meeting of individuals is not only appropriate, but that the identities of the persons who attended those joint factual discussion sessions are protected." (Doc. No. 86 at 2.) Further, defendants assert that "[m]erely being parties to a lawsuit or potential class members does not shield one from having their identities from being disclosed if they attend meetings where the lawsuit is discussed." (*Id.* at 2.) Defendants may have a point, were the notion taken to its extreme. That, however, is not the case here. It is also true that "merely" being a party to a lawsuit does not protect one from having to reveal their identity. However, this is the very point underlying the Ninth Circuit's balancing test under *Perry I*. Under that test, the party relying on the associational privilege must first advance a *prima facie* case that its invocation is warranted. If the court is satisfied with that *prima facie* showing, the test then affords the party seeking the discovery the opportunity to demonstrate why the discovery sought should nonetheless be produced despite the First Amendment concerns.

Here, plaintiffs have made a *prima facie* showing that their associational rights will be infringed if the plaintiffs are compelled to answer these deposition questions. Accordingly, the

1   burden shifts to defendants to "demonstrate[ ] an interest in obtaining the disclosures . . . which is

2   sufficient to justify the deterrent effect" on the putative class members' associational rights.

3   *Perry I*, 591 F.3d at 1160–61.  In balancing these competing interests the court may take into

4   account any of these factors:  (1) the importance of the litigation; (2) the centrality of the

5   information sought to the issue in the case; (3) the existence of less intrusive means of obtaining

6   the information; and (4) the substantiality of the First Amendment interests at stake.  *Id.* at 1161.

7   Moreover, it is error for the district court in conducting this balancing to apply "the Rule 26

8   standard of reasonably calculated to lead to the discovery of admissible evidence" because "[t]he

9   Rule 26 standard . . . fails to give sufficient weight to the First Amendment interests at stake."  *Id.*

10  In this case, the court concludes that defendants have demonstrated no valid interest in obtaining

11  the sought after discovery at this early stage of the litigation.

12          Defendants present two principal reasons why they require the identity of the individuals

13  who attended the pre-litigation meetings in question.  First, defendants suggest they need the

14  sought-after information in order to conduct pre-class certification depositions of the to-be-

15  identified individuals, who may or may not offer declarations in support of plaintiffs' class

16  certification motion.  Defendants then add that, "[j]oint witness preparation is a proper matter for

17  discovery."  (Doc. No. 86 at 1.)  However, taking the deposition of such individuals before it is

18  known whether they will even execute declarations would be of highly questionable relevance.

19  Moreover, deposition of non-parties prior to class certification is rarely sought, let alone

20  permitted.  To engage in such premature discovery practice would largely eliminate one of the

21  major benefits of class actions, i.e., avoiding time-consuming litigation on issues that can

22  appropriately be resolved *en masse*.  Instead, "[a]t the pre-class certification stage, discovery in a

23  putative class action is generally limited to certification issues. . . .  class members and parties are

24  not treated identically."  *Dysthe v. Basic Research, L.L.C.*, 273 F.R.D. 625, 628 (C.D. Cal. 2011).

25          Discovery focused on putative or absent class members is normally allowed only in

26  special circumstances:

27          The taking of depositions of absent class members is—as is true of
            written   interrogatories—appropriate    [only]    in    special
28          circumstances.  And, not unlike the use of interrogatories, the party

10

> seeking the depositions has the burden of showing necessity and absence of any motive to take undue advantage of the class members. However, in light of the nature of the deposition process—namely, the passive litigants are required to appear for questioning and are subject to often stiff interrogation by opposing counsel with the concomitant need for counsel of their own—we are of the view that the burden confronting the party seeking deposition testimony should be more severe than that imposed on the party requesting permission to use interrogatories.

*Id.* at 628 (quoting *Withers v. eHarmony, Inc.*, 267 F.R.D. 316, 320 (C.D. Cal. 2010). "Generally, to depose putative or absent class members, a party must show that 'discovery is both necessary and for a purpose other than taking undue advantage of class members.'" *Id.* (quoting *Baldwin & Flynn v. Nat'l Safety Assocs.*, 149 F.R.D. 598, 600 (N.D.Cal.1993)).

> While some courts have permitted discovery of absent class members, they have done so only where the proponent of the discovery establishes that (1) the discovery is not designed to take undue advantage of class members or to reduce the size of the class, (2) the discovery is necessary, (3) responding to the discovery requests would not require the assistance of counsel, and (4) the discovery seeks information that is not already known by the proponent.

*McPhail v. First Command Fin. Planning, Inc.*, 251 F.R.D. 514, 517 (S.D. Cal. 2008) (citing *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 340–42 (7th Cir. 1974)). *See also Antoninetti v. Chipotle, Inc.*, Case No. 06cv2671-BTM (WMc), 2011 WL 2003292, at *1 (S.D. Cal. May 23, 2011) (noting that although discovery from absent class members is not usually allowed, the rules are flexible "especially where the proposed deponents have been identified as potential witnesses or have otherwise 'injected' themselves into the litigation," such as after they have submitted declarations in support of class certification); *Negrete v. Allianz Life Ins. Co. of N. Am.*, Case No. CV 05-6838 CAS (MANx), 2008 WL 8116992 (C.D. Cal. June 30, 2008); *On the House Syndication, Inc. v. Federal Exp. Corp.*, 203 F.R.D. 452, 455–57 (S.D. Cal. 2001); *Balwin & Flynn v. Nat'l Safety Assocs.*, 149 F.R.D. 598, 600 (N.D. Cal. 1993).

