# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEATRIZ ALDAPA, et al., | Case No. 1:15-cv-00420-DAD-SAB |
| Plaintiffs, | ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PROTECTIVE ORDER |
| v. | |
| FOWLER PACKING COMPANY INC., et al., | (ECF No. 204) |
| Defendants. | |

## I.

## INTRODUCTION

On February 6, 2019, Plaintiffs filed a motion for a protective order. (ECF No. 204.)[1] The parties filed a joint statement and supporting documentation on February 20, 2019. (Joint Statement re: Discovery Disagreement (hereinafter "JS"), ECF No. 207.) The Court held a hearing on the motion on February 27, 2019. (ECF No. 208.) At the hearing, attorney Mario Martinez appeared on behalf of Plaintiffs, and attorneys Theane Evangelis, Tiffany Phan, Howard Sagaser and Ian Wieland appeared on behalf of Defendants. Having considered the moving papers, the joint statement, the declarations and exhibits attached thereto, arguments presented at the February 27, 2019 hearing, as well as the Court's file, Plaintiffs' motion for a protective order is GRANTED IN PART and DENIED IN PART.

---

[1] All references herein to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

## II.

## BACKGROUND

### A.     The Allegations in the Operative Complaint

This action was filed on March 17, 2015, and currently proceeds on Plaintiffs' first amended complaint filed on October 20, 2016.  (ECF Nos. 2, 129.)  The action was brought on behalf of two named plaintiffs and a proposed class of non-exempt agricultural employees of Defendants who allegedly performed uncompensated work in Defendants' fields in or near Fresno County.  Plaintiffs raise nine causes of action in their first amended complaint: 1) violation of the Migrant and Seasonal Agricultural Worker Protection Act (29 U.S.C. § 1801, et seq.); 2) failure to pay wages and/or overtime; 3) failure to compensate for mandated rest periods; 4) failure to reimburse expenses for tools and equipment in violation of 29 U.S.C. § 1832(c) and Cal. Labor Code § 2802; 5) waiting time penalties pursuant to Labor Code § 203; 6) unfair competition pursuant to Bus. and Prof. Code § 17200; 7) failure to record and pay for travel time and wait time; 8) failure to reimburse for vehicle expenses under Labor Code § 2802; and 9) failure to provide and/or record meal periods.  (ECF No. 129.)

Plaintiffs allege that they have not been fully compensated by Defendants for all time worked.  Plaintiffs describe that their pay is calculated under one of three methods: 1) hourly wages, 2) piece rate for certain work, and 3) a crew piece rate determined by total production by a crew, to be divided evenly among individual members of the crew.  Plaintiffs contend that they were not paid for off-the-clock work while organizing materials and equipment for work and were not paid while attending training sessions.  Plaintiffs further contend that they did not receive required rest breaks.  Plaintiffs allege that Defendants added "ghost workers" to crew lists, which resulted in a reduction in pay for jobs paid by the crew piece rate, as the piece rate was divided among members of the crew, including these fictitious members.  Finally, Plaintiffs also allege that they were required to provide their own tools necessary for working, and Defendants did not reimburse Plaintiffs for such tools.

///

///

### B.     The Discovery Dispute as Described in the Parties' Joint Statement

The instant motion for a protective order relates to twenty-five depositions that Defendants are attempting to take of absent class members.  Plaintiffs move the Court for a protective order quashing all such depositions and the associated document requests because Plaintiffs argue discovery directed at absent class members is generally not permitted, and argue that Defendants have not met the heightened burden for such discovery.  If any depositions of absent class members are allowed, Plaintiffs request the Court to restrict the number to ten total in line with the general limitation under Federal Rule of Civil Procedure 30.  Further, if any such depositions are permitted, Plaintiffs request that given the potential deponents are current or former employees and depend on daily wages, the depositions should be limited to three to four hours each, and the deponents should be compensated with reasonable wages for their lost time.  Plaintiffs also request the Court to restrict Defendants' potential use of the deposition testimony by preventing such being used for any motion for decertification.  Finally, Plaintiffs request that if the deponents fail to appear, the Court should not allow penalties such as sanctions or the striking of declarations from being imposed on Plaintiffs.

In support of Plaintiffs' motion for class certification, Plaintiffs submitted declarations from forty-six employees, including the two named plaintiffs, and thus forty-four of the declarations came from absent class members.  In opposition to the motion, Defendants submitted 100 declarations from other employees of Defendants.  On January 24, 2018, Plaintiffs' motion for class certification was granted.  (ECF No. 185.)  Prior to the order granting Plaintiffs' class certification motion, Defendants did not seek to depose any employees other than the two named class members, who were deposed before Plaintiffs filed their motion, and these are the only depositions completed by Defendants thus far.  Plaintiffs have conducted a Rule 30(b)(6) deposition.  On January 23, 2019, Defendants served notices of depositions, requests for production of documents, as well as deposition subpoenas, on twenty-five out of the forty-four absent class members who provided declarations in support of Plaintiffs' 2017 class certification motion.  Plaintiffs' counsel wrote to Defendants' counsel on January 30, 2019, objecting to the deposition notices, requesting to meet and confer, and requesting that the

depositions be vacated pending a conference. Plaintiffs objected to Defendants' deposition notices, contending that: (1) discovery of absent class members is generally not permitted, citing McPhail v. First Command Financial Planning, 251 F.R.D. 514, 517 (S.D. Cal. 2008); (2) Defendants exceeded the ten-deposition limit set by Federal Rule of Civil Procedure 30(a); and (3) Defendants improperly requested documents via Federal Rule of Civil Procedure 30 because Rule 30 only permits document requests directed at parties.

Counsel for all parties had a telephone conference on February 4, 2019. During the conference, Plaintiffs took the position that Defendants were not entitled to any discovery from absent class members. Plaintiffs then offered to permit eight half-day depositions of absent class members on the condition that Defendants agreed not to seek to take any additional absent class member depositions. Defendants declined to accept this offer because they contend courts have allowed significantly more depositions of absent class members in similar cases, and Defendants argue they need to be able to test through depositions the assertions made by Plaintiffs' declarants in order to adequately defend themselves in this class action. Defendants also noted that they have only taken two depositions to date, and thus are entitled to at least eight more full-day depositions. Ultimately, the parties were unable to resolve the dispute and the instant motion for a protective order was filed.

**III.**

**LEGAL STANDARD**

**A.      Protective Orders and Deposition Limits**

Pursuant to Rule 26 a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The Court *may*, by order, "alter the limits in these rules on the number of depositions and interrogatories or on the length of depositions under Rule 30." Fed. R. Civ. P. 26(b)(2)(A). Pursuant to motion or on its own, the Court *must*

"limit the frequency or extent of discovery otherwise allowed" if the Court determines: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Rule 26(c) provides that when a party or other person from whom discovery is sought makes a motion for a protective order, the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). A party seeking a protective order must allege a specific harm and broad allegations that are not substantiated by specific examples or articulated reasoning will not suffice. In re Roman Catholic Archbishop of Portland in Or., 661 F.3d 417, 424 (9th Cir. 2011); Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1130 (9th Cir. 2003)).

Pursuant to Rule 30 of the Federal Rules of Civil Procedure, absent a stipulation, a party must obtain leave of the court to obtain more than ten depositions. Fed. R. Civ. P. 30(a)(2)(A)(i). "[T]he court must grant leave to the extent consistent with Rule 26(b)(1) and (2)." (Id.) This presumptive limit of ten depositions per side is intended to "promote cost-effective discovery and promote the federal rules' policy of minimizing 'unreasonably cumulative or duplicative' discovery." Thykkuttathil v. Keese, 294 F.R.D. 597, 599 (W.D. Wash. 2013) (quoting Fed. R. Civ. P. 26(b)(2)(C); Fed. R. Civ. P. 30 Advisory Committee's Note (1993)). "A party seeking to exceed the presumptive limit bears the burden of making a 'particularized showing' of the need for additional depositions." Thykkuttathil, 294 F.R.D. at 600; Kaseberg v. Conaco, LLC, No. 15CV01637JLSDHB, 2016 WL 8729927, at *3 (S.D. Cal. Aug. 19, 2016); see also Nat. Res. Def. Council, Inc. v. Winter, No. CV057513FMCFMOX, 2008 WL 11338647, at *2 (C.D. Cal. July 11, 2008); but see Pitkin v. Corizon Health, Inc., No. 3:16-CV-02235-AA, 2018 WL 1336047, at *2 (D. Or. Mar. 13, 2018) ("the Federal Rules of Civil Procedure do not require a moving party to make a particularized showing of necessity when seeking leave to take additional depositions.") Generally, courts require a party to exhaust

1  their allowed number of depositions before moving to conduct additional depositions.

2  Thykkuttathil, 294 F.R.D. at 600; Kaseberg, 2016 WL 8729927, at *3; Aerojet Rocketydyne,

3  Inc. v. Glob. Aerospace, Inc., No. 2:17-CV-01515-KJM-AC, 2018 WL 5993585, at *1 (E.D. Cal.

4  Nov. 6, 2018); Nat. Res. Def. Council, Inc., 2008 WL 11338647, at *2.

5      **B.    Discovery Directed Toward Absent Class Members**

6      The parties put forth differing contentions as to what legal standard applies when

7  determining if discovery directed at absent class members is permissible. Plaintiffs contend

8  discovery from absent class members is ordinarily not permitted and that numerous cases have

9  held such discovery will only be allowed if the proponent can meet the four-part test established

10  in Clark v. Universal Builders, Inc., 501 F.2d 324, 340-42 (7th Cir. 1974) (hereinafter "Clark").

11  (JS at 4, citing McPhail v. First Command Fin. Planning, Inc., 251 F.R.D. 514, 517 (S.D. Cal.

12  2008) (hereinafter "McPhail"); Carlin v. DailyAmerica, Inc., 2017 U.S. Dist. Lexis 164790, at

13  *14 (E.D. Cal. Oct. 3, 2017).)[2]  Under this standard, the proponent must establish that: (1) the

14  discovery is not designed to take undue advantage of class members or to reduce the size of the

15  class; (2) the discovery is necessary; (3) responding to the discovery requests would not require

16  the assistance of counsel; and (4) the discovery seeks information that is not already known by

17  the proponent. McPhail, 251 F.R.D. at 517.

18      On the other hand, Defendants argue that Plaintiffs seek to rely on a "test derived from an

19  out-of-circuit decision decided 45 years ago — long before the proliferation of class action

20  litigation, the Supreme Court's landmark decision in Dukes, and the growth in recent decades of

21  large scale employment class actions in California."[3]  (JS at 18.)  Defendants instead urge the

22

23  [2] The Court notes that in Carlin, in fact, the court did not adopt the Clark test but rather "decline[d] to adopt a rule
permitting discovery upon 'absent class members,'" noting that no Supreme Court or Ninth Circuit case addressed

24  whether it is proper to conduct discovery on absent class members, and specifically held that "[t]his Court does not
find sufficient legal support for such a rule because, without certification of a class under Rule 23, the 'absent' class

25  members are not yet parties to the case, and therefore, the Court lacks jurisdiction over them to enforce a Rule 37
motion to compel directing them to provide discovery responses.  Carlin, 2017 U.S. Dist. Lexis 164790, at *14-15.

26  The Court notes that here, the class certification has been granted.  (ECF No. 185.)

27  [3] The Court assumes the Dukes case referred to is Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338 (2011), where the
Supreme Court reversed the district court's decision to certify a class of 1.6 million women who were current or

28  former employees of Wal-Mart, although it is not clear as to why this case would necessarily impact the analysis
here.

Court to apply the principles used in <u>Arredondo v. Delano Farms Co.</u>, No. 1:09-cv-01247 MJS, 2014 U.S. Dist. LEXIS 145562 (E.D. Cal. Oct. 10, 2014) (hereinafter "<u>Arredondo</u>"), where the court stated as a general rule, discovery from absent class members may be permitted where it is reasonably necessary, is not conducted for an improper purpose, and is not unduly burdensome in the context of the case and its issues. <u>Id.</u> at *13.

The court in <u>Arredondo</u> succinctly summarized the absence of clear case law and standards in the Ninth Circuit, and the type of factors courts across the country typically apply to the question of whether it is appropriate to direct discovery at absent class members:

> We start with the premise that the Federal Rules of Civil Procedure and the decisions of the Ninth Circuit Court of Appeals favor discovery to assist in the underlying goals of litigation. Pursuant to the Federal Rules, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and this "[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The Ninth Circuit has explained that it favors a broad scope of discovery. "[W]ide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for truth." <u>Epstein v. MCA, Inc.</u>, 54 F.3d 1422, 1423 (9th Cir. 1995); <u>Dysthe v. Basic Research, L.L.C.</u>, 273 F.R.D. 625, 628 (C.D. Cal. 2011).
>
> But the right to access information is not absolute and "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "The party opposing disclosure has the burden of proving 'good cause,' which requires a showing 'that specific prejudice or harm will result' if the protective order is not granted." <u>In re Catholic Archbishop of Portland Oregon</u>, 661 F.3d 417, 424 (9th Cir. 2011) (quoting <u>Foltz v. State Farm Mut. Auto. Ins. Co.</u>, 331 F.3d 1122, 1130 (9th Cir. 2003)).
>
> No Supreme Court or Ninth Circuit case law addresses the propriety of conducting discovery on absent class members. <u>See</u> <u>Tierno v. Rite Aid Corp.</u>, No. C-05-2520-TEH, 2008 U.S. Dist. LEXIS 112461, 2008 WL 2705089 (N.D. Cal. July 8, 2008) ("The law on discovery directed to absent class members is flexible. Discovery from absent class members is 'neither prohibited nor sanctioned explicitly' by the Federal Rules.") (Citation omitted.) However, courts often apply the standard articulated in the Seventh Circuit in <u>Clark v. Universal Builders, Inc.</u>, 501 F.2d 324, 340-41 (7th Cir. 1974). This standard permits such discovery "only where the proponent of the discovery establishes" four criteria:
>
> > that (1) the discovery is not designed to take undue advantage of class members or to reduce the size of the class, (2) the discovery is necessary, (3) responding to discovery requests would not require the assistance of counsel, and (4) the discovery seeks information that is not already known by the proponent.
>
> <u>McPhail v. First Command Fin. Planning, Inc.</u>, 251 F.R.D. 514, 517 (S.D. Cal. 2008) (citing <u>Clark</u>, 501 F.2d at 340-42).

Other courts have articulated standards that are similar to, or overlap with the factors set forth in, <u>Clark</u>. For example, in <u>McCarthy v. Paine Webber Group, Inc.</u>, 164 F.R.D. 309 (D. Conn. 1995), the court required parties seeking discovery to make a "strong showing . . . that the information sought (1) is not sought with the purpose or effect of harassment or altering membership of the class; (2) is directly relevant to common questions and unavailable from the representative parties; and (3) is necessary at trial of issues common to the class." <u>Id.</u> at 313 (citations omitted). It reasoned that "[d]iscovery of absent class members, while not forbidden, is rarely permitted due to the facts that absent class members are not 'parties' to the action, and that to permit extensive discovery would defeat the purpose of class actions which is to prevent massive joinder of small claims." <u>Id.</u> (citations omitted); see also <u>McPhail</u>, 251 F.R.D. at 517 n.3 (citing <u>McCarthy</u>, 164 F.R.D. at 313).

Similarly, in <u>Tierno</u>, the court held that the proponent must demonstrate three factors to justify discovery on absentee class members: (1) the information sought is relevant; (2) the information is not readily obtainable from the representative parties or other sources; and (3) the request is not unduly burdensome and made in good faith. <u>See</u> 2008 U.S. Dist. LEXIS 112461, at *6 (citing <u>Cornn v. UPS, Inc.</u>, No. C-03-2001-TEH, 2006 U.S. Dist. LEXIS 69196, 2006 WL 2642540, *2 (N.D. Cal. Sept. 14, 2006).

Accordingly, the Court concludes that as a general rule, discovery from absent class members may be permitted when reasonably necessary, not conducted for an improper purpose, and not unduly burdensome in the context of the case and its issues.

<u>Arredondo</u>, 2014 U.S. Dist. LEXIS 145562, at *10-13.

The Court first notes that in <u>Clark</u>, the Seventh Circuit did not clearly enunciate a four factor test, but rather held the district court record was devoid of any showing that defendants had met the heightened burden for deposing class members because there was no developed record demonstrating necessity of the discovery, nor demonstrating an absence of any motive to take undue advantage of the class members, which the court found particularly important given the likely need for counsel during the depositions. <u>Id.</u> at 341. Later courts likely expanded on this discussion to create the four-factor test. <u>See</u> <u>McPhail v. First Command Fin. Planning, Inc.</u>, 251 F.R.D. 514, 517 (S.D. Cal. 2008).

While the Court does not find the <u>Clark</u> factors would be an inappropriate standard for this Court to apply, the Court finds the factors utilized in <u>Arredondo</u> can easily encompass the more specific <u>Clark</u> factors, and therefore rather than adopting the more specific factor based test established in another circuit, the factors used in <u>Arredondo</u> are more useful and appropriate because they allow the Court to weigh the facts of a particular case under more expansive

discovery principles.  For example, the first _Clark_ factor, whether the discovery is designed to take undue advantage of class members or to reduce the size of the class, would fall under the umbrella of the _Arredondo_ factor of whether the discovery is being conducted for an improper purpose.  Utilizing this factor also allows the Court to explore other reasons the discovery may be improper, instead of narrowing the focus as the _Clark_ factor does.  Next, the second _Clark_ factor, whether the discovery is necessary, and the fourth _Clark_ factor, whether the discovery seeks information that is not already known by the proponent, are somewhat redundant, and can both be encompassed within the _Arredondo_ factor of whether the discovery is reasonably necessary.  Finally, the third _Clark_ factor, whether responding to the discovery requests would require the assistance of counsel, could be encompassed and weighed when applying the _Arredondo_ factor of whether the discovery would be unduly burdensome in the context of the case and its issues, and could also overlap into the _Arredondo_ factor of whether the discovery is being conducted for an improper purpose.

Additionally, neither party has discussed in detail the 1993 amendments to the Federal Rules of Civil Procedure which allow a party the right to depose up to ten deponents without further court order, and any beyond that limit when consistent with Federal Rules of Civil Procedure 26(b)(1)-(2), something none of the cases in this area address: a potential plain reading of the rules.[4]  Therefore, as this area of law is not crystallized within the Ninth Circuit

_____

[4] There is nothing in the Federal Rules of Civil Procedure which provide for different procedures when it comes to class action litigation, especially in the merits phase of discovery.  While there is a suggestion that the rules must give explicit authority to conduct these depositions on absent class members through statutory authorization, the Court does not subscribe to that approach since the rules themselves state these rules govern in all civil actions.  _See_ Fed. R. Civ. P. 1.  While Rule 23 governs class actions, it provides no guidance when it comes to discovery matters, including no reference or suggestion that class actions are not subject to the other rules of civil procedure.  In other words, nothing in the rules explicitly restricts the ability to conduct up to ten depositions, even of absent, or unnamed class members.  _See_ Fed. R. Civ. P. 30(a)(2); Fed. R. Civ. P. 23.  The Court recognizes that judge-made caselaw in this area has developed guiding principles and factors to consider when determining whether to allow discovery directed at absent members.  The Court emphasizes that because there is no explicit federal rule, and there is neither a Supreme Court nor Ninth Circuit opinion restricting such discovery or requiring the consideration of these factors, the Court is exercising its discretion here to weigh the appropriateness of the next eight proposed depositions under the _Arredondo_ factors, which would bring the total depositions noticed by Defendants up to the presumptive limit of ten, and also any additional potential depositions, which are subject to authorization through leave of court under Federal Rule of Civil Procedure 30.  The Court is mindful of the fact that the "first" 10 deposition are not without limits as any party may seek a protective order under Rule 26 as to a deponent/deposition falling within these rules (_see_ Fed. R. Civ. P. 26(c)); hence, this court in part will assess the depositions under the _Arredondo_ factors.

nor addressed by the U.S. Supreme Court, the Court will guide its decision by the general rule described in <u>Arredondo</u>, that discovery from absent class members may be permitted when it is reasonably necessary, is not conducted for an improper purpose, and is not unduly burdensome in the context of the case and its issues.

## IV.

## ANALYSIS & DISCUSSION

### A.     The Necessity of the Discovery

Plaintiffs argue that as an employer, Defendants can obtain information from other sources and thus the noticed depositions and document requests are unnecessary because there is no information held by the proposed deponents that Defendants do not already have access to or could not easily gather through less intrusive and burdensome means.  (JS at 8-9, citing <u>Tierno v. Rite Aid Corp.</u>, 2008 U.S. Dist. Lexis 112461, at *17-18 (N.D. Cal. July 8, 2008); <u>Antoninetti v. Chipotle, Inc.</u>, 2011 U.S. Dist. Lexis 54854 (S.D. Cal. May 23, 2011); <u>Negrete v. Allianz Life Ins. Co.</u>, 2008 U.S. Dist. Lexis 118563, at *10-11 (C.D. Cal. June 30, 2008); <u>Baldwin & Flynn v. Nat'l Safety Assocs.</u>, 149 F.R.D. 598, 599-601 (N.D. Cal. 1993).  Plaintiffs argue that, for example, Defendants could informally interview foremen or other employees, such as the one hundred employees who previously provided declarations in opposition to class certification.  (JS at 9, 14.)  Plaintiffs also argue that to the extent "Defendants have any legitimate interest in "cross examining" these deponents on their pre-certification statements, the Court has already determined that almost all material facts underlying the various claims at issue can be determined solely from Defendants' own general policies and internal records.  (JS at 14.)

Plaintiffs highlight that the class certification order was not predicated exclusively on employee declarations, but also on analyses of the Defendants' own written policies, payroll records, purchasing receipts, and the deposition testimony of the Defendants' PMK regarding policies and practices that were common across the entire class.  (<u>Id.</u> citing ECF No. 185, at 24-26 & 30 (piece rate rest period claims can be established using Defendants' written policies and payroll records); at 32-34 (travel time claims can be established using payroll records and Defendants' PMK testimony); at 37 (vehicle expense claims will be shown using Defendants'

official policies and payroll records); at 39-41 (meal period claims can be established using Defendants' policies and payroll records); at 50-51 (tool reimbursement claims can be established using Defendants' purchasing records); at 56 (unpaid work claims for piece rate shifts can be established using payroll records); at 57 (inaccurate wage statement claims can be established from Defendants' general policies).) To the extent Plaintiffs did rely on class member declarations, Plaintiffs argue those declarants' material assertions were largely corroborated by the declarations Defendants submitted from other class members, whom Defendants could presumably have interviewed to inquire about whatever matters they now wish to inquire about via depositions. (JS at 10-11, citing ECF No. 185 at 29 (93 out of Defendants' 100 declarations corroborated Plaintiffs' declarations regarding rest periods).) Finally, with respect to the only claims for which Plaintiffs attempted to rely solely on class member testimony, the ghost worker claims, Plaintiffs emphasize that the class was not certified, rendering that testimony irrelevant at this stage, and thus, unlike in <u>Arredondo</u>, there are no issues of proof such as conflicting worker testimony on material issues or variation among work crews that would necessitate invasive and burdensome discovery on absent class members. (<u>Id.</u> citing ECF. No. 185, at 48-49.)

Defendants argue that discovery "from absent class members is neither prohibited nor sanctioned explicitly by the Federal Rules," and "the policies related to absent class members [are] flexible, particularly where proposed deponents have been identified as potential witnesses or have 'injected' themselves into the litigation." (JS at 20-21, citing <u>Rojas v. Marko Zaninovich, Inc</u>, No. 1:09-CV-00705 AWI, 2011 WL 2636071, at *4 (E.D. Cal. July 5, 2011); <u>Moreno v. Autozone, Inc.</u>, 2007 WL 2288165, at *1 (N.D. Cal. Aug. 3, 2007); <u>Mas v. Cumulus Media Inc.</u>, No. C–10–1396 EMC, 2010 WL 4916402, at *3 (N.D. Cal. Nov. 22, 2010).) Here, Defendants argue the absent class member depositions are reasonably necessary for multiple reasons, foremost of which is the fact that Defendants need to test the factual assertions that the absent class members made in declarations submitted to the Court, including statements regarding facts surrounding Defendants' alleged California Labor Code violations and about the potential damages. Defendants intend to test those statements in deposition and understand

whether there is any support behind such assertions. (JS at 21.) For example, Defendants note that the declarants allege they purchased tools in order to complete work for Defendants but do not explain why those tools were necessary for the job, and the California Labor Code only requires reimbursement of expenses that are necessary for work, and Defendants intend to test the merits of the absent class members' claims by exploring why the declarants believed those tools were indeed necessary.[5]

Defendants highlight similarities to <u>Arredondo</u>, where the court permitted approximately 200 absent class member depositions, because Defendants seek to depose a small number of employees to collect relevant information in order to present their defenses, and the information sought is not available by other means as Defendants have no other method by which to probe the testimony offered by the declarants now that they are represented by counsel, unless Plaintiffs are giving Defendants permission to directly contact absent class members without going through counsel. (JS at 24, citing <u>Arredondo</u>, 2014 WL 5106401, at *6-10.) As an example, Defendants contend they are now unable to probe why the proposed deponents believed they performed any off-the-clock work, and Defendants could not have previously sought this information, because as <u>Arredondo</u> noted, this type of discovery could have been otherwise premature. Further, Defendants contend that substantial variations exist between the experiences of employees working in different crews and have specifically selected declarants who are likely to shed light on those variations. Defendants also reject Plaintiffs' contention that because Plaintiffs did not list the specific absent class members that would ultimately submit declarations in this matter in their initial disclosures back in July 2015, testimony of those witnesses are not relevant, countering that Plaintiffs' initial disclosures specifically stated that "Plaintiffs anticipate that a large number of proposed class members will have information related to" the subjects of this litigation, but at that time Plaintiffs had not yet "identif[ied] any such witnesses," and Plaintiffs later identified certain class members and submitted declarations from them in support of their motion for class certification. (JS 25-26.)

---

[5] At this point, Defendants also argue the depositions are necessary to determine whether a trial plan is necessary. (JS at 22.) The Court addresses the contentions of the parties regarding this issue further below, in subsection IV(C), in the Courts discussion of whether the discovery is for a proper purpose.

The Court finds it helpful to take a closer look at the cases cited by the parties as they provide a good overview of different courts' decisions and application of the relevant considerations pertaining to discovery directed at absent class members in various circumstances. First, the Court looks again at <u>Arredondo v. Delano Farms Co.</u>, No. 1:09-cv-01247 MJS, 2014 U.S. Dist. LEXIS 145562 (E.D. Cal. Oct. 10, 2014), which as discussed previously, guides the Court as to the general factors to apply in determining whether to allow discovery directed at absent class members. Similar to the facts in this case, in <u>Arredondo</u>, the class was made up of agricultural workers employed by defendants, who alleged labor code violations, including nonpayment for off-the-clock work and failure to compensate for the use of plaintiffs' own tools. <u>Id.</u> at *2. Following certification, then granting of partial decertification, defendants sought, as part of a "pilot study," to take the depositions of a number of foremen and class members from each of the foremen's crews. <u>Id.</u> at *4-5. Plaintiffs intended to conduct a random survey of a portion of the class members and then extrapolate the responses to the class a whole. Defendants contended the proposed survey would produce broad over-generalizations across disparate groups, and class members would have an incentive to respond while non-claimants would not, and defendants argued their proposed depositions of a cross-section of the groups would address these reliability concerns. <u>Id.</u> at *15-16.

As to the first factor, necessity, the court found defendants demonstrated the discovery was necessary and relevant to the reliability of sampling and the statistical study. <u>Id.</u> at *17. As to the second factor, burden, while recognizing a large burden in taking almost 200 depositions, the <u>Arredondo</u> court noted "extraordinary characteristics of [the] case, including the large class size, the large amount in controversy, the issues with regard to credibility and reliability of the evidence provided to the Court during the certification phase, and the fact that will be difficult, if not impossible, to locate and contact many of the absent class members," the court was not going to limit a good faith "effort to seek relevant and reliable evidence to enlighten all," and absent evidence of abuse or undue burden on the deponents, found the benefits outweighed the burden of the discovery. <u>Id.</u> at *22-23. The <u>Arredondo</u> court noted that unlike other cases where defendants sought to take discovery from significantly large numbers, and sometimes all, absent

class members, defendant here limited the request to roughly 200 out of 25,000 members, which is less than one percent, and the two to four hours of time for each is a relatively small investment relative to a case this size. Id. at *24. Finally, as to the last factor, proper purpose, the Arredondo court found no reason to believe the pilot study and depositions were motivated by any reason other than being "rationally and legitimately believed by Defendants and their experts in good faith to be necessary to address the complex issues presented in this case," and if plaintiffs were to discover evidence of the contrary, they could present it to the court and ask for reconsideration. Id. at 25-26.

As discussed previously, Plaintiffs urged the court to adopt the four-part test established in Clark v. Universal Builders, Inc., 501 F.2d 324, 340-42 (7th Cir. 1974), contending numerous cases have held such discovery will only be allowed if such factors are met. (JS at 4, citing McPhail v. First Command Fin. Planning, Inc., 251 F.R.D. 514, 517 (S.D. Cal. 2008); Carlin v. DailyAmerica, Inc., 2017 U.S. Dist. Lexis 164790, at *14 (E.D. Cal. Oct. 3, 2017).[6] In Clark, plaintiffs consisted of a class of home purchasers who claimed defendants exploited racial segregation in Chicago by selling property to black citizens at inflated prices compared to white counterparts buying similar properties. 501 F.2d at 327. The Seventh Circuit reviewed an appeal of a directed verdict for defendants, and briefly analyzed the challenge to the district court ruling which dismissed class members who failed to answer interrogatories or appear for depositions. The Seventh Circuit held the district judge erred in this regard, finding the record "devoid" of any showing that the defendants met the heightened burden for deposing the class members by failing to demonstrate necessity, and failing to demonstrate absence of any motive to take undue advantage of the class members, while also noting the likely need for counsel during the depositions. Id. at 341.

In McPhail, litigation involved securities fraud, and following class certification, defendants served interrogatories and requests for admission on all absent class members,

---

[6] First, as noted above, supra note 2, the Carlin court did not adopt the Clark test but rather "decline[d] to adopt a rule permitting discovery upon 'absent class members,'" noting that no Supreme Court or Ninth Circuit case addressed whether it is proper to conduct discovery on absent class members, and declined to exercise jurisdiction over the absent members where the class had not even been certified yet. Carlin, 2017 U.S. Dist. Lexis 164790, at *14-15.

consisting of 178,527 members.  251 F.R.D. at 517-18.  Applying the <u>Clark</u> factors, the court found that the practical effect of the discovery would be to reduce the size of the class, that obtaining answers to the proposed discovery from all absent members was impracticable and unrealistic, and written responses would require a large level of detail.  <u>Id</u>.  The court also felt the requests would have the effect of an opt-in procedure, given defendants reservation of the right to seek relief if absent members failed to timely respond.  <u>Id.</u>  As to the second factor, necessity, and the fourth factor, whether information is already known to the proponent, the court found in order to rebut the element of reliance, the discovery was not needed because defendants could present testimony at trial from sales personnel, managers, and officers, who could dispute the allegation that sales personnel followed a policy that encouraged misrepresentations in sales pitches, or by showing that sales scripts did not contain material misrepresentations.  <u>Id</u>. at 518. As to the third factor, the need for counsel, defendants failed to show counsel was not needed, especially given the particular demands and consequences of responding to interrogatories and requests for admission.  <u>Id</u>. at 518-19.

The parties both cite <u>Tierno v. Rite Aid Corp.</u>, 2008 U.S. Dist. Lexis 112461 (N.D. Cal. July 8, 2008) (hereinafter "<u>Tierno</u>").  Here a district judge overruled objections to a magistrate judge's denial of discovery.  The magistrate judge had rejected a request to depose a sampling of a class of store managers, noting that as their employer, the defendant "had unfettered access to its own Store Managers for nearly a year and a half while the class was being certified," could have conducted individualized interviews, but chose not to, and that the 400 hours of depositions requested, one hundred individuals at four hours each, was clearly burdensome.  2008 U.S. Dist. Lexis 112461, at *17-19.  In upholding the decision, the district judge found it key that the decision to deny the depositions was early in the litigation, and that "some appropriate form of discovery will be allowed at some point as to the testifying class members."  <u>Id</u>. at * 19.  The district judge noted that Plaintiffs' own arguments noted the request for leave to depose 100 absent class members was premature, and that any request for leave to depose the absent members should only be considered after a discovery plan was set in place, "not that Rite Aid should be denied all discovery for the remainder of the case from all class members except [the

named plaintiff]." Id. at *18-19. The district judge approved the magistrate judge's ruling as within the court's discretion, but "clarif[ied] that it is without prejudice to more limited requests for discovery relating to class members whose testimony Plaintiff's plan to offer, made in the context of an agreed-upon discovery plan." Id. at *19-20.

The parties cite Antoninetti v. Chipotle, Inc., No. 06cv2671-BTM (WMc), 2011 U.S. Dist. LEXIS 54854 (S.D. Cal. May 23, 2011) (hereinafter "Chipotle"). In this case, the class encompassed disabled customers suing because they could not see over the counter to view food being prepared, and Chipotle sought to conduct one-hour depositions of twenty of forty-one individuals identified in Plaintiffs' disclosures, and who signed declarations in support of the motion for class certification. Id. at *2-3. The Chipotle court noted that while discovery from absent class members is generally not permitted, the rules pertaining to such are flexible, "especially where the proposed deponents have been identified as potential witnesses or have otherwise 'injected' themselves into the litigation," and such discovery may be taken even prior to certification if not sought to take advantage or harass class members, and is necessary for trial preparation, or preparation of opposing class certification as was the circumstances in Chipotle. Id. at *3-4. The Chipotle court found that because the absent class members submitted declarations in support of the motion for class certification and were identified in the supplemental disclosures, the absent members had "injected themselves into the litigation on two fronts and cannot claim noninvolvement as a means of avoiding discovery," and additionally, "the court [was] satisfied Chipotle [was] not taking the proposed depositions in order 'to take undue advantage of the class members or to harass class members," and the discovery was clearly relevant. Id. at *4-5. The Chipotle court recognized that "under certain circumstances depositions of absent class members *could* have a chilling effect on their willingness to be part of the class," however that concern did not apply because: 1) the class members were customers, not employees, and thus do not have the same pressure or threat of potential adverse actions from the employer; 2) in cases where the class is made up of employees, the employer generally would have an ample opportunity to question the prospective class member employees, whereas here depositions are the best method to question the class members; 3) because the absent

members submitted declarations, their expectation of noninvolvement in the litigation is significantly less than those who did not inject themselves in to the litigation; and 4) each deposition is limited to one hour and appropriately focused, with Chipotle submitting proposed questions to the court, lessening the likelihood of abuse. Id. at *5-6.

Plaintiffs cite Negrete v. Allianz Life Ins. Co., No. CV 05-6838 CAS(MANx), 2008 U.S. Dist. LEXIS 118563 (C.D. Cal. June 30, 2008) (hereinafter "Negrete"), for the proposition that where the plaintiffs' theory did not require relying on individual class member testimony, discovery from absent class members was unnecessary. Plaintiffs brought the action on behalf of a class of an estimated 200,000 people, alleging defendant Allianz had induced them to purchase annuities by means of misleading statements. Id. at *6. In this opinion, the district judge declined to alter the magistrate judge's order denying defendant leave to depose fifteen randomly selected class members on certain matters relating to the reasons they purchased the annuities. Id. at *7-9. The court found defendant had not demonstrated the requisite necessity for the depositions. Id. at *10. This is because plaintiffs proceeded on a theory that no rational investor would have bought any of the annuities if they had known their true value, and thus reliance by the class depended on whether Allianz had disseminated uniform and misleading statements and whether the products were intrinsically less valuable than other investments, and such question did not turn on "the degree to which individual class members relied upon the alleged misrepresentations and omissions of Allianz's salespersons." Id. at *10-12.

Plaintiffs also cite Baldwin & Flynn v. Nat'l Safety Assocs., 149 F.R.D. 598, (N.D. Cal. 1993) (hereinafter "Baldwin"). In this case, plaintiffs claimed defendants were operating a sales pyramid scheme, and the defendants sought to take the depositions of fifteen to twenty unnamed class members out of forty-four total absent members. 149 F.R.D. at 599. The defendants opposed class certification because each plaintiff may have heard a different sales pitch from a different salesperson, including from independent contractors, and defendants wanted to hear from as many of the class members as possible to determine shared common questions of fact and law. Id. Plaintiffs argued the members were dispersed throughout the country, and that the allegations in the complaint and supporting declarations provided enough information to certify

the class. Id. The court held defendants hadn't demonstrated the need for the depositions at the pre-certification stage and denied the motion to compel the depositions. Id. at 600-601. The court specifically found that the plaintiffs provided ample documentation, such as promotional materials, audio-tapes, videos, scripted telephone presentations, and other written materials, and noted that any oral representations which might be revealed in depositions would only be "minor additions to the overwhelming volume of evidence of NSA's recruitment techniques," and thus defendants failed to demonstrate the need for the depositions. Id.

Defendants cite Rojas, wherein plaintiffs were unnamed former and current agricultural employees of defendants, bringing claims for violation of the Agricultural Workers Protection Act, failure to pay wages, failure to provide rest and meal periods, and others. Rojas v. Marko Zaninovich, Inc, No. 1:09-CV-00705 AWI, 2011 WL 2636071, at *1 (E.D. Cal. July 5, 2011) (hereinafter "Rojas"). Following an informal conference with the court, the court granted a request to depose five of the absent class members who submitted declarations. Id. After this, some of the declarations of the proposed deponents were withdrawn because of discrepancies, and the court then ordered plaintiffs to compare the declarations of absent members with a database provided by defendants and to notify defendants of any further discrepancies. Id. at *1-2. Plaintiffs then notified defendants that the dates of employment were incorrect in forty-three of the declarations, and because of this, the defendant vineyard sought to depose the person(s) responsible for interviewing the putative class members and drafting their declarations, and also sought to depose four additional putative class members who had submitted declarations. Id. at *2. The court denied the request to depose the interviewers, as unnecessary and not meeting the heightened standard applicable to deposing counsel. As to the depositions of the class members themselves, the court granted the request, noting the policies relating to discovery directed at absent class members is flexible, particularly where the potential witnesses had injected themselves into the litigation. Id. at *4. The court noted that the five depositions that were previously permitted disclosed inaccuracies in at least seven declarations, and at least six of the seven declarants defendant questioned or asked to question had either withdrawn their declaration, refused to testify, or testified in contradiction of the declarations. Id. The court held

that the additional four depositions could proceed, because the members had injected themselves into the litigation, the discovery was relevant to the claims and defenses, and it did not appear that defendant sought to take undue advantage of the class members.  Id.

Defendants cite Moreno v. Autozone, Inc., No. C-05-4432 MJJ EMC, 2007 WL 2288165 (N.D. Cal. Aug. 3, 2007) (hereinafter "Moreno").  In a brief opinion with limited factual details, the court noted that although generally not allowed, such discovery, even prior to certification, may be allowed where it is not sought to take undue advantage or harass class members, and is necessary for trial preparation, or opposing class certification.  Id. at *1.  The court held the defendant had met these criteria, because defendant only sought to take depositions of absent class members who injected themselves into the class certification motion by filing declarations, and because the depositions were sought to oppose the motion, they were for a legitimate purpose, and did not appear to be an attempt to take undue advantage or harass the absent members.  Id.  The court noted that while defendant may have access to relevant documents, the declarants appeared to have information not available to defendant absent a deposition.  Id. Also, the defendant agreed to limit the depositions to two hours, lessening the burden.  Id.  The court granted the request to depose two of the absent class members, and also offered, apparently without defendant requesting, to allow depositions of three other absent class members who submitted declarations.  Id.

Finally, Defendants cite Mas v. Cumulus Media Inc., No. C–10–1396 EMC, 2010 WL 4916402 (N.D. Cal. Nov. 22, 2010) (hereinafter "Mas").  Here, in a class action involving failure to pay overtime wages and expenses under the California Labor Code, the parties had agreed to allow the depositions of two absent class members prior to mediation.  Id. at *1.  Defendant had suspended the depositions because certain documents were not produced, and attempted to continue the depositions at a later date, and at plaintiffs' expense.  Id.  The court granted defendant's request, rejecting plaintiffs' argument that Tierno held the law generally forbids such discovery, instead noting that Tierno recognized flexibility in the law pertaining to discovery of absent class members.  Id. at *3.  The court found the discovery acceptable noting that the members testimony would likely be offered at some point in support of plaintiffs' case, as they

had been identified in the initial disclosures.  Id.

Now with a background of what a number of courts have focused on in various circumstances involving discovery directed at absent class members, the Court finds the proposed depositions in question here are reasonably necessary to addressing the claims and defenses in this matter, particularly given the fact that the proposed deponents are pulled from the forty-four absent class members who provided declarations in support of Plaintiffs' class certification motion, and thereby injected themselves into the litigation.  First, the Court finds the Arredondo and Rojas opinions to be analogous and supportive of Defendants' proposed discovery here.  Like here, the Arredondo and Rojas litigation involved a class of agricultural employees bringing claims for labor code violations, non-payment for off the clock work, and failure to compensate for the use of tools.  Arredondo, 2014 U.S. Dist. LEXIS 145562, at *2; Rojas, 2011 WL 2636071, at *1.  The defendants in Arredondo were allowed to depose a cross-section of 200 absent members to address concerns about the claims and defenses as applied to a variety of work crews across the class of 25,000.  2014 U.S. Dist. LEXIS 145562, at *15-16.  The Rojas court noted the law pertaining to absent member discovery is particularly flexible where the members injected themselves into the litigation by submitting declarations in support of a motion for certification.  2011 WL 2636071, at *4.

Here, Defendants highlighted at the hearing that they had selected the potential deponents from the forty-four absent class members that submitted declarations in order to obtain testimony from a spectrum of the employee class members that worked across different locations, with different crops, and to get differing perspectives on a number of distinct crew-bosses.  Defendants also pointed out at the hearing that these claims go back to 2011, and this sampling tries to gain perspective from the different time periods that these differing crews worked.  For these reasons, the situation here is also unlike Clark, heavily relied on by Plaintiffs, where the Seventh Circuit could not affirm the lower court's dismissal of class members for failing to appear for depositions because it found the record was "*devoid of any showing* that defendants met [their] burden" of demonstrating the depositions were necessary.  501 F.2d at 341 (emphasis added).

For these reasons, this case is also distinguishable from <u>McPhail</u>, heavily relied upon by Plaintiffs, where the court did not allow written interrogatories and requests for admission to be directed at all 178,527 members of the class. 251 F.R.D. at 517-18. The <u>McPhail</u> court found such expansive discovery not necessary because defendants could rebut the element of reliance by the class members by presenting testimony at trial from sales personnel, managers, and officers, who could testify that there were not policies that encouraged misrepresentations in sales pitches, or by presenting and demonstrating that sales scripts did not contain material misrepresentations. Id. at 518. This is similar to <u>Negrete</u> in this regard, where the element of reliance by the class depended on whether defendant Allianz had disseminated uniform and misleading statements and whether the products were intrinsically less valuable than other investments, and the court had found such element did not turn on "the degree to which individual class members relied upon the alleged misrepresentations and omissions of Allianz's salespersons." 2008 U.S. Dist. LEXIS 118563 at *10-12. Here, unlike <u>McPhail</u> and <u>Negrete</u>, the claims, allegations, and defenses to such are more diverse and dependent upon the experiences of a spectrum of employees that worked for different crew-bosses, in different locations at different time periods, and for different crop products, which Defendants hope to survey given these particular proposed deponents have submitted declarations concerning these claims.

On one hand, <u>Chipotle</u> is supportive of Defendants position in that the court found the fact that the absent class members had submitted declarations in support of the motion for class certification significant to the factor of necessity, noting, like <u>Rojas</u>, the rules regarding discovery of absent class members were particularly flexible where the members had injected themselves into the litigation. 2011 U.S. Dist. LEXIS 54854 at *3-4; 2011 WL 2636071, at *4. However, on the other hand and in support of Plaintiffs' position, the <u>Chipotle</u> court also found it significant that the class members were not employees but customers, and therefore Chipotle had less of an opportunity to question the members as in cases where they are employees, and also noted the potential chilling impact upon employee deponents is greater than on customers. 2011 U.S. Dist. LEXIS 54854 at *4-6. This potential chilling impact is addressed further below in this order when discussing the factors of proper purpose and undue burden upon the proposed

deponents here, however at least in so far as the factor of necessity, the <u>Chipotle</u> courts' analysis of deponents who inject themselves into litigation through the submission of declarations during the certification stage supports Defendants position as to necessity here.

This case is readily distinguishable from <u>Baldwin</u>, wherein the court held defendants had not demonstrated the need for the depositions at the pre-certification stage and denied the motion to compel depositions. 149 F.R.D. 599-601. In addition to the fact that the discovery was attempted at the pre-certification stage, the court specifically found that the plaintiffs provided ample documentation, such as promotional materials, audio-tapes, videos, scripted telephone presentations, and other written materials, and noted that any oral representations which might be revealed in depositions would only be "minor additions to the overwhelming volume of evidence of NSA's recruitment techniques," and thus defendants failed to demonstrate the need for the depositions. <u>Id.</u> at 600-601.

The Courts find <u>Moreno</u> and <u>Mas</u> as not particularly useful in that they do not provide extensive analysis of the issues relevant here, nor did they involve more than a handful of depositions, however both are supportive of Defendants pursuit of discovery. <u>Moreno</u> offers additional support for Defendants' position that discovery may be more permissible where the class members submit declarations, and while the court allowed the depositions to occur pre-certification for purposes of opposing the motion for certification, it is relevant here because the court allowed the discovery considering such to be necessary and for a proper purpose. 2007 WL 2288165 at *1. Both <u>Mas</u> and <u>Moreno</u> stand for the principle that discovery should be allowed where the deponents are witnesses that will likely be utilized or injected themselves into the litigation. 2007 WL 2288165 at *1; 2010 WL 4916402 at *3. The court in <u>Moreno</u> specifically allowed depositions for purposes of opposing certification in Moreno after declarations were submitted by the class members, and allowed in <u>Mas</u> because the members were identified in the initial disclosures. <u>Id.</u> While Plaintiffs argue they did not identify these class members that submitted declarations as potential witnesses in the Rule 26 disclosures, the disclosures specifically state "while Plaintiffs anticipate that a large number of proposed class members will have information related to these subjects, Plaintiffs have yet to identify any such

witnesses." (See Decl. of Mario Martinez ¶ 7, Ex. C at 309, ECF 207-2.)  Further, at the hearing, when asked if Plaintiffs only intend to call the two named class members at trial, Plaintiffs' counsel stated they hadn't decided who they are going to call at trial, and stated they imagine they would call other witnesses, and attempted to argue if called at trial, Defendants could then cross-examine such witnesses, but should not be entitled to obtain any discovery from these potential witnesses during the merits discovery phase.  To prevent Defendants from pursuing limited and reasonable discovery directed at witnesses that not only Plaintiffs concede may be called at trial, but have already interjected their declarations into the matter in the motion for certification, would appear to violate Defendants' right to due process and ability to properly prepare themselves and defend against the various claims brought by Plaintiffs in this matter.

Finally, while Tierno appears to somewhat support Plaintiffs' position, it is also readily distinguishable and less persuasive than may appear at first glance.  There, defendants sought depositions from one hundred class members, and in analyzing the necessity, the court found the employer could have conducted such interviews of the employee managers during the year and half certification stage.  2008 U.S. Dist. Lexis 112461 at * 17-19.  Of importance to the analysis here, in upholding the magistrate judge's decision, the district judge found it key that it was early in the litigation and appeared premature to conduct such depositions, and the district judge "clarif[ied] that it is without prejudice to more limited requests for discovery relating to class members whose testimony Plaintiff's plan to offer, made in the context of an agreed-upon discovery plan."  Id. at *19-20.  Further, as Defendants point out, the defendant in Tierno had a smaller number of managers to deal with than the situation here involving 19,000 potential class members, and the defendant in Tierno had complete access to the employees, whereas here such would not have been as feasible, given the absent class members work in various and alternating crews at various locations and time periods.  Defendants contend, and the Court is inclined to agree, that expecting Defendants to have drafted and requiring the 19,000 putative class members to fill out and return a questionnaire before certification would have been impractical, and Plaintiffs would have likely objected to such an attempt by Defendants.

For these reasons, the Court finds that Defendants have sufficiently demonstrated

1    necessity for the proposed depositions under the relevant case law cited by both parties.  The

2    Court now turns its attention to the burden imposed by the potential depositions, and whether the

3    discovery is sought for an improper purpose.

### B.  The Burden Created by the Proposed Depositions

5        Plaintiffs argue Defendants must demonstrate that responding to the discovery would not

6    require the assistance of counsel.  (JS at 11-12, citing McPhail, 251 F.R.D. at 518-19.)  Plaintiffs

7    also direct the Court to Chipotle, 2011 U.S. Dist. Lexis 54854 at *5, where the court recognized

8    that depositions of absent class members could have a chilling effect on their willingness to be

9    part of the class, and Plaintiffs highlight that the Chipotle court expressly relied on the fact that

10   the deponents were not employees, but customers, and consequently they were not under the

11   pressure employees would face being deposed by their employer.  (JS at 12-13.)  In contrast,

12   Plaintiffs argue that here Defendants seek to depose their own employees, and there exists a

13   substantial risk of a chilling effect on their willingness to participate in the litigation and of the

14   possibility of express or implied threats.  Plaintiffs argue it is an undue burden to subject the

15   class members to lengthy and invasive depositions and requests for document productions,

16   especially in light of Defendants' refusal to agree to any reasonable limitations, which Plaintiffs

17   believe suggests shows the true purpose of the depositions is to harass those class members and

18   dissuade them from exercising their rights.  (JS 13-14.)  Plaintiffs thus urge the Court to reject

19   the proposed depositions because requiring these employees to sit for wide-ranging, full-day

20   depositions and respond to broad document requests without the assistance of counsel would be a

21   gross abuse of the discovery process.  (JS 13-14.)

22       Defendants respond that depositions are a standard tool for testing witness testimony, and

23   Plaintiffs' claim that these class members will have to sit for wide-ranging, full-day depositions

24   and respond to broad document requests without the assistance of counsel is illogical given that

25   Plaintiffs' counsel has been appointed to represent the entire class, and is thus obligated to

26   defend depositions and respond to discovery requests on behalf of the absent class members that

27   they now have been appointed to represent.  (JS at 26.)  Defendants contend that Plaintiffs'

28   concern about the depositions having a chilling effect on willingness to participate in the

litigation is misplaced because the declarants have already demonstrated their willingness to participate in the litigation by injecting themselves into it with their submitted declarations. (JS at 28.) Defendants further emphasize there is no evidence of any coercion, intimidation, or attempt to mislead any class members in the record. Finally, Defendants also state they are willing to make reasonable payments to class members for time spent in depositions if the Court rules that such payments are permissible and warranted under the circumstances.

Here, Plaintiffs conceded at the hearing that because the class has been certified, the potential deponents are in fact represented by class counsel. Therefore, counsel will be present and available to guide the potential deponents through the process of the depositions.

The Court recognizes, like in Chipotle, that depositions of absent class members can have a chilling effect on their willingness to be part of the class, especially where the deponents are employees, and thus depositions may place a greater burden on such employees. However, given that the potential deponents already injected themselves into the litigation by submitting declarations, appearing for depositions on the subjects that the declarants have submitted sworn statements regarding does not appear to be an undue burden on these individuals. See Chipotle, 2011 U.S. Dist. LEXIS 54854, at *3-4; Rojas, 2011 WL 2636071, at *4; Moreno, 2007 WL 2288165, at *1. Any potential chilling effect would likely have prevented these employees from submitting the declarations in the first place. Additionally, while the Court recognizes that potentially losing a day's wages can be a substantial burden for daily wage earners, the Court notes that Defendants, in their moving papers and at the hearing, stated they have no objection to paying a reasonable sum to make up for any potential lost wages in order to alleviate the burden of deposing these absent class members.[7]

Further, this situation is distinguishable from McPhail. There, the court did not allow written interrogatories and requests for admission to be directed at all 178, 527 members of the class, finding the ability of such a large number of absent class members to be able to adequately respond with detailed written responses to be impracticable and unrealistic without the assistance

---

[7] The Court considers this agreement as an agreement by a party as the rules do not authorize the Court in imposing such a condition (other than a witness fee and costs). However, payment of wages is a consideration that Court can look to a burden on a deponent.

of counsel.  251 F.R.D. at 517-18.  Also, in <u>Arredondo</u>, the court found no undue burden in allowing 200 depositions out of a class of 25,000 members, where such amount was less than 1% of the class, and was reasonable given the large amount of money at stake, and the need to test evidence provided to the court during the certification stage.  2014 U.S. Dist. LEXIS 145562 at *22-23.

Recognizing the presumptive ten deposition limit in Rule 30 of the Federal Rules of Civil Procedure, and weighing the necessity and potential burden on these absent class members, the Court finds at this point in the discovery process, granting Defendants leave to complete fifteen depositions of the absent class members who submitted declarations in support of the motion for class certification is a reasonable allowance.  Given the two depositions already completed by Defendants, this will bring the presumptive total of depositions to seventeen.  While Defendants seek to depose twenty-five of the absent class members, courts generally require a party to exhaust their allowed number of depositions before moving to conduct additional depositions.  <u>Thykkuttathil</u>, 294 F.R.D. at 600; <u>Kaseberg</u>, 2016 WL 8729927, at *3; <u>Aerojet Rocketydyne, Inc. v. Glob. Aerospace, Inc.</u>, No. 2:17-CV-01515-KJM-AC, 2018 WL 5993585, at *1 (E.D. Cal. Nov. 6, 2018); <u>Nat. Res. Def. Council, Inc.</u>, 2008 WL 11338647, at *2.  Given the complexities of the case, the size of the class totaling roughly 19,000 members, and the fact that these members injected themselves into the litigation with the submission of their declarations, the Court is not requiring Defendants to complete the first ten depositions before requesting leave for the additional depositions beyond the presumptive ten deposition limit, however the Court is not inclined to grant the full twenty-five as requested.  After the first fifteen absent class members are deposed, the Court may entertain a request for further leave to conduct such additional depositions, if Defendants feel they prove necessary at that point.

Additionally, at this point, the Court declines to impose any limitation on the duration of the individual depositions, given the potential need for translators, and because the needs of the potential depositions are unknown before a handful of initial depositions are completed.  However, the Court is not opposed to reconsidering this aspect after the first few initial depositions are completed, and at that juncture, Plaintiffs may move for such limitations to be

imposed on subsequent depositions if the duration of the initial depositions prove to be overly burdensome to the deponents.

### C. Proper Purpose

Plaintiffs contend Defendants' stated purpose of conducting the discovery to gain a better understanding of trial strategy due to Plaintiffs not having submitted a trial plan, is not an appropriate purpose for the discovery at this stage of the proceedings, as this Court has already twice denied Defendants' attempts to compel Plaintiffs to submit their trial plan, with the Court most recently advising Defendants to not attempt another such motion until the close of the merits-phase of discovery, scheduled for January 2020. (JS at 5-6, citing ECF Nos. 77, 185.)[8] Plaintiffs also argue Defendants' purpose of testing allegations of the deponents made in the pre-certification declarations, as a means of protecting Defendants' due process rights, is now not necessary because the class has already been certified, and because there is no representation that these members will be trial witnesses, Defendants' attempt to test the prior allegations would serve no purpose other than to attempt to reduce the size of the class, or what amounts to the same thing, decertification of the class. (JS at 7.)

In response, Defendants first argue that as for the trial plan, Plaintiffs ignore the fact that Judge Drozd expressly contemplated revisiting the issue of a trial plan after "the close of merits-phase discovery," and contend Judge Drozd did not expect that the parties would wait to engage in discovery related to whether or not a trial plan could be crafted that would allow for manageable class-wide litigation until after the close of discovery. (JS at 22, citing ECF No. 185 at 60.) Rather, Defendant argues that Judge Drozd wanted to assess the need for a trial plan after discovery is completed. (JS at 22, citing ECF No. 185 at 59 (noting that "requests" for a trial plan motion were improper at the time because "no merits-phase discovery has yet taken place in this action").) Defendants believe that deposing the absent class members will help determine whether a trial plan is necessary, and, if so, whether Plaintiffs' trial plan is appropriate, because it

---

[8] In the order, the Court stated "defendants are warned that future motions for such a trial plan prior to the close of merits-phase discovery will likely result in the award of sanctions, absent a showing that the requested trial plan is required by law. Simply put, plaintiffs are entitled to full discovery on their claims before being required to demonstrate how they will present their evidence at trial." (ECF No. 185 at 60.)

may reveal individualized issues that any future trial plan will need to take into account. (JS at 22.) Defendants also contend it is well recognized that "[b]ased on discovery or other developments, the party opposing the class may move to decertify the class on the basis that the prerequisites and grounds for a certification do not exist." (JS at 23.)

The Court finds no improper purpose in the discovery sought by Defendants. Courts have repeatedly recognized that there is often no clear-cut division between discovery that relates to class certification and merit-based discovery. Munoz v. PHH Corp., No. 1:08-CV-0759-DAD-BAM, 2016 WL 10077139, at *4 (E.D. Cal. Feb. 11, 2016) (citing True Health Chiropractic Inc v. McKesson Corp., No. 13–cv–02219–JST, 2015 WL 273188, at *2 (N.D. Cal. Jan 20, 2015) (noting that individual and class discovery typically overlap); Medlock v. Taco Bell Corp., No. 1:07–cv–01314–SAB, 2014 WL 2154437, *3 (E.D. Cal. May 22, 2014) (acknowledging "substantial overlap" between class certification discovery and merits discovery); Gusman v. Comcast Corp., 298 F.R.D. 592, 595 (S.D. Cal. 2014) ("Facts that are relevant to the class determination frequently will overlap with those relevant to the merits of the case."); Lindell v. Synthes USA, No. 1:11–cv–02053–LJO–BAM, 2013 WL 3146806, *6 (E.D. Cal. Jun. 18, 2013). (finding class-wide discovery requests relevant to issues of both the merits and class certification; noting class certification discovery is closely enmeshed with merits discovery); Yingling v. eBay, Inc., No. C 09–01733 JW (PVT), 2010 WL 373868, *4 (N.D. Cal. Jan. 29, 2010) (acknowledging that discovery may be related to both class certification issues as well as merits of action); Gray v. First Winthrop Corp., 133 F.R.D. 39, 41 (N.D. Cal. 1990) ("Discovery relating to class certification is closely enmeshed with merits discovery, and in fact cannot be meaningfully developed without inquiry into basic issues of the litigation.").)

As for Plaintiffs request that the protective order specify that Defendants cannot use the deposition testimony in support of any argument or motions for class decertification, the Court declines to grant this request. The Court agrees with Defendants in that decertification of class actions that ultimately prove incompatible with class adjudication is an accepted, and necessary, part of class action litigation. The Federal Rules of Civil Procedure allow for decertification of the class at any point in the litigation, and nothing in the rules restricts Defendants ability to

conduct discovery directed at absent class members. <u>See</u> Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); Marlo<u> v. United Parcel Service, Inc.</u>, 639 F. 3d 942, 947-48 (9th Cir. 2011) (upholding the district court's decertification of a class); <u>Arredondo v. Delano Farms Co.</u>, 301 F.R.D. 493, 527–29 (E.D. Cal. 2014) (considering new evidence developed after class certification and decertifying two subclasses). Therefore, the Court declines to read such a restriction into Defendants' ability to conduct reasonable discovery and will not grant to Plaintiffs what amounts to essentially a blanket immunity from decertification based on discovery that Defendants are entitled to complete.

Further, this situation is distinguishable from <u>McPhail</u> and <u>Clark</u>, heavily relied on by Plaintiffs. In <u>Clark</u>, the Seventh Circuit could not affirm the lower court's dismissal of class members for failing to appear for depositions because it found the record was "*devoid of any showing* that defendants met [their] burden" of demonstrating the depositions was necessary, or demonstrating an absence of a motive to take undue advantage of the class members. 501 F.2d 324 at 341 (emphasis added). There is no evidence here of a motive by Defendants to take undue advantage of the class members, and as to one of Plaintiffs' major concerns regarding this, the loss of daily wages, Defendants have stated in their moving papers and during the hearing, that they are not opposed to providing reasonable compensation for the time expended by the deponents. In <u>McPhail</u>, the court did not allow written interrogatories and requests for admission to be directed at all 178, 527 members of the class, finding the ability of such a large number of absent class members to be able to adequately respond with detailed written responses to be impracticable and unrealistic. 251 F.R.D. at 517-18. There, the court found that the practical effect of the discovery would be to reduce the size of the class, as the requests would have the effect of an opt-in procedure, given defendants reservation of the right to seek relief if absent members failed to timely respond. <u>Id.</u> The Court notes here that Defendants assured the Court at the hearing that Defendants are not planning on sanctioning or seeking other punishments for absent class members who do not appear for depositions, and if a substantial number do not show, they may alternatively have to seek deposing different members from the list of members

who submitted declarations in support of the motion for certification. This is similar to Arredondo, where the court found no evidence supporting Plaintiffs' allegation that Defendants planned to use the depositions to remove absent class members from the litigation for failing to appear at their noticed depositions, and if such improper purposes began to surface, plaintiffs could then bring such concern before the court. 2014 U.S. Dist. LEXIS 145562, at 24-26. If Plaintiffs fail to appear for a large number of depositions here, or Defendants do in fact seek sanctions or other remedies, the Court can address those issues when they come before the Court. Id.

For these reasons, the Court does not find evidence that Defendants' proposed depositions are being sought for any improper purposes.

## V.

## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED that Plaintiffs' motion for protective order is GRANTED IN PART AND DENIED IN PART as follows:

1. Defendants shall be granted leave to conduct a total of fifteen depositions of the absent class members who submitted declarations in support of the motion for class certification;

2. The depositions shall not be limited in time duration at this point, however after the first three depositions are completed, Plaintiffs may present to the Court a request for a limitation on the duration of the further depositions;

3. Plaintiffs request to limit Defendants' future ability to utilize the deposition testimony for purposes of class decertification is DENIED; and

///
///
///
///
///
///

4.    Plaintiffs' request to limit Defendants' ability to seek sanctions or other penalties for deponents that fail to appear for the depositions is DENIED, as the Court declines to make such a blanket restriction before any particular situation is presented to the Court, however the Court will duly consider the fact that Defendants assured the Court that they do not plan on seeking any such sanctions or penalties if Defendants in fact do pursue such remedies.

IT IS SO ORDERED.

Dated:   **March 5, 2019**

UNITED STATES MAGISTRATE JUDGE