UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEATRIZ ALDAPA, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>FOWLER PACKING CO., INC., et al.,<br><br>　　　　　Defendants. | No. 1:15-cv-00420-ADA-SAB<br><br>ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT<br><br>(ECF No. 278) |

**I.**

**Factual and Procedural Background**

This wage-and-hour class action lawsuit proceeds on Plaintiffs' First Amended Complaint (hereinafter "FAC") filed on October 20, 2016. (ECF No. 129.) Plaintiffs are a group of approximately 20,500 seasonal agricultural workers alleging a variety of state and federal labor law violations against Defendants between March 17, 2011 and January 1, 2019. (ECF No. 278 at 11–12.) Defendant Fowler Packing is a commercial grower, packer, and shipper of various fruits, and Defendant Ag Force is a farm labor contractor. (ECF No. 145 at 23.) Defendant Fowler Marketing International is responsible for marketing and selling the crops that Fowler Packing owns and that Ag Force employees harvest. (*Id.*)

The FAC alleges twelve claims: (1) violations of the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. § 1801, et seq., for failing to pay all wages due or provide

1

necessary tools; (2) failure to compensate for rest breaks in accordance with California Labor Code section 226.7 and Wage Order 14; (3) failure to pay all wages due under the employment contract by requiring off-the-clock work and allowing the use of "ghost workers;" (4) failure to pay overtime, as required by state law; (5) failure to pay the minimum wage, in violation of California Labor Code section 1194; (6) failure to pay waiting time penalties in violation of California Labor Code section 203; (7) failure to provide necessary tools or reimburse for tools in violation of California Labor Code section 2802; (8) violations of California Business and Professions Code section 17200 by underpaying workers, failing to provide rest periods, and retaining the benefits of the labor without reasonable compensation; (9) violations of California Labor Code section 226 by failing to keep accurate records or provide accurate statements to the employees; (10) failure to record and/or pay for travel time and wait time, in violation of California Labor Code section 1194 and 29 U.S.C. § 1801, et seq.; (11) failure to reimburse for vehicle expenses, in violation of California Labor Code section 2802; and (12) failure to provide meal periods and keep accurate records of meal periods in violation of Wage Order 14 and 29 U.S.C. § 1801, et seq.  (ECF No. 129 at 17–26.)

On February 16, 2018, the Court certified the following seven subclasses to represent claims in the FAC:

> 1. Piece Rate Rest Period Subclass
>
> All individuals who were employed by Defendants as a non-exempt "field worker" or agricultural worker from March 17, 2011 to present, and were compensated on a piece rate basis.
>
> 2. Unpaid Travel Time Subclass
>
> All individuals who were employed by Defendants as a non-exempt "field worker" or agricultural worker from March 17, 2011 to present, and worked at two or more fields in one day.
>
> 3. Vehicle Expense Subclass
>
> All individuals who were employed by Defendants as a non-exempt "field worker" or agricultural worker from March 17, 2011 to present, worked at two or more fields in one day, and drove their own car between fields.

///

4. Meal Period Subclass

All individuals who were employed by Defendants as a non-exempt "field worker" or agricultural worker from March 17, 2011 to present, for whom no meal period was recorded on at least one day in which the employee worked more than five hours.

5. Tools Subclass

All individuals who were employed by Defendants as a non-exempt "field worker" or agricultural worker from March 17, 2011 to present who purchased gloves, files, oil, safety glasses, shears, clippers, scissors, sheaths, or replacement parts for their work for Defendants.

6. Unpaid Work Subclass

All individuals who were employed by Defendants as a non-exempt "field worker" or agricultural worker from March 17, 2011 to present who were required to arrive before their shift or perform duties after their shift, or wait for fruit to dry before beginning work.

7. Inaccurate Wage Statement Subclass

All individuals who were employed at any of the Defendants between March 17, 2012 and present as non-exempt field or agricultural workers for the Defendants.

(ECF No. 185 at 60–61.)  Subsequently, on February 16, 2018, the Court approved the proposed content and distribution of the parties' stipulated class notice.  (ECF No. 190 at 4–5.)  Since that time, the parties have engaged in extensive discovery and attended three private mediations, the second of which produced a settlement agreement.  (ECF No. 278 at 13–14; Declaration of Mario Martinez (hereinafter "Martinez Decl.) ¶ 50.)

Under the agreement, Defendants will pay a total amount of $7,875,000.  (ECF No. 278 at 16; Class Action Settlement Agreement (hereinafter "Settlement Agreement") ¶ 37.)  After subtracting class counsel fees of $2,625,000 (a fee rate of 33 1/3%), class counsel costs of $500,000, estimated claims administration fees of $120,000, and class representative enhancements of $20,000 ($10,000 for each named plaintiff), the net settlement amount to be distributed to class members will total $4,610,000.  (ECF No. 278 at 16–17; Settlement Agreement ¶ 45.)  The Settlement Administrator will distribute the net settlement amount to class members on a pro rata basis depending on the number of weeks each class member worked during the March 17, 2011 to January 1, 2019 class period.  (ECF No. 278 at 12, 17; Settlement

3

1  Agreement ¶ 45(1)(a).)  Ninety days following the initial distribution, the Class Administrator

2  will re-distribute any unclaimed funds to those class members who claimed their portion of the

3  initial distribution.  (ECF No. 278 at 17; Settlement Agreement ¶ 45(1)(c).)  Depending on the

4  amount remaining after the initial redistribution, the Class Administrator will either conduct a

5  second re-distribution or will allocate the funds as cy pres, providing 50 percent of the remaining

6  amount to the Central California Food Bank and 50 percent to the Binational Center for the

7  Development of Oaxacan Indigenous Communities.  (ECF No. 278 at 17–18; Settlement

8  Agreement ¶ 45(1)(c).)

9  Plaintiffs filed an unopposed motion for preliminary approval of the class action

10  settlement on August 4, 2022.  (ECF No. 278.)  They ask that the Court: (1) grant preliminary

11  approval of the proposed settlement; (2) approve the proposed notice program and forms; (3)

12  confirm the appointment of Plaintiffs Beatriz Aldapa and Elmer Avalos as class representatives;

13  (4) confirm the appointment of Mario Martínez and Edgar Aguilasocho of Martínez Aguilasocho

14  Law, Inc. and Ira Gottlieb and Erica Deutsch of Bush Gottlieb as settlement class counsel;[1] (5)

15  confirm the appointment of CPT Group as settlement administrator; (6) set deadlines for mailing

16  settlement documents or objecting to the settlement;[2] and (7) schedule a final approval hearing of

17  the class settlement.  (*Id.* at 12.)

18  **II.**

19  **Legal Standard**

20  "Courts have long recognized that settlement class actions present unique due process

21  concerns for absent class members."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935,

22  946 (9th Cir. 2011) (citations and internal quotations omitted).  To protect the rights of absent

23  class members, the Federal Rules of Civil Procedure require district courts to approve all class

24  action settlements "only after a hearing and on finding that it is fair, reasonable, and adequate."

25  Fed. R. Civ. P. 23(e)(2); *Bluetooth*, 654 F.3d at 946.

---

[1] This order will not address Plaintiffs' third and fourth requests because the Court has previously found that the named plaintiffs and class counsel will adequately protect the interests of the subclasses.  (*See* ECF No. 185 at 61.)
[2] The parties do not include a request for a deadline to opt out of the settlement because class members have already been provided such an opportunity.  (ECF No. 278 at 17 (citing *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1121 (9th Cir. 2018).)  The Magistrate Judge approved the opt-out notice on March 18, 2016.  (ECF No. 62.)

1    Review of a proposed class action settlement ordinarily involves two phases. *See* David
2    F. Herr, Annotated Manual for Complex Litigation § 21.632 (4th ed. 2022). First, the court must
3    conduct a preliminary fairness evaluation and, if applicable, consider class certification. *Id.* If
4    the court makes a preliminary determination that the settlement terms are fair, reasonable, and
5    adequate, the parties must then send a notice to the class members containing the details of the
6    proposed settlement and the date of the final approval hearing. *Id.* Second, the court holds a final
7    approval hearing to determine whether to approve the settlement. *Id.*; *see also Narouz v. Charter*
8    *Commc'ns, Inc.*, 591 F.3d 1261, 1267 (9th Cir. 2010).

9    This order addresses the first phase – preliminary approval of a class action settlement.
10   "At this preliminary approval stage, the court need only determine whether the proposed
11   settlement is within the range of possible approval." *Ross v. Bar None Enters., Inc.*, No. 2:13-cv-
12   00234-KJM-KJN, 2014 WL 4109592, at *9 (E.D. Cal. Aug. 19, 2014) (citations and internal
13   quotations omitted). Federal Rule of Civil Procedure 23 does not explicitly provide for such a
14   procedure, but federal courts generally find preliminary approval appropriate if the proposed
15   settlement "appears to be the product of serious, informed, non-collusive negotiations, has no
16   obvious deficiencies, does not improperly grant preferential treatment to class representatives or
17   segments of the class, and falls with the range of possible approval." *Lounibos v. Keypoint Gov't*
18   *Sols. Inc.*, No. 12-cv-00636-JST, 2014 WL 558675, at *5 (N.D. Cal. Feb. 10, 2014) (quoting *In re*
19   *Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)); 4 William B.
20   Rubenstein, Newberg and Rubenstein on Class Actions § 13:13 (6th ed. 2022). In other words,
21   preliminary approval of a settlement is contingent on both a procedural and substantive
22   assessment of the proposed terms. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079.
23   A district court reviewing a proposed settlement is not, however, to "reach any ultimate
24   conclusions on the contested issues of fact and law which underlie the merits of the dispute."
25   *Chem. Bank v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

26   **A.     Procedural Fairness**

27   The Court's first inquiry is to determine whether the parties arrived at their settlement
28   through arm's length bargaining, rather than collusion or fraud. *Millan v. Cascade Water Servs.*,

*Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015). A settlement is presumed fair if it "follow[s] sufficient discovery and genuine arms-length negotiations." *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)). "Participation in mediation prior to settlement 'tends to support the conclusion that the settlement process was not collusive.'" *Millan*, 310 F.R.D. at 613 (quoting *Palacios v. Penny Newman Grain, Inc.*, No. 1:14-cv-01804-KJM, 2015 WL 4078135, at *8 (N.D. Cal. Nov. 21, 2012)).

Plaintiffs represent that both the discovery and settlement negotiations in this matter have been robust. The parties first participated in a full-day mediation in 2016. (Martinez Decl. ¶ 50.) They conducted a subsequent full-day mediation in November 2018. (*Id.*) While these mediations did not result in a settlement, both mediators remained involved in ongoing settlement discussions. (*Id.*) The instant settlement agreement is the result of a third full-day mediation that occurred on February 2, 2022. (*Id.*) Plaintiffs contend that all three mediators who assisted in resolving this matter are well-respected in the area of class action employment law. (*Id.*)

Additionally, extensive discovery has informed the negotiating process. Plaintiffs state that Defendants "have produced over 500,000 pages of raw data, including pay and time records, employment policies, invoices, and other documents related to the several causes of action in this case." (*Id.* ¶ 51.) Defendants have also provided "4,191,536 rows of electronic data covering 2,229,1188 [sic] workdays and over 479,600 paychecks issued to workers during the class period." (*Id.*) Plaintiffs deposed Defendants' Rule 30(b)(6) witnesses and three expert witnesses, and Defendants deposed 17 class members and two expert witnesses. (*Id.*) The experts produced reports and rebuttals, upon which the parties relied during settlement negotiations. (*Id.*) Plaintiffs' counsel, who have "a great deal of experience litigating and evaluating class action cases," contend that the proposed settlement is fair, reasonable, adequate, and in the best interests of the settlement class. (*Id.* ¶¶ 51–52; Declaration of Ira Gottlieb (hereinafter "Gottlieb Decl.") ¶¶ 3–7.) Based on these representations, the Court agrees that the settlement agreement is the product of genuine, informed, and arms-length negotiations.

///

**B.  Substantive Fairness**

    **i.  Adequacy of the settlement amount**

To evaluate the fairness of a settlement award, courts generally consider a number of factors: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575–76 (9th Cir. 2004). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Just. v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982). To evaluate the adequacy of a proposed settlement, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080.

The proposed settlement in this case is for a total amount of $7,875,000, with $4,610,000 going to the settlement class. (ECF No. 278 at 16–17; Settlement Agreement ¶¶ 37, 45(5).) Plaintiffs estimate that their claims are worth between $16,541,382 and $22,915,231, not including attorneys' fees and costs. (ECF No. 278 at 23; Martinez Decl. ¶ 17.) This amount does not include an alleged $14,936,512 in rest break premium payments under California Labor Code section 226.7 that is subject to risk based on a separate pending suit in the Eastern District. (ECF No. 278 at 23, n.4; Martinez Decl. ¶ 17, n.2.) It also does not include the statutory penalties and damages that Plaintiffs estimate could push the total recovery over $100 million. (ECF No. 278 at 23, 43; Martinez Decl. ¶ 17.) Plaintiffs calculate that the proposed settlement represents between 34% and 47% of the entire amount they believe Defendants owe the class in wages and interest. (ECF No. 278 at 23; Martinez Decl. ¶ 17.) That number is not, however, entirely accurate because it divides the total settlement amount, including attorneys' fees, by an estimated possible recovery that does not include attorneys' fees. The Court finds that the actual proposed class recovery amount of $4,610,000 represents between 20% and 28% of the estimated wages

and interest recovery amount.  If the Court were to include the alleged $14,936,512 in rest break premium payments as part of the estimated recovery amount, the actual class recovery would represent between 12% and 15% of that entire amount.

Plaintiffs provide a number of explanations why the discounted settlement amount is appropriate in this case.  Their assessment divides the claims into two categories: "records-based claims" – those based on a direct assessment of records that Defendants provided in discovery – and "survey-based claims" – those based on a random sample survey that Plaintiffs' experts conducted among the class members.  (*See* ECF No. 278 at 24.)  The "records-based claims" include the rest period claim, the meal period claim, and the unpaid travel time claim.  (*Id.*)  The "survey-based claims" include the unpaid non-productive time claim, the unpaid off-the-clock work claim, the vehicle mileage reimbursement claim, and the tool reimbursement claim.  (*Id.*)  Separately, Plaintiffs discuss the risks associated with their claims to penalties that, they allege, would push the recovery in this case above $100 million.  (*See id.* at 41–43.)

### 1. Records-based claims

The rest period claim represents the largest risk in the "records-based claims" category.  The risk is so large, in fact, that Plaintiffs do not include any of the estimated $14,936,512 recovery for that claim in their calculation of the adequacy of the settlement in this case.  (Martinez Decl. ¶ 17, n.2.)  The reason for this stems from a separate proceeding brought by Defendants that is pending in the Eastern District under the name *Fowler Packing, Co. v. David Lanier*, No. 1:16-cv-00106-DAD-SAB.  (ECF No. 278 at 28.)  The facts of that case are convoluted, but the essence of Defendants' argument is that the California law permitting Plaintiffs to sue for lost rest period wages violates equal protection.  *See Fowler Packing Co, Inc. v. Lanier*, 844 F.3d 809, 813–14 (9th Cir. 2016).  The Ninth Circuit has expressed agreement with that argument, holding that the law does not pass rational basis review.  *Id.* at 816.  The Court agrees with Plaintiffs that the posture of the *Lanier* case subjects their rest period claims to significant risk.

Additionally, Plaintiffs contend that their meal period claims are subject to risk because experts for each side have come to differing conclusions after assessing the relevant data.  (ECF

No. 278 at 31; Martinez Decl. ¶ 31.) Specifically, Defendants' experts have alleged numerous errors in Plaintiffs' experts' analysis and have calculated that Plaintiffs have overstated meal break premium damages by 66.9%. (ECF No. 278 at 31, n.6; Martinez Decl. ¶ 49.)

While neither party disputes the amount of the final "records-based claim" – unpaid travel time damages – Plaintiffs note that the $34,425 amount in controversy is modest compared to the other claims. (ECF No. 278 at 31, n.7.)

### 2. Survey-based claims

Plaintiffs hired experts to conduct and analyze a random statistical survey of settlement class members. (*Id.* at 33; Martinez Decl. ¶ 33.) Defendants have hired experts of their own who "challenge virtually every aspect" of Plaintiffs' experts' survey "from piloting and methodology, to execution and results." (ECF No. 278 at 41; Martinez Decl. ¶ 47.) While Plaintiffs express confidence in the accuracy of the survey results, they acknowledge that a trial would subject their claims to a "battle of experts" with no guarantee of success. (ECF No. 278 at 41; Martinez Decl. ¶ 47.) They also note that, while random surveys have been "validated by peer review," they remain "highly litigated" in courts. (ECF No. 278 at 41; Martinez Decl. ¶ 47.)

### 3. Penalties

The disagreement between the parties on the issue of penalties is immense. While Plaintiffs estimate penalties above $100 million, Defendants assert that flaws in both Plaintiffs' "records-based claims" calculations and Plaintiffs' random survey, among other factors, make it possible that the settlement class would be entitled to a far smaller amount in penalties, if any. (ECF No. 278 at 42; Martinez Decl. ¶ 49.) Additionally, Defendants argue that, depending on the outcome of the *Lanier* case, Plaintiffs may not be entitled to any waiting time penalties at all. (ECF No. 278 at 42; Martinez Decl. ¶ 49.)

### 4. Conclusion

At the outset, the Court agrees it is reasonable to analyze the adequacy of the settlement amount without reference to either the rest period claims or penalty claims. As discussed above, the *Lanier* case subjects the rest period claims to significant risk. Additionally, the chasm between the parties' estimation of penalties indicates that they would be subject to intensive

litigation with uncertain results.  Therefore, the Court finds it appropriate to assess the proposed class recovery amount of $4,610,000 as representing between 20% and 28% of the estimated wages and interest recovery amount.  This estimated recovery is not out of line with other class action settlements.  *See, e.g.*, *Marquez Amaro v. Gerawan Farming, Inc.*, No. 1:14-cv-00147-DAD-SAB, 2019 WL 3772804, *4–*5 (E.D. Cal. Aug. 8, 2019) (approving a settlement of approximately 20 percent as preliminarily fair); *Villegas v. J.P. Morgan Chase & Co.*, No. 09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (approving a settlement of approximately 15 percent as preliminarily fair).  Plaintiffs have also detailed a number of risks – including proof issues, varying expert opinions, and possible defenses – that make full recovery in this case far from certain.  Additionally, this case is already almost seven years old, and the parties have engaged in extensive discovery and settlement negotiations.  Further litigation will likely be complex, expensive, and time consuming.  (*See* Gottlieb Decl. ¶ 4; Martinez Decl. ¶ 4.)  Finally, class counsel have significant experience litigating class action lawsuits.  (*See* Gottlieb Decl. ¶¶ 8–11; Martinez Decl. ¶¶ 58–61.)

Considering all the information that Plaintiffs have provided in their motion for preliminary approval, the Court concludes that the proposed settlement amount is substantively fair, reasonable, and adequate.

**ii.     Attorneys' fees and costs**

When a negotiated class action settlement includes an award of attorneys' fees, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *Bluetooth*, 654 F.3d at 941; *see also Zucker v. Occidental Petrol. Corp.*, 192 F.3d 1323, 1328–29 (9th Cir. 1999).  Where, as here, fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial."  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994).  As a result, the court must assume a fiduciary role for the class members in evaluating a request for an award of attorney fees from the common fund.  *Id.*; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009).

///

1       Courts in the Ninth Circuit have the discretion to choose from two methods for
2  determining attorneys' fees in cases like this: the "percentage of the fund" method and the
3  "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (2002) (citation omitted).
4  "Reasonableness is the goal, and mechanical or formulaic application of either method, where it
5  yields an unreasonable result, can be an abuse of discretion." *In re Coordinated Pretrial Procs.*
6  *in Petrol. Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997).

7       Under the percentage of the fund method, courts may award class counsel a percentage of
8  the common fund recovered for the class. *Bluetooth*, 654 F.3d at 942. In the Ninth Circuit, a
9  twenty-five percent award is the "benchmark," but courts may adjust this figure if the record
10 shows "special circumstances justifying a departure." *Id.* (quoting *Six (6) Mexican Workers v.*
11 *Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). Such special circumstances might
12 include achieving exceptional results for the class, undertaking extremely risky litigation,
13 generating benefits for the class beyond the cash settlement fund, or handling the case on a
14 contingency basis. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir.
15 2015). When departing from the twenty-five percent benchmark, courts must provide an
16 explanation. *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000)

17      The lodestar method requires courts to multiply the number of hours the prevailing party
18 reasonably spent litigating the case by a reasonable hourly rate for counsel. *Bluetooth*, 654 F.3d
19 at 941. The result of such a computation is a presumptively reasonable fee. *See Gonzalez v. City*
20 *of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013).

21      The Ninth Circuit has recommended that district courts apply one method but cross-check
22 the appropriateness of the determined amount by employing the other as well. *See Bluetooth*, 654
23 F.3d at 944. This diligence is particularly important "where the plaintiff has achieved 'only
24 limited success,' [and] counting *all* hours expended on the litigation – even those reasonably
25 spent – may produce an 'excessive amount . . . .'" *Id.* at 942 (quoting *Hensley v. Eckerhart*, 461
26 U.S. 424, 436 (1983).

27      Separate from a fee award, "[t]here is no doubt that an attorney who has created a
28 common fund for the benefit of the class is entitled to reimbursement of reasonable litigation

11

expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (citation and internal quotations omitted).

Here, class counsel will seek $500,000 in costs. (ECF No. 278 at 16; Settlement Agreement ¶ 45(3).) Additionally, class counsel will seek attorneys' fees not to exceed one-third of the total settlement amount, or $2,625,000. (ECF No. 278 at 16; Settlement Agreement ¶ 45(3).) The amount requested here exceeds the Ninth Circuit benchmark but is still within the typical range of acceptable attorneys' fees. *See Morales v. Stevco, Inc.*, No. 1:09-cv-00704 AWI JLT, 2011 WL 5511767, at *12 ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark."). Given the length of time this case has been pending, the extensive discovery and use of experts, the numerous mediations, and the fact that the maximum request for attorneys' fees falls within the typical range for awards in the Ninth Circuit, the Court approves class counsel's requests for attorneys' fees and costs on a preliminary basis. Nevertheless, the Court will require more information from class counsel prior to final approval of attorneys' fees in order to justify departing from the benchmark. *See Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 174 (N.D. Cal. 2019) ("In support of an increase above the 25 percent benchmark, Plaintiffs must submit evidence – declarations, billing summaries, etc. – from which the Court could determine an appropriate lodestar figure to cross-check the amount requested."). Therefore, prior to the final approval hearing, class counsel shall file a formal motion for attorneys' fees and costs – including declarations, detailed billing records, and an itemized list of costs. This will permit the Court to assess the reasonableness of the requested costs and cross check the requested attorneys' fees with a lodestar amount based on the submission of class counsel. It will also allow class members an opportunity to object to the attorneys' fees and costs, as required by Rule 23(h). *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993–94 (9th Cir. 2010).

### iii. Incentive payment

"Incentive awards are fairly typical in class action cases." *Rodriguez*, 563 F.3d at 958. Nevertheless, "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols.*

*Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013). For example, a conflict may arise between class representatives and unnamed class members when there is a significant disparity between the incentive awards and the distribution to the unnamed class members, or when incentive payments are conditioned on a named plaintiff's acceptance of a settlement agreement. *Id.* at 1165. In assessing the appropriateness of an incentive payment, courts should consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Staton v. Boeing Co*, 327 F.3d 938, 977 (9th Cir. 2003) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

The proposed settlement agreement states that the two named plaintiffs will seek a total of $20,000, up to $10,000 each, as an incentive award. (ECF No. 278-1 at 41; Settlement Agreement ¶ 45(2).) Class counsel assert this amount is reasonable given the named plaintiffs' "time, effort, and expense incurred in coming forward to litigate this case on behalf of all Class Members." (Martinez Decl. ¶ 62.) The "significant time and efforts" the named plaintiffs' expended on this case included, "providing information to Class Counsel regarding the nature of their claims, consulting with Class Counsel on multiple telephone calls, regularly discussing the status of their case with counsel by telephone and in person, and providing information to other Class Members regarding the status of the certified class action." (*Id.*) The incentive award also accounts for certain risks that the named plaintiffs incurred in litigating this matter. These risks included the possibility of paying legal fees to Defendants if the class did not prevail at trial, and the risk of losing employment opportunities based on their involvement in this litigation. (*Id.* ¶¶ 63–64.) Class counsel insist that none of the other class members assumed these particular risks. (*Id.*) Finally, by signing the settlement agreement, the named plaintiffs assumed a risk that they would not receive any incentive payment: the settlement agreement states, "In the event that the Court reduces or does not approve the requested Class Representative Enhancements, Plaintiffs shall not have the right to revoke the Settlement, and it will remain binding." (Settlement Agreement ¶ 45(2).)

///

The total proposed incentive amount of $20,000 represents .25 percent of the total settlement amount of $7,875,000.  Under the net settlement amount of $4,610,000, each of the 20,500 class members will receive an average payment of about $225.  The amount of the proposed incentive award, and the disparity between the award and the average class member payment, is not out of line with other incentive awards that courts in this circuit have granted. *See, e.g.*, *Marquez Amaro*, 2019 WL 3772804, at *6–*7 (approving $20,000 in total incentive awards, representing .4 percent of the overall settlement amount, and collecting cases approving of similar incentive awards in the Eastern District of California); *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 940, 942–43 (approving incentive award of $5,000 to eight named plaintiffs, constituting .14 percent of the total settlement amount, where unnamed plaintiffs received only $12 each).

Apart from these calculations, the Court notes several other factors indicating that the proposed incentive payments are reasonable.  First, the named plaintiffs have assisted in this litigation for almost seven years. Second, the settlement agreement does not condition payment of the incentive award on acceptance of the settlement.  Third, and most significantly, the risk of losing future employment opportunities is acute in a case like this, where the named plaintiffs work on a wage and hour basis harvesting crops in a small community.  The Court, therefore, finds that this incentive award is reasonable at the preliminary approval stage and that the amount does not call into question the adequacy of the named plaintiffs' representation of the class.  Prior to the final approval hearing, Plaintiffs shall provide the Court evidence of the specific amount of time the named plaintiffs spent on this litigation, the particular risks and burdens each named plaintiff carried as a result of bringing this action, and the particular benefits the named plaintiffs provided to class counsel and the class as a whole throughout the litigation.  *See Marquez Amaro*, 2019 WL 3772804, at *7.

### iv.  Release of claims

The settlement agreement defines "Released Claims" as:

> [A]ny and all claims, debts, liabilities, demands, obligations, penalties, guarantees, costs, expenses, damages, attorney's fees, action or causes of action of whatever kind or nature, whether known

> or unknown, contingent or accrued, that are alleged, related to or that reasonably could have arisen out of the same facts alleged in the Action. This Release shall include, without limitation, claims that were raised, or that reasonably could have been raised, under any applicable Wage Order (in effect during the Class Period and as subsequently amended) and California Labor Code provisions, including Labor Code sections 201, 201.5, 200, 202, 203, 205.5, 218.5, 221, 223, 226, 226.2, 226.7, 1194, 1197, 2802, California Business and Professions Code sections 17200, 17203, and 17204 based on alleged violations of these Labor Code provisions, or under the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. § 1801 et seq. The period of the Released Claims shall extend through January 1, 2019. The Parties agree that the judgment, and release of claims provided herein, shall have *res judicata* effect. The definition of Released Claims shall not be limited in any way by the possibility that Plaintiffs or Settlement Class Members may discover new facts or legal theories or legal arguments not alleged in the operative pleadings in the Action but which might serve as an alternative basis for pursuing the same claims, causes of action, or legal theories of relief falling within the definition of Released Claims. Class Counsel also fully releases, indemnifies, and discharges Released Parties from any and all claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorney's fees, damages, actions or causes of actions which arise from or relate to any dispute or claim between or among Class Counsel, including over any claim to any fees, costs, or expenses, and the Settlement shall constitute and may be pled by the Released Parties, as a complete and total defense to any such dispute or claim.

(Settlement Agreement ¶ 20.) This release applies to the unnamed members of the settlement class, (*see id.* ¶ 38.), and it is reasonable because it is limited to claims related to this action. *Cf. Bond v. Ferguson Enter., Inc.*, No. 1:09-cv-01662-OWW-MJS, 2011 WL 284962, at *7 (E.D. Cal. Jan. 25, 2011). The fact that the release prohibits the named plaintiffs from pursuing any other claims against Defendants, whether related to the claims in this case or not, (Settlement Agreement ¶ 39), is not inherently unreasonable. In fact, the release specific to the named plaintiffs constitutes another burden of litigation justifying the amount of their incentive awards. *See Bautista v. Harvest Mgmt. Sub LLC*, No. CV 12-10004 FMO (CWx), 2013 WL 12125768, at *16 (C.D. Cal. Oct. 16, 2013).

**C.    Proposed Class Notice and Administration**

    **1.    Adequacy of class notice**

Upon a finding that preliminary approval of a class action settlement is warranted, courts "must direct notice in a reasonable manner to all class members who would be bound by the

1    proposal . . . ." Fed. R. Civ. P. 23(e)(1)(B).  For classes certified under Federal Rule of Civil
2    Procedure 23(b)(3) – like the subclasses in this case, (*see* ECF No. 185 at 61.) – the "notice must
3    clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii)
4    the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class
5    member may enter an appearance through an attorney if the member so desires; (v) that the court
6    will exclude from the class any member who requests exclusion; (vi) the time and manner for
7    requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule
8    23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).  The purpose of this notice is to provide class members an
9    opportunity to investigate the terms of the settlement and voice objections.  *See Churchill Village,*
10   *L.L.C.*, 361 F.3d at 575.

11   The proposed notice is sufficient to satisfy the standards of Rule 23(c)(2)(B).  It contains a
12   concise and understandable summary of the action, subclasses, and claims.  (ECF No. 278-1 at
13   55–56.)  It also contains a breakdown of the settlement and the method by which the Settlement
14   Administrator will calculate individual claims.  (*Id.* at 56–59.)  Additionally, the notice describes
15   the method by which class members can object to the proposed settlement and explains that class
16   members may appear through an attorney.  (*Id.* at 57, 59.)  While the notice does not permit class
17   members to request exclusion, the parties have previously provided class members an opportunity
18   to opt-out.  (*See* ECF No. 278 at 17.)  Finally, the notice provides details about the binding nature
19   of the settlement.  (ECF No. 278-1 at 57–58.)

20   The notice does, however, contain a small number of non-substantive errors.  The Court
21   orders Plaintiffs to make the following corrections before sending the notice to class members:

22       1.    Page 1: The proper case number for this action is now 1:15-cv-00420-ADA-SAB.
23           This should be reflected in two places: (i) in the notice heading, and (ii) in the first
24           paragraph under the heading, "What is this Case About?"
25       2.    Page 6: In the final paragraph on the page, the notice should state that the final
26           approval hearing will take place in "Courtroom 1, 8th Floor."

27   ///
28   ///

3. Page 7: In the second to last paragraph, the notice should state that individuals are able to view publicly available filings in "the Clerk's Office, 1st Floor." This should replace the words, "Courtroom 9, 6th Floor."

The Court also finds the proposed notice distribution to be appropriate. Plaintiffs suggest that Defendants will provide settlement class data to the Settlement Administrator and class counsel within ten calendar days of the issuance of this order. (ECF No. 278-3 at 5; Settlement Agreement ¶ 5.) The Settlement Administrator will then mail notice packets to the settlement class within fourteen calendar days of receiving the settlement class data. (ECF No. 278-3 at 5.) Finally, Plaintiffs propose that class members may file objections to the proposed settlement within sixty calendar days of the postmark date of the notice packet. (*Id.*)

**2.     Adequacy of CPT Group to act as Settlement Administrator**

The parties propose CPT Group, Inc. to serve as Settlement Administrator. They contend that CPT Group is an appropriate choice because it has experience administering wage and hour farmworker class action settlements. (Martinez Decl. ¶ 56.) Additionally, the parties have provided a breakdown of the estimated costs and fees associated with the administration of the settlement. (ECF 278-1 at 62–64.) CPT Group estimates that the total cost will be $115,100.56 but has offered a discounted flat fee of $90,000. (*Id.* at 62.) Nevertheless, the parties have agreed to set aside $120,000 of the total settlement amount to account for any unforeseen costs. (Martinez Decl. ¶ 56.) If any part of this amount ends up unused, the Settlement Administrator will redistribute it to the class members. (*Id.*) Given CPT Group's experience with administering class action settlements like the one at issue in this case, the Court will approve it as Settlement Administrator. The Court also finds that the parties have prudently set aside extra money for unforeseen expenses and have set up a reasonable redistribution plan for any unused funds.

Accordingly,

1. Plaintiffs' motion for preliminary approval of class action settlement, (ECF No. 278), is granted;

2. The proposed settlement detailed in this order is approved on a preliminary basis as fair and adequate and the product of serious, informed, and arms-length

negotiations between the parties;

3. The proposed notice and claim form are approved because they conform with Federal Rule of Civil Procedure 23, with the exception of the following non-substantive changes, as noted in this order:

   a. Page 1: The proper case number for this action is now 1:15-cv-00420-ADA-SAB. This should be reflected in two places: (i) in the notice heading, and (ii) in the first paragraph under the heading, "What is this Case About?"

   b. Page 6: In the final paragraph on the page, the notice should state that the final approval hearing will take place in "Courtroom 1, 8th Floor."

   c. Page 7: In the second to last paragraph, the notice should state that individuals are able to view publicly available filings in "the Clerk's Office, 1st Floor." This should replace the words, "Courtroom 9, 6th Floor."

4. CPT Group, Inc. is approved as Settlement Administrator;

5. The following settlement implementation schedule is adopted:

   a. Defendants shall provide settlement class data to the Settlement Administrator and class counsel no later than ten (10) days after the date of signature on this order;

   b. The Settlement Administrator shall mail the notice of class action settlement to all class members no later than fourteen (14) days after receiving settlement class data from Defendants;

   c. Plaintiffs shall file a motion for attorneys' fees and costs and for the class representatives' enhancement payments no later than thirty (30) days after the date of signature on this order;

   d. Class members shall postmark objections to the proposed settlement no later than sixty (60) days after the postmarked date on the notice of the

class action settlement;

  e. Plaintiffs shall file a motion for final approval of the proposed settlement, in accordance with Local Rule 230, no later than thirty (30) days before the final approval hearing;

  f. The Settlement Administrator shall provide declarations of due diligence and a report on any objections to the Court and class counsel no later than thirty (30) days before the final approval hearing;

  g. The final approval hearing shall take place on May 15, 2023, at 1:30 p.m. in Courtroom 1 before the undersigned.

IT IS SO ORDERED.

Dated:  January 11, 2023

UNITED STATES DISTRICT JUDGE