1
2
3
4
5
6
7

8            UNITED STATES DISTRICT COURT

9        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  BEATRIZ ALDAPA, et al., | No.  1:15-cv-00420-ADA-SAB |
| 12         Plaintiffs, | ORDER GRANTING MOTION FOR FINAL |
| 13      v. | APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING MOTION |
| 14  FOWLER PACKING COMPANY INC., | FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD |
| 15         Defendants. | |
| 16 | (ECF Nos. 288, 291) |

17         This matter came before the Court on June 5, 2023, for a hearing on Plaintiffs' unopposed

18  motions for final approval of a class action settlement and for an award of attorneys' fees, costs,

19  and incentive awards for Plaintiffs.  (ECF Nos. 288, 291.)[1]  Attorneys Mario Martinez, Brenda

20  Rizo, and Erica Deutsch appeared by video on behalf of Plaintiffs and the putative class.  Attorney

21  Bradley Joseph Hamburger appeared by video on behalf of Defendants.  For the reasons set forth

22  below, the Court will grant final approval of the class action settlement and will grant the motion

23  for attorneys' fees, costs, and incentive awards to Plaintiffs.

24  ///

25
26
27

28  ───────────────
[1] All references to ECF page numbers refer to the page number at the top of each document.

1

1 **I.      BACKGROUND**

2          The Court previously summarized Plaintiffs' allegations in its January 12, 2023, order

3 granting Plaintiffs' motion for preliminary approval of a class action settlement.  (ECF No. 283.)

4 As such, the Court will not repeat the factual background in this order.  Following the grant of

5 preliminary approval in this action, on February 24, 2023, Plaintiffs filed the pending unopposed

6 motion for attorneys' fees, costs, and an incentive award for Plaintiffs, and on April 14, 2023,

7 Plaintiffs filed the pending unopposed motion for final approval of the parties' class action

8 settlement.  (ECF Nos. 288, 291.)  In support of their pending motions, Plaintiffs have submitted

9 declarations from Plaintiffs, class counsel, and the Settlement Administrator in this action.  (ECF

10 Nos. 288-1, 288-2, 288-3, 288-4, 291-1, 291-2.)  As of the date of the hearing on June 5, 2023, no

11 objections to the settlement were received nor filed with this Court, and no class members have

12 opted out of the settlement.

13          The settlement agreement provides for Defendants to pay a total of $7,875,000.  (ECF No.

14 291 at 16.)   Assuming the parties' proposed allocations are awarded in full, approximately

15 $4,672,107.28 will be available for distribution to participating class members.  (*Id.*)

16 **II.     FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

17          Class actions require the district court's approval prior to settlement.  Fed R. Civ. P. 23(e).

18 To approve a settlement, a district court must: (i) ensure notice is sent to all class members; (ii)

19 hold a hearing and make a finding that the settlement is fair, reasonable, and adequate; (iii) confirm

20 that the parties seeking approval file a statement identifying the settlement agreement; and (iv) be

21 shown that class members were given an opportunity to object.  Fed. R. Civ. P. 23(e)(1)-(5).  The

22 parties filed the settlement agreement on June 23, 2022, (ECF No. 275-1 at 26-52), and class

23 members were given an opportunity to object on or before April 11, 2023.  (ECF No. 291-2 at 3.)

24 The Court did not receive any objections, timely or otherwise, to the settlement agreement.  (*Id.*)

25 The Court now turns to the adequacy of notice and its review of the settlement following the final

26 fairness hearing.

27 ///

28 ///

1

### A.     Notice

Adequate notice of the class settlement must be provided under Rule 23(e).  *See Hanlon v.*
*Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998) (*Hanlon*), *overruled on other grounds by*
*Castillo v. Bank of Am., N.A.*, 930 F.3d 723 (9th Cir. 2020); *see also Silber v. Mabon*, 18 F.3d 1449,
1453-54 (9th Cir. 1994) (*Silber*) (noting that the court need not ensure all class members receive
actual notice, only that "best practicable notice" is given); *Winans v. Emeritus Corp.*, No. 4:13-cv-
03962-HSG, 2016 WL 107574, at *3 (N.D. Cal. Jan. 11, 2016) (*Winans*) ("While Rule 23 requires
that 'reasonable effort' be made to reach all class members, it does not require that each individual
actually receive notice.").   "Notice is satisfactory if it 'generally describes the terms of the
settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come
forward and be heard.'"  *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)
(*Churchill Vill., L.L.C.*) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th
Cir. 1980)).   Any notice of the settlement sent to the class should alert class members of "the
opportunity to opt-out and individually pursue any state law remedies that might provide a better
opportunity for recovery."[2]  *Hanlon*, 150 F.3d at 1025.

The Court previously reviewed the notice provided in this case at the preliminary approval
stage and found it to be satisfactory.  (ECF No. 283 at 16.)  Class counsel filed the declaration of
Jeremy Romero for CPT Group, Inc. ("CPT Group") in support of the motion for final approval.
(ECF No. 291-2.)  CPT Group, the Court-approved class action Settlement Administrator for this
action, employed Jeremy Romero as a Case Manager.  (*Id.* at ¶ 1.)  Following the grant of
preliminary approval, on January 17, 2023, CPT Group received the text for the Notice Packet from
counsel, and CPT Group prepared a draft of the Notice Packet in both English and Spanish language
versions for mailing to class members.  (*Id.* at ¶ 4.)  A copy of the notice packet was attached to the
declaration of Jeremy Romero as an exhibit.  (*See id.* at 5-17.)  Between January 20, 2023, and
January 26, 2023, CPT Group received the data file from counsel containing the mailing list of

---

[2] The parties do not include a request for a deadline to opt out of the settlement because class
members have already been provided the opportunity.  (ECF No. 278 at 17 (citing *Low v. Trump*
*Univ., LLC*, 881 F.3d 1111, 1121 (9th Cir. 2018).)  The Magistrate Judge approved the opt-out
notice on March 18, 2016.  (ECF No. 62.)

20,862 class members, of which 340 did not have an address listed.  (*Id.* at ¶ 5.)  In preparation for mailing, CPT Group ran a National Change of Address (NCOA) search in attempt to update the addresses on the class list and confirming the mailing addresses of the class members before mailing the notice packets.  (*Id.*)   A search of the NCOA database provided updated addresses for any individual who had moved in the previous four years and notified the U.S. Postal Service of their change of address.  (*Id.*)

On February 10, 2023, CPT Group mailed the notice packets via U.S. First Class Mail to 20,522 class members who had an address.  (*Id.* at ¶ 7.)  The notice packet describes the claims involved, what the settlement provides, what class members are giving up in exchange for the settlement payment, how each class member's estimated payment from the settlement will be calculated, and how the class member will receive the payment.  (*Id.* at 5-17.)  As of April 13, 2023, 1,982 notice packets have been returned to CPT Group's office by the U.S. Postal Service, of which 32 were provided a new address by the Post Office.  For the remaining 1,950 notice packets, CPT Group performed a skip trace to locate an address using Accurint, which utilizes hundreds of different databases supplied by credit reporting agencies, public records, and a variety of other national databases.  (*Id.* at ¶ 9.)  As a result of the skip trace effort, CPT Group mailed a total of 1,146 notice packets, and as of April 13, 2023, 867 notice packets have been deemed undeliverable.  (*Id.* at ¶ 10.)

For objections, the notice provides that if a class member wishes to object to all or part of the proposed settlement, they must mail a timely and valid notice of objection to the Settlement Administrator at the address listed in the notice.  (*Id.* at 7.)  The notice instructs the class member to provide a written statement of the grounds for objection and whether they intend to appear at the final approval hearing.  (*Id.*)  As required by the settlement agreement, the Settlement Administrator also established and maintained a toll-free case hotline through which class members could speak to case representatives regarding case specific questions.  (*Id.* at ¶ 8.)  As of April 13, 2023, the Settlement Administrator has received 117 calls to the toll-free hotline established for the case from class members with various questions about the settlement.  (*Id.*)  As of the same date, there are no outstanding inquiries.  (*Id.*)

As of April 13, 2023, CPT Group has received zero requests for exclusion, zero objections, and zero disputes regarding workweeks. (*Id.* at ¶ 11.) Therefore, all class members are participating in the settlement.

Given the above, the Court accepts the reports of the Settlement Administrator and finds that CPT Group provided adequate notice, thereby satisfying Federal Rule of Civil Procedure 23(e)(1). *Silber*, 18 F.3d at 1453-54; *Winans*, 2016 WL 107574, at *3.

### B.   Final Fairness Determination

On June 5, 2023, the Court held a final fairness hearing, at which class counsel and defense counsel appeared by video in Courtroom 1. At the final approval stage, the primary inquiry is whether the proposed settlement "is fundamentally fair, adequate, and reasonable." Fed. R. Civ. P. 23(e)(2); *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) (*Lane*); *Hanlon*, 150 F.3d at 1026. "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026 (citing *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982) (*Officers for Justice*)); *see also Lane*, 696 F.3d at 818. Having already completed a preliminary examination of the agreement, the Court reviews it again, mindful that the law favors the compromise and settlement of class action suits. *See, e.g.*, *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Churchill Vill., L.L.C.*, 361 F.3d at 576; *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (*Class Plaintiffs*); *Officers for Justice*, 688 F.2d at 625. Ultimately, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he [or she] is exposed to the litigants and their strategies, positions, and proof." *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003) (*Staton*) (quoting *Hanlon*, 150 F.3d at 1026).

In assessing the fairness of a class action settlement, courts balance the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

1   *Churchill Vill., L.L.C.*, 361 F.3d at 575; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d

2   934, 944 (9th Cir. 2015); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 964-67 (9th Cir. 2009)

3   (*West Publ'g Corp.*).  These settlement factors are non-exclusive, and each need not be discussed

4   if they are irrelevant to a particular case.  *See Churchill Vill., L.L.C.*, 361 F.3d at 576 n.7.

5          However, consideration of the *Churchill* factors alone is not sufficient to survive appellate

6   review.  *See Briseño v. Henderson*, 998 F.3d 1014, 1022-26 (9th Cir. 2021) (*Briseño*) (holding that

7   the revised Rule 23(e) requires district courts "to go beyond our precedent" and mandates

8   consideration of "the *Bluetooth* factors" to all class action settlements, regardless of whether

9   settlement was achieved before or after class certification); *see also* Fed. R. Civ. P. 23(e)(2)(C)-

10  (D).  Under the revised Rule 23(e), "district courts must apply the *Bluetooth* factors to scrutinize

11  fee arrangements . . . to determine if collusion may have led to class members being shortchanged."

12  *Briseño*, 998 F.3d at 1026.  The so-called *Bluetooth* factors—also referred to as "subtle signs" of

13  collusion—include: (i) "when counsel receive a disproportionate distribution of the settlement, or

14  when the class receives no monetary distribution but class counsel are amply rewarded"; (ii) the

15  existence of a "clear sailing" arrangement, which provides "for the payment of attorneys' fees

16  separate and apart from class funds," or a provision under which defendant agrees not to object to

17  the attorneys' fees sought; and (iii) "when the parties arrange for fees not awarded to revert to

18  defendants rather than added to the class fund."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654

19  F.3d 935, 947 (9th Cir. 2011) (*Bluetooth*) (internal quotations and citations omitted).  "The presence

20  of these three signs is not a death knell—but when they exist, 'they require[] the district court to

21  examine them, . . . develop the record to support its final approval decision,' and thereby 'assure

22  itself that the fees awarded in the agreement were not unreasonably high.'"  *Kim v. Allison*, 8 F.4th

23  1170, 1180 (9th Cir. 2021) (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015) (*Allen*)).

24  Thus, while this Court has wide latitude to determine whether a settlement is substantively fair, it

25  is held to a higher procedural standard, and in order "[t]o survive appellate review . . . [it] must

26  show it has explored comprehensively all factors and must give a reasoned response to all non-

27  frivolous objections."  *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 606 (9th Cir. 2021) (quoting

28  *Allen*, 787 F.3d at 1223-24).

1                             1.       Strength of Plaintiffs' Case

When assessing the strength of a plaintiff's case, the court does not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of th[e] litigation." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989). The court cannot reach such a conclusion because evidence has not been fully presented. *Id.* Instead, the court "evaluate[s] objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Id.*

In the order granting the motion for preliminary approval of the class settlement, the Court found it appropriate to assess the proposed class recovery of $4,610,000, the net settlement amount, as representing between 20% and 28% of the estimated wages and interest recovery amount. (ECF No. 283 at 10.) The Court found that it was not out of line with other class action settlements. (*Id.* (citations omitted).) Risks of proof issues, varying expert opinions, and possible defenses indicate that full recovery in this action is far from certain. (*Id.*) Furthermore, this action is almost seven years old, and the parties have engaged in extensive discovery and settlement negotiations. (*Id.*) Further litigation will likely be complex, expensive, and time consuming. (*Id.*) Therefore, the Court concluded that the proposed settlement amount is substantively fair, reasonable, and adequate. (*Id.*)

Now, Plaintiffs represent that the class is anticipated to receive $4,672,107.28, which is approximately $62,107 more to the class than anticipated. (ECF No. 291 at 22.) Based on Plaintiffs' expert's survey, Plaintiffs allege that the class is entitled to wages and interest in the approximate amount of $16,541,382 to $22,915,231, plus attorneys' fees and costs. (*Id.*) Although Plaintiffs agree with the Court's analysis in the order granting preliminary approval, Plaintiffs wish to highlight that the gross settlement amount of $7,875,000, including class counsel fees of $2,625,000, represents 34% to 47% of the amount Plaintiffs believed is owed to the class. (*Id.* at 22 n.8. (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (*Boeing Co*))) As previously discussed, even excluding attorneys' fees and costs, the proposed class recovery represents between 20% and 28% of estimated wages and interest recovery among the class members, which the Court finds is in line with other class action settlements.

Due to the litigation risks of this case, Plaintiffs argue that the settlement amount is reasonable. (ECF No. 291 at 23.) "Defendants have consistently maintained that they have ample legal and factual grounds for defending this action." (*Id.*) If this action goes to trial, "there is certainly risk associated with litigating to trial a random sample survey conducted by Plaintiffs' expert, and whether a trier of fact would accept the survey and the conclusions drawn from the survey as reliable evidence of damages." (*Id.*) Plaintiffs further explain the risks under two categories of their claims: (1) records-based claims and (2) survey-based claims. (*Id.* at 23-34.)

The records-based claims encompass the rest period claim, the meal period claim, and the unpaid travel time claim. (*Id.* at 23.) As mentioned in the order granting preliminary approval, the Court finds that the alleged complicated collateral issues, particularly in the pending case of *Fowler Packing Company, Inc. v. Lanier, et al.*, No. 1:16-cv-001060-DAD-SAB, warrants the rest period claims to significant risk. (*Id.* at 24.) In *Lanier*, Defendants and another employer filed suit against California state officials, alleging that "carve-outs" in the safe harbor provision of piece-rate wage law, which precluded Defendants from using the provision as an affirmative defense against wage and hour claims, violated the Equal Protection Clause of the United States and California Constitutions. (*Id.*) Upon ruling that the district court improperly dismissed the employers' Equal Protection Claim, the Ninth Circuit has remanded the case for further proceedings. (*Id.* (citing *Fowler Packing Company, Inc. v. Lanier*, 844 F.3d 809, 819 (9th Cir. 2016)).) In addition to the proof issues, varying expert opinions, and possible defenses, the Court finds significant risks to Plaintiffs' records-based claims, warranting approval of the settlement.

The survey-based claims include the unpaid non-productive time claim, the unpaid off-the-clock work claim, the vehicle mileage reimbursement claim, and the tool reimbursement claim. (ECF No. 291 at 26.) Plaintiffs rely on their expert Dr. Jeffrey S. Petersen's statistical surveys of class members, but Defendants contend that depositions of the class members show allegedly significant discrepancies from the survey. (*Id.* at 29.) Furthermore, the area of statistical random surveys continues to be highly litigated. (*Id.* at 31 (citations omitted).) Moreover, Defendants' expert Dr. Joseph Krock challenges virtually every aspect of Dr. Petersen's surveys. (*Id.* at 31.) Thus, there is no certainty that a trier of fact would agree with Plaintiffs. (*Id.*) The parties also

1   disagree considerably as to the value of the claim for waiting time penalties and other penalties.

2   (*Id.* at 32.)  Overall, Plaintiffs largely reiterate the risk of proof issues, varying expert opinions, and

3   possible defenses to the survey-based claims, which warrant this Court's approval of the settlement.

4        Accordingly, the Court finds that consideration of this factor weighs in favor of granting

5   final approval of the parties' settlement in this action.

6              2.    Risk, Expense, Complexity, and Likely Duration of Further Litigation, and

7                    Risk of Maintaining Class Action Status Throughout Trial

8        *Churchill* factors two and three, the risk, expense, complexity, and likely duration of further

9   litigation, and the risk of maintaining class action status throughout trial, weigh in favor of approval.

10  *See* Fed. R. Civ. P. 23(e)(2)(C)(i).  "[T]here is a strong judicial policy that favors settlements,

11  particularly where complex class action litigation is concerned."  *In re Syncor ERISA Litig.*, 516

12  F.3d at 1101 (citing *Class Plaintiffs*, 955 F.2d at 1276).  As a result, "[a]pproval of settlement is

13  preferable to lengthy and expensive litigation with uncertain results."  *Johnson v. Shaffer*, No. 2:12-

14  cv-1059-KJM-AC, 2016 WL 3027744, at *4 (E.D. Cal. May 27, 2016) (citing *Morales v. Stevco,*

15  *Inc.*, No. 1:09-cv-00704-AWI-JLT, 2011 WL 5511767, at *10 (E.D. Cal. Nov. 10, 2011)

16  (*Morales*)).

17       Plaintiffs represent that the issues in this action are complex and there is a high risk of

18  delaying resolution of the case if the settlement is not approved.  (ECF No. 291 at 33.)  Although,

19  class counsel is confident that class certification would be maintained throughout trial, Plaintiffs

20  note that this case involves over 20,800 class members, which inherently puts class certification at

21  risk.  (*Id.*)  Plaintiffs further explain that preparing the case for trial would be "incredibly costly,"

22  and that any outcome at trial would result in a lengthy and costly appeal.  (*Id.*)  Such an appeal

23  would further delay resolution of the case, and this case has been pending resolution for more than

24  eight years.  (*Id.*)  Therefore, the Court finds that consideration of this factor weighs in favor of

25  granting final approval.

26              3.    Amount Offered in Settlement

27       To evaluate the fairness of the settlement award, the court should "compare the terms of the

28  compromise with the likely rewards of litigation."  *Protective Comm. for Indep. Stockholders of*

9

1   *TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968); *see also* Fed. R. Civ. P.

2   23(e)(2)(C)-(D).  "It is well-settled law that a cash settlement amounting to only a fraction of the

3   potential recovery does not *per se* render the settlement inadequate or unfair."  *In re Mego Fin.*

4   *Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  To determine whether a settlement "falls

5   within the range of possible approval," a court must focus on "substantive fairness and adequacy"

6   and "consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *In*

7   *re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).  In addition, the court

8   must consider whether "the proposal treats class members equitably relative to each other" and

9   whether "the relief provided for the class is adequate."  Fed. R. Civ. P. 23(e)(2)(C)-(D).

10      Here, the parties have agreed to a $7,875,000 gross settlement, allocated as follows: (1)

11  $2,625,000.00 for class counsel fees; (2) $465,392.72 for class counsels' costs; (3) $92,500.00 for

12  claims administration fees; (4) $10,000 incentive awards for each Plaintiff ($20,000 in total); and

13  (5) $4,672,107.28 for distribution to the class members. (ECF No. 291 at 16.)  Plaintiffs' maximum

14  potential damages is approximately $16,541,382 to $22,915,231 in wages and interest, plus

15  attorneys' fees and costs.  (*Id.* at 34.)  The gross settlement fund of $7,875,000 is approximately

16  34% to 47% recovery of Plaintiffs' maximum potential damages.  (*See id.* at 22 n.8.)  As analyzed

17  above, the significant litigation risks indicate that the gross settlement amount is adequate and fair.

18      The proposed settlement amount is within the general range of percentage recoveries that

19  California courts—including this one—have found to be reasonable.  *See, e.g.*, *Singh v. Roadrunner*

20  *Intermodal Services, LLC*, No. 1:15-cv-01497-DAD-BAM, 2018 WL 2412325, at *7 (E.D. Cal.

21  May 29, 2018) (approving a settlement of about 12% of the estimated maximum damages); *Glass*

22  *v. UBS Fin. Servs., Inc.*, No. 3:06-cv-04068-MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26,

23  2007) (approving a settlement of about 25-35% of the estimated maximum).

24      The settlement provides that class members will receive a pro rata payment from the net

25  settlement amount depending on how many weeks the class members worked during the class

26  period, giving more damages to those employees that worked more weeks during the class period.

27  (ECF No. 291 at 17.)  To determine the amount of each individual settlement payment, the claims

28  administrator will calculate the total compensable work weeks for all settlement class members by

10

adding the number of compensable work weeks worked by each settlement class member during the class period. (*Id.*) The compensable work weeks for each settlement class member will be divided by the total compensable work weeks for all settlement class members, resulting in the payment ratio for each settlement class member. (*Id.*) Each settlement class member's payment ratio will then be multiplied by the net settlement amount to calculate each settlement class member's estimated individual settlement payments. (*Id.*) The average gross payment to each settlement class member is $223.95 and the highest is $4,767.70. (*Id.*)

Any checks issued to settlement class members shall remain valid and negotiable for ninety calendar days from the date of their issuance. (*Id.*) After that date, any unclaimed funds shall be re-distributed to class members who cashed their checks during the ninety-day period. (*Id.*) If there is enough money in uncashed checks to cover the cost of a second re-distribution after the expiration of the checks in the first re-distribution, the administrator shall conduct a second re-distribution. (*Id.*) If there is not enough money to reasonably conduct a second re-distribution, the money shall be allocated as *cy pres* and 50% of the remaining funds shall be sent to Central California Food Bank (4010 E. Amendola Dr., Fresno, CA 93625) for food distribution to farmworker communities and 50% shall be sent to the Binational Center for the Development of Oaxacan Indigenous Communities (2911 Tulare St., Fresno, CA 93721) for services in the Fresno and Madera area. (*Id.*)

As noted above, as of April 13, 2023, the Settlement Administrator has received 117 calls to the toll-free hotline established for the case, from class members with various questions about the settlement. (*Id.* at 37.) There are no outstanding inquiries. (*Id.*) Furthermore, the Settlement Administrator has received zero requests for exclusion, zero objections, and zero disputes regarding workweeks. (*Id.*) Therefore, all class members are participating in the settlement.

Based on the information presented to the Court, the Court concludes that the amount offered in settlement of this action provides adequate relief for the class.

///

///

///

11

4.      Extent of Discovery Completed and Stage of the Proceedings

"In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (quoting *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982)).  Approval of a class action settlement "is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).  A settlement is presumed fair if it "follow[s] sufficient discovery and genuine arms-length negotiation." *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (*Adoma*) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (*Nat'l Rural Telecomms. Coop.*)).  The court must consider whether the process by which the parties arrived at their settlement is truly the product of arm's length bargaining and not collusion or fraud. *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015).  These concerns are also reflected in Rule 23(e)(2)'s focus on procedural fairness—whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(A)-(B).

From August 2015 to December 2021, the parties engaged in extensive expert and non-expert fact discovery.  (ECF No. 291 at 34.)  Defendants produced approximately 530,000 pages of documents, 4,191,536 rows of electronic data covering 2,229,118 workdays and over 479,600 paychecks issued to workers during the class period.  (*Id.*)  The parties conducted Plaintiffs' depositions, 15 class member depositions, Defendants' 30(b)(6) witnesses, and five expert depositions.  (*Id.* at 35.)  The parties also litigated several discovery issues related to class members' depositions.  (*Id.* at 35.)  Class counsel reviewed the data and retained expert Aaron Woolfson to review, consider, and analyze the class data for each class member in advance of settlement negotiations.  (*Id.*)  "The [p]arties engaged in arm's-length, informed negotiations during the course of this litigation in order to reach the proposed Settlement, using three different experienced and well-respected mediators in the area of wage and hour class action law."  (*Id.* at 36.)

///

12

Accordingly, the Court concludes that consideration of this factor weighs in favor of granting final approval.

### 5.   Experience and Views of Counsel

Class counsel Mario Martinez submitted a declaration describing his experience in class and representative action litigation.  (*See* ECF No. 278-1 at ¶¶ 57-61.)  Mr. Martinez graduated from UC Berkeley School of Law and formed Martinez Aguilasocho & Lynch, a Professional Law Corporation, now Martinez Aguilasocho Law, Inc. (MAL).  (*Id.* at ¶ 57.)  The lawyers at MAL have substantial experience representing employees in class actions and representational lawsuits to enforce statutory rights under both federal and state wage and hour laws, fair employment practice laws such as Title VII of the Civil Rights Act of 1964, and the Migrant and Seasonal Agricultural Worker Protection Act.  (*Id.* at ¶ 59.)  Class counsel Ira Gottlieb also submitted a declaration describing her experience in class and representative class litigation.  (*See* ECF No. 278-2 at ¶¶ 8-12.)  Ms. Gottlieb graduated from Rutgers University School of Law and has served as counsel on a wide range of class action and wage and hour litigation.  (*Id.* at ¶¶ 8-9.)  Therefore, the Court finds that class counsel's experience and views weigh in favor of granting final approval.

### 6.   Presence of a Governmental Participant

In assessing the fairness of a class action settlement, courts balance the following factor against seven other factors: the presence of a governmental participant.  *Churchill Vill., L.L.C.*, 361 F.3d at 575.  For example, civil Private Attorneys General Act (PAGA) penalties factor into settlement approval, where a government participant's involvement in a class action settlement supports its approval by the Court.  *See Adoma*, 913 F. Supp. 2d at 977 (factoring civil PAGA penalties in favor of settlement approval); *Zamora v. Ryder Integrated Logistics, Inc.*, No. 3:13-cv-02679-CAB-BGS, 2014 WL 9872803, at *10 (S.D. Cal. Dec. 23, 2014) (same).

Here, there are no direct governmental participants in this action.  (ECF No. 291 at 37.) Therefore, the Court finds that this factor neither weighs in favor nor against granting final approval.

///

///

13

1          7.      Reaction of the Class Members

2          "It is established that the absence of a large number of objections to a proposed class action

3  settlement raises a strong presumption that the terms of a proposed class settlement action are

4  favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529 (citing cases).

5  The presumption that a settlement is fair, reasonable, and adequate is particularly strong when there

6  is an absence of a single objection to a proposed class action settlement. *See id.*; *Barcia v. Contain-*

7  *A-Way, Inc.*, No. 3:07-cv-00938-IEG-JMA, 2009 WL 587844, at *4 (S.D. Cal. Mar. 6, 2009).

8  Nevertheless, "[a] court may appropriately infer that a class action settlement is fair, adequate, and

9  reasonable when few class members object to it." *Cruz v. Sky Chefs, Inc.*, No. 4:12-cv-02705-

10  DMR, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) (citing *Churchill Vill., L.C.C.*, 361 F.3d

11  at 577).

12          As of April 13, 2023, the Settlement Administrator has received 117 calls to the toll-free

13  hotline established for the case, from class members with various questions about the settlement.

14  (ECF No. 291 at 37.)   "The farmworkers who called Class Counsel's offices overwhelmingly

15  expressed support for the settlement, often expressing relief because the case took so long."  (ECF

16  No. 291-1 at ¶ 7.)   There are no outstanding inquiries.   (*Id.*)   Furthermore, the Settlement

17  Administrator has received zero requests for exclusion, zero objections, and zero disputes regarding

18  workweeks.  (*Id.*)  Therefore, all class members are participating in the settlement.  Accordingly,

19  consideration of this factor weighs in favor of granting final approval.

20          8.      Subtle Signs of Collusion

21          The Court now turns to the *Bluetooth* factors to examine whether any "more subtle signs"

22  of collusion recognized by the Ninth Circuit are present here.  *See Bluetooth*, 654 F.3d at 947.

23          First, the Court finds that class counsel is not seeking a disproportionate distribution of the

24  settlement.  With an average estimated class member recovery of between $223.95 to $4,767.70

25  and a requested award of attorneys' fees of $2,625,000, it does not appear that counsel seeks to

26  receive a disproportionate distribution of the settlement.  *See, e.g.*, *Morales*, 2011 WL 5511767, at

27  *12 ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the

28  total settlement value, with 25% considered the benchmark.") (quoting *Powers v. Eichen*, 229 F.3d

14

1249, 1256 (9th Cir. 2000)); *Castro v. Paragon Indus., Inc.*, No. 1:19-cv-00755-DAD-SKO, 2021 WL 20242333, at *5, *12 (E.D. Cal. May 21, 2021) (*Castro*) (granting final approval of a class and collective action settlement with an average individual class member recovery of $1,070.62 and an award of $1,031,250.00 in attorneys' fees).   Here, class counsel's request of $2,625,000 is approximately 33 and 1/3% of the total settlement value, placing it well within the range that the Ninth Circuit has found acceptable.

Second, the proposed settlement appears to include a "clear sailing" provision.  (*See* ECF No. 278-1 at 42.)  A "clear sailing" provision is one where the defendant agrees not to challenge the agreed-upon fees for class counsel.  *See Briseño*, 998 F.3d at 1026.  The Ninth Circuit is concerned that such a provision "signals the potential that a defendant agreed to pay class counsel excessive fees in exchange for counsel accepting a lower amount for the class members."  *Id.* at 1027 (quoting *Bluetooth*, 654 F.3d at 949).  The Court further warned that the "very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class."  *Id.* at 1027 (quoting *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991)).  Lower courts are warned that "[w]hen faced with a clear sailing provision, courts thus have a 'heightened duty to peer into the provision and scrutinize closely the relationship between attorney's fees and benefit to the class, being careful to avoid awarding "unreasonably high" fees simply because they are uncontested.'"  *Id.*

In the settlement agreement, the parties agreed that "Defendants shall not oppose a reasonable request for Plaintiffs' Counsel's fees or litigation costs."  (ECF No. 278-1 at 42.)  This raises the same concerns the Ninth Circuit outlined in *Bluetooth* as it appears to be a clear sailing provision.  After thoroughly scrutinizing the relationship between the attorneys' fees and benefit to the class, the Court is satisfied that the fees that Plaintiffs' counsel requested are not excessive and do not unjustly enrich counsel at the expense of class members.  Specifically, the Court notes that if class counsel's request for 33 and 1/3% of the settlement fund is not approved and/or is reduced by the Court, the amount not approved and/or reduced by the Court will be returned to the net settlement amount to be distributed to the class members.  (*Id.*)  In other words, the settlement prohibits class counsel to cancel the settlement agreement should this Court award less than the

15

1   attorneys' fees amount set forth in the settlement agreement, and the parties did not arrange for an

2   unawarded amount of fees to revert to Defendants. (*Id.*) Rather, any unapproved amount is

3   distributed to the class members. (*Id.*)

4        In light of all of the above, the Court is satisfied that the more subtle signs of collusion noted

5   in *Bluetooth* are not present here and finds that the settlement is fair, reasonable, and adequate. *See*

6   Fed. R. Civ. P. 23(e). Therefore, the Court will grant Plaintiffs' motion for final approval of the

7   parties' class action settlement.

8   **III.    ATTORNEYS' FEES, COSTS, AND INCENTIVE PAYMENTS**

9        As noted above, Plaintiffs have also submitted a motion seeking their attorneys' fees, class

10   counsel's litigation expenses, and an incentive award for Plaintiffs.

11       **A.    Attorneys' Fees**

12        This Court has an "independent obligation to ensure that the award [of attorneys' fees], like

13   the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*,

14   654 F.3d at 941. This is because, when fees are to be paid from a common fund, the relationship

15   between the class members and class counsel "turns adversarial." *In re Mercury Interactive Corp.*

16   *Secs. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010); *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 19

17   F.3d 1291, 1302 (9th Cir. 1994). As such, the district court assumes a fiduciary role for the class

18   members in evaluating a request for an award of attorneys' fees from the common fund. *In re*

19   *Mercury*, 618 F.3d at 994; *see also Rodriguez v. Disner*, 688 F.3d 645, 655 (9th Cir. 2012); *West*

20   *Publ'g Corp.*, 563 F.3d at 968.

21        The Ninth Circuit has approved two methods for determining attorneys' fees in such cases

22   where the attorneys' fee award is taken from the common fund set aside for the entire settlement:

23   the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290

24   F.3d 1043, 1047 (9th Cir. 2002) (*Vizcaino*) (citation omitted). The district court retains discretion

25   in common fund cases to choose either method. *Id.*; *Vu v. Fashion Inst. of Design & Merch.*, No.

26   2:14-cv-08822-SJO-EX, 2016 WL 6211308, at \*5 (C.D. Cal. Mar. 22, 2016). Under either

27   approach, "[r]easonableness is the goal, and mechanical or formulaic application of method, where

28

1    it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance*
2    *Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).  As noted above, the Ninth Circuit has generally
3    set a 25% benchmark for the award of attorneys' fees in common fund cases.  *Id.* at 1047-48; *see*
4    *also Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark'
5    for a reasonable fee award, providing adequate explanation in the record of any 'special
6    circumstances' justifying a departure.").

7         Reasons to vary from the benchmark award may be found when counsel achieves
8    exceptional results for the class, undertakes "extremely risky" litigation, generates benefits for the
9    class beyond simply the cash settlement fund, or handles the case on a contingency basis.  *Vizcaino*,
10   290 F.3d at 1048-50; *see also In re Online DVD-Rental*, 779 F.3d at 954-55.  Ultimately, however,
11   "[s]election of the benchmark or any other rate must be supported by findings that take into account
12   all of the circumstances of the case."  *Vizcaino*, 290 F.3d at 1048.  The Ninth Circuit has approved
13   the use of the lodestar cross-check as a way of determining the reasonableness of a particular
14   percentage recovery of a common fund.  *Id.* at 1050 ("Where such investment is minimal, as in the
15   case of an early settlement, the lodestar calculation may convince a court that a lower percentage
16   is reasonable.  Similarly, the lodestar calculation can be helpful in suggesting a higher percentage
17   when litigation has been protracted."); *see also In re Online DVD-Rental*, 779 F.3d at 955.

18        Here, the parties' settlement provides that class counsel will seek an award of 33 and 1/3%
19   of the gross settlement fund, equivalent to $2,625,000.  (ECF No. 278-1 at 42.)  The Court approved
20   Plaintiffs' request for attorneys' fees on a preliminary basis, given the length of time this case has
21   been pending, the extensive discovery and use of experts, the numerous mediations, and the fact
22   that the maximum request for attorneys' fees falls within the typical range of awards in the Ninth
23   Circuit.  (ECF No. 283 at 12.)  Class counsel contend that a fee award of 1/3 of the gross settlement
24   fund is reasonable here for several reasons.  (ECF No. 288 at 9-16.)

25        First, class counsel provided adequate notice to the class of the attorneys' fees request.  (*Id.*
26   at 9.)  In the Court-approved notice mailed to the class, class members are informed of class
27   counsel's intention to request attorneys' fees in the amount of $2,625,000, which is 1/3 of the
28   settlement fund, and reimbursement of reasonable costs expended in the litigation of up to

$500,000. (*Id.*) Class counsel now requests $465,392.72 for reasonable costs expended in the litigation of this action. (*Id.*) No class member objected to the requested amount of attorneys' fees and reasonable costs expended in litigation. (*Id.*) Because there are no objections to the settlement agreement, this weighs in favor of the requested award.

Second, class counsel assert that they are entitled to fees and costs under the common fund doctrine. (*Id.* at 10.) An attorney who recovers a common fund for the benefit of persons other than themselves or their client is entitled to a reasonable attorney's fee from the fund as a whole. *Boeing Co.*, 444 U.S. at 478; *Vincent v. Hughes AirWest, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The common fund doctrine rationalizes that clients should pay their attorneys' fees, and if attorneys' fees are not a portion of the common fund, those clients may be unjustly enriched from the fund. *Boeing Co.*, 444 U.S. at 478. To prevent an unfair result, the Court may exercise its discretion to assess attorneys' fees against the common fund and spread fees proportionately among those benefited by the suit. *Id.* Here, the litigation resulted in the common fund of $7,875,000, and none of the class members have paid fees to class counsel during the eight years of litigation. Plaintiffs argue that equity requires that class counsel be paid a fair and reasonable fee as if they had been hired as private counsel. The application of the common fund doctrine supports the Court's award of class counsel's requested award.

Third, Plaintiffs argue that a fee award above the Ninth Circuit's 25% benchmark, particularly a 1/3 fee award, is warranted because of the complicated and novel appellate issues litigated for almost eight years by the parties and the extensive time and experience provided by counsel. (ECF No. 288 at 12.) As expected in contingency fee litigation, Plaintiffs explain that class counsel invested a significant amount of time and money on behalf of their clients even though there was a high risk of non-payment due to constantly evolving law and other risks. (*Id.*) Class counsel defended three mediations and conducted substantial discovery and investigation regarding class certification and the merits of the claim, including taking and defending twenty depositions. (*Id.* at 14.) Plaintiffs assert that $7,875,000 is the largest gross settlement fund for a class of farmworkers ever achieved on a wage and hour class action in California. (*Id.* at 13.) Therefore, this weighs in favor of the Court's approval of class counsel's requested award.

Lastly, Plaintiffs argue that courts routinely award attorneys' fees in the 30% to 40% range in wage and hour class actions, where class counsel's request of 1/3 or 33% is within that range. *See Fernandez v. Victoria Secret Stores, LLC*, No. 2:06-cv-04149-MMM-SHX, 2008 WL 8150856, at *16 (C.D. Cal. July 21, 2008) (*Fernandez*) (awarding a 34% class counsel award because it was taken on a contingency basis and litigated the case with diligence and skill); *Hightower v. JPMorgan Chase Bank, N.A.*, No. CV 11-1802 PSG (PLAx), 2015 WL 9664959, at *10 (C.D. Cal. August 4, 2015) (awarding a 30% class counsel award because of the results achieved, the risk of further litigation, and the skills required and the quality of work performed).  Overall, all the relevant factors support this Court's finding that class counsel's requested amount is reasonable under the percentage of the fund method.

The Court next turns to the lodestar method to cross-check the reasonableness of the requested attorneys' fee award.  Where a lodestar is merely being used as a cross-check, the court "may use a 'rough calculation of the lodestar.'" *Bond v. Ferguson Enters., Inc.*, No. 1:09-cv-1662-OWW-MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting *Fernandez*, 2008 WL 8150856).  The Court is aware that in certain situations, a multiplier added to the lodestar amount may be appropriate.  "Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (citing *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988)); *see also* 5 Newberg on Class Actions § 15:87 (stating courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher, and "the multiplier of 1.9 is comparable to multipliers used by the courts"); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1988) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.").

According to class counsel, the total lodestar amount is $7,383,843.05 ($5,718,405.55 for Martinez Aguilasocho Law and $1,665,437.50 for Bush Gottlieb).  (ECF No. 288 at 12.)  The lodestar exceeds the requested 33% of the gross settlement amount by $4,758,843.05.  As such, class counsel has incurred substantially more in fees than the actual amount they are requesting.  In support of this lodestar calculation, class counsel submitted an accounting of the hours billed by

1  various firm employees, tasks completed by those employees, and applicable billing rates.  (ECF

2  Nos. 288-1 at 14, 297; 288-1 at 8.)

3  Class counsel's employees who have worked on this matter include partner attorneys with

4  hourly rates from $600 to $900, associate attorneys with hourly rates from $400 to $550, and

5  paralegals with hourly rates from $225 to $250.  (ECF Nos. 288-1 at 14; 288-2 at 8.)  The Court

6  finds that these rates are fair and reasonable in this case.  *See Mathien v. Pier 1 Imports (U.S.), Inc.*,

7  No: 1:16-cv-00087-DAD-SAB, 2018 WL 1993727, at *11 (E.D. Cal. Apr. 27, 2018) (accepting

8  hourly rates of between $475 and $575 for associates, and $675 and $750 for senior counsel and

9  partners); *Emmons v. Quest Diagnostics Clinical Labs., Inc.*, 1:13-cv-00474-DAD-BAM, at *8

10  (E.D. Cal. Feb. 27, 2017) (accepting hourly rates between $330 and $550 for associates, and $500

11  and $720 for partners); *Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, No. 10-cv-0541-GPC-

12  WVG, 2014 WL 67494 (S.D. Cal. Jan. 8, 2014) (accepting an hourly rate of $775 for partners and

13  $543 for associates in the Southern District of California).

14  For the reasons set forth above, the Court concludes that the lodestar cross-check supports

15  the requested award of $2,625,000 in attorneys' fees, an amount equal to one-third of the gross

16  settlement fund in this case.

17  **B.      Costs and Expenses of Class Counsel**

18  Additionally, class counsel seeks to recover the costs and expenses advanced while

19  prosecuting this litigation.  Such awards "should be limited to typical out-of-pocket expenses that

20  are charged to a fee-paying client and should be reasonable and necessary."  *In re Immune Response*

21  *Secs. Litig¸* 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007).  These can include reimbursements for:

22  "(1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing

23  fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8)

24  experts, consultants, and investigators; and (9) mediation fees."  *Id.*

25  Here, class counsel requests reimbursement in the amount of $465,392.72.  (ECF No. 288-

26  1 at 16.)  This amount is less than the $500,000.00 estimate provided in the motion for preliminary

27  approval, increasing the amount of actual distributions to class members.  (*Id.*)  The Court

28  preliminarily approved the requested amount for costs and requested class counsel to file a formal

1   motion for attorneys' fees and costs, including declarations, detailed billing records, and an

2   itemized list of costs.  (ECF No. 283 at 12.)  In the motion for attorneys' fees, class counsel explains

3   that the costs incurred include filing fees, research, depositions, travels, meals and lodging for

4   meetings with class members, and mediations.  (ECF Nos. 288-1 at 259-297; 288-2 at 49-59.)  The

5   Court has reviewed class counsel's declarations and finds all the charges incurred to be reasonable.

6   (*See* ECF Nos. 288-1, 288-2.)  Accordingly, the Court will approve the reimbursement of costs and

7   expenses in the amount requested.

8         **C.**    **Incentive Award**

9         Courts frequently approve "service" or "incentive" awards in class action cases.  *West*

10   *Publ'g Corp.*, 563 F.3d at 958-59.  Incentive awards recognize the effort of class representatives

11   "for work done on behalf of the class, to make up for financial or reputational risk undertaken in

12   bringing the action, and, sometimes, to recognize their willingness to act as a private attorney

13   general." *Id.* at 958.  The district court evaluates each award individually, using "relevant factors

14   includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which

15   the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended

16   in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Staton*, 327 F.3d

17   at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

18         Courts typically find an award of $5,000 to be presumptively reasonable.  *See, e.g.*, *In re*

19   *Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (endorsing $5,000 service

20   awards to named representatives); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 246 (N.D.

21   Cal. 2015) (collecting cases); *In re Toys R. Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 470-72

22   (C.D. Cal. 2014) (awarding plaintiffs $5,000 each "consistent with the amount courts typically

23   award as incentive payments").  Higher amounts can be appropriate, such as in employment actions,

24   where a plaintiff risks retaliation or blacklisting as a result of suing her employer.  *See, e.g.*,

25   *Buccellato v. AT&T Operations, Inc.*, No. 5:10-cv-00463-LHK, 2011 WL 4526673, at *4 (N.D.

26   Cal. June 30, 2011).

27         Here, Plaintiffs Beatriz Aldapa and Elmer Avalos each seek an incentive award of $10,000

28   for their services in this action.  (ECF No. 288 at 17.)  Plaintiffs contend that this amount is fair and

reasonable compensation because they expended significant effort and great personal hardship to prosecute this case. (*Id.* at 18.) Plaintiff Aldapa spent approximately 402 hours in the past eight years meeting with counsel, reviewing pay and time records, submitting a declaration, preparing for and sitting for deposition, talking to co-workers, reviewing the complaint and other documents, reviewing and responding to discovery, traveling to and attending three mediations, conducting door-to-door visits to coworkers, helping to organize meetings, organizing the class members and keeping them apprised of the status of the case, and reviewing the settlement. (*See* ECF No. 288-3.) Plaintiff Aldapa also suffered reputational harm, struggling to secure employment, because of her involvement in this case and lost many days of work due to her participation in this case. (*Id.* at 4.) Plaintiff Avalos also spent approximately 431 hours in the past eight years supporting the prosecution of this case. (*See* ECF No. 288-4.) His involvement in the case has also resulted in both reputational harm and harm in finding other employment. (*Id.* at 4.)

The incentive award sought—$20,000, in total or about 0.25% of the gross settlement amount—is on the lower end, particularly for the relatively high number of hours expended by Plaintiffs on this case. It is not unreasonable or beyond the norm for this district, particularly given the average individual settlement payment is $223.95 and the highest is $4,767.70. (ECF No. 291 at 17.) *See, e.g.*, *Castro*, 2021 WL 20242333, at *13 (granting $10,000 award for 70 hours of work over three years, reflecting 0.025% of the gross settlement amount); *Acosta v. Evergreen Moneysource Mortg. Co.*, No. 2:17-cv-00466-KJM-DB, 2019 WL 6051117, at *18 (E.D. Cal. Nov. 15, 2019) (granting $10,000 award for 40 hours of work, reflecting 2.85% of the gross settlement amount); *Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-DAD-EPG, 2017 WL 2214936, at *8 (E.D. Cal. May 19, 2017) (*Aguilar*) (approving an incentive award of $7,500 to each class representative where average class recovery was approximately $500). Considering Plaintiffs supporting declarations detailing their assistance with this case, the Court finds that the requested incentive payment of $10,000 for each Plaintiff is fair and reasonable. Accordingly, the Court will award the incentive payment as requested.

///

///

### D.      Settlement Administrator Costs

The Court previously approved the appointment of CPT Group as the Settlement Administrator for this action.  (ECF No. 283 at 17.)  The estimated cost of administering the settlement is $90,000, which will be deducted from the gross settlement fund, but the parties agreed to set aside $120,000 of the total settlement amount to account for any unforeseen costs.  (ECF No. 278-1 at 19.)  If any part of the amount is unused, CPT Group will redistribute it to the class members.  (*Id.* at 17.)  The Court previously found that the parties had prudently set aside extra money for unforeseen expenses and had set up a reasonable redistribution plan for any unused funds.  (ECF No. 283 at 17.)  According to the motion for final approval, the total cost for the administration of this settlement, including fees incurred and future costs for completion, is $92,500.  (ECF Nos. 291 at 16 n.4.)  The additional $2,500 requested by CPT Group is due to the slight increase in class size (from the anticipated class of 20,500) and postage costs.  (*Id.*)  This amount is consistent with other settlements submitted to this Court.  *See, e.g.*, *Dakota Med., Inc. v. RehabCare Grp., Inc.*, No. 1:14-cv-02081-DAD-BAM, 2017 WL 1398816, at *5 (E.D. Cal. Apr. 19, 2017) (administration costs of $94,000 for a $25 million settlement); *Aguilar*, 2017 WL 117789, at *7 (administration costs of $45,000 for a $4.5 million settlement).  The Court finds these administration costs reasonable and will direct payment in the requested amount of $92,500.

### IV.     Conclusion

Accordingly,

1.  Plaintiffs' motion for final approval of class action settlement, (ECF No. 291), is GRANTED, and the Court approves the settlement as fair, reasonable, and adequate;

2.  Beatriz Aldapa and Elmer Avalos are confirmed as class representatives; Plaintiffs' counsel, Martinez Aguilasocho Law, Inc., and Bush Gottlieb, A Law Corporation, are confirmed as class counsel; and CPT Group, Inc. is confirmed as the Settlement Administrator;

3.  Plaintiffs' motion for an award of attorneys' fees and costs and incentive awards, (ECF No. 288), is GRANTED;

4.  The Court awards the following sums:

      a.   Class counsel shall receive $2,625,000.00 in attorneys' fees and $465,392.72 in costs.   Class counsel shall not seek or obtain any other compensation or reimbursement from Defendant, Plaintiffs, or class members;

      b.   Plaintiffs Aldapa and Avalos shall each receive $10,000 as an incentive payment;

      c.   CPT Group, Inc. shall receive $92,500 in settlement administration costs;

5.   The parties are directed to effectuate all terms of the settlement agreement, (ECF No. 278-1 at 26-52), and any deadlines or procedures for distribution set forth therein;

6.   This action is dismissed with prejudice, with the Court retaining jurisdiction over this action for the purpose of enforcing the parties' settlement agreement; and

7.   The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   June 5, 2023                               
UNITED STATES DISTRICT JUDGE