Here, defendants have made no showing of any need for the discovery they seek at this early stage of the litigation. Success on plaintiffs' motion for class certification will almost surely not turn on the testimony of percipient witnesses, but rather on data gleaned from the defendants' own records. Defendants have simply identified no legitimate and specific need to subject

11

1    unnamed potential class members to the rigors of litigation prior to the filing of a motion for class

2    certification in this case.

3         Second, defendants suggest that they require the identities of the individuals who attended

4    these meetings because they need to identify and remove all of these individuals, whom they

5    describe as "tainted," from any statistical analysis that may later be conducted in this case.  (Doc.

6    No. 86 at 2–3.)  It is far from clear to the court how any discussions these individuals may have

7    had with plaintiffs or putative class counsel will have "tainted" them for the purposes of statistical

8    analysis.  Defendants appear eager to put the cart before the horse in this regard.  It appears likely

9    that any statistical analysis will focus almost exclusively on *defendants'* records, not the

10   testimony of certain unnamed class members.  It is unclear to the court how an individual's

11   perception of—or even bias against—their employer could possibly taint a statistical analysis into

12   whether their employer failed to appropriately pay wages and overtime or compensate for

13   mandatory rest periods, as required by law and as determined by the employer's own records.

14   Further, even if there was any conceivable "taint" as claimed by defendants, defense counsel

15   themselves represent that this class will include at least 14,000 employees.  (Doc. No. 86-1 at 2.)

16   Notably, defense counsel is not inquiring at plaintiffs' depositions as to the *number* of individuals

17   who attended the pre-litigation meetings but rather is only seeking to learn their identities.  The

18   court surmises that unless a very large number attended, their potential inclusion in any analysis

19   and any corresponding "taint" would be statistically irrelevant.  Defendants have certainly made

20   no showing to the contrary.

21        Again, defendants have simply shown no need for the discovery they seek at this early

22   stage of the litigation.  Because defendants have not demonstrated that their interest in obtaining

23   the discovery they seek outweighs its potential impact on the First Amendment associational

24   rights of the absent class members, the undersigned grants the plaintiffs' request for

25   reconsideration on this ground.  *Perry I*, 591 F.3d at 1160–61.  Plaintiffs will not be required to

26   divulge the identities of those who attended meetings with class counsel concerning the filing of

27   this action at this stage of the litigation.  Defense counsel will be precluded from attempting to

28   elicit this information at plaintiffs' depositions.

2.     *Plaintiffs' Request for Reconsideration of the Magistrate Judge's Ruling*
       *Regarding Sanctions Against Plaintiffs Pursuant to the Reopening of Plaintiff*
       *Avalos's Deposition*

Plaintiffs also seek reconsideration of the magistrate judge's ruling awarding monetary sanctions to defendants for the cost of preparing a motion to compel concerning the reopening of plaintiff Avalos's deposition.[2]  Plaintiffs argue there was no basis for sanctions to be imposed against them for requiring a motion to be filed.  (Doc. No. 64 at 26–30.)  As to this aspect of the discovery order, plaintiff has not demonstrated that the order was "clearly erroneous or contrary to law."  *See* 28 U.S.C. § 636(b)(1)(A), Local Rule 303(f), *Rockwell Intern., Inc. v. Pos-A-Traction Indus., Inc.*, 712 F.2d 1324, 1325 (9th Cir. 1983).  Of course, the awarding of sanctions is often warranted with respect to discovery disputes necessitating the filing of a motion to compel.  *See* Fed. R. Civ. P. 37(a)(5)(A) ("If the motion is granted . . . the court *must* . . . require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.") (emphasis added).  Plaintiffs argue their failure to agree to the reopening of the deposition was substantially justified, *see* Fed. R. Civ. P. 37(a)(5)(A)(ii), because plaintiff Avalos provided an explanation for the changes made to the deposition transcript and because his testimony was not rendered totally "useless" or "incomplete" as a result.  (Doc. No. 64 at 29.)  The undersigned is not persuaded by this argument.  As the magistrate judge pointed out, some of the changes plaintiff Avalos made to his deposition were clearly material, since this is a wage-and-hour class action and the manner of his compensation may be important in deciding both whether to certify the class and whether plaintiff is a suitable class representative.  (*See* Doc. No. 63 at 17–18.)  Accordingly, plaintiffs' motion for reconsideration of the order awarding sanctions against plaintiffs for the costs of litigating a motion to compel the reopening of plaintiff Avalos's deposition is denied.

/////

/////

---

[2]  Again, no challenge is brought here to the magistrate judge's order compelling the reopening of that deposition.

13

1    **III.    Conclusion**

2            For all of the reasons set forth above, plaintiffs' request for reconsideration (Doc. No. 64)

3    is granted in part and denied in part.  The magistrate judge's order requiring plaintiffs at their

4    depositions to divulge the identities of putative class members who attended meetings with class

5    counsel is overruled.  Plaintiffs' motion for reconsideration is denied in all other respects.

6    IT IS SO ORDERED.

7    Dated:   __June 16, 2016__                   _____

8                                                 UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